1  MICHAEL R. FARRELL (BAR NO. 173831)
   MATTHEW D. PHAM (BAR NO. 287704)
2  ALLEN MATKINS LECK GAMBLE
     MALLORY & NATSIS LLP
3  865 South Figueroa Street, Suite 2800
   Los Angeles, California 90017-2543
4  Phone: (213) 622-5555
   Fax: (213) 620-8816
5  E-Mail: mfarrell@allenmatkins.com
           mpham@allenmatkins.com
6
   Attorneys for Plaintiff
7  AMERICAN EQUITY INVESTMENT LIFE
   INSURANCE COMPANY
8

9               UNITED STATES DISTRICT COURT

10              EASTERN DISTRICT OF CALIFORNIA

11                   FRESNO DIVISION

12  AMERICAN EQUITY INVESTMENT          Case No. 1:24-cv-01406-KES-SAB
    LIFE INSURANCE COMPANY,
13                                       **FIRST AMENDED COMPLAINT
                  Plaintiff,             FOR (1) JUDICIAL FORECLOSURE,
14                                       (2) SPECIFIC PERFORMANCE AND
           vs.                           APPOINTMENT OF RECEIVER,
15                                       AND (3) BREACH OF GUARANTY**
    MARICOPA ORCHARDS, LLC; 104
16  INVESTMENTS, LLC; ACAP FARMS,
    LLC; C & A FARMS, LLC; CANTUA
17  ORCHARDS, LLC; COPPER AVENUE
    INVESTMENTS, LLC; FFGT FARMS,
18  LLC; GRADON FARMS, LLC;
    GRANTOR REAL ESTATE
19  INVESTMENTS, LLC; LINCOLN
    GRANTOR FARMS, LLC; LOCANS
20  INVESTMENTS, LLC; WILLOW
    AVENUE INVESTMENTS, LLC;
21  DARIUS ASSEMI; FARID ASSEMI;
    FARSHID ASSEMI; and SONIA
22  ASSEMI,

23                  Defendants.

24

25  / / /

26  / / /

27  / / /

28  / / /

Plaintiff AMERICAN EQUITY INVESTMENT LIFE INSURANCE COMPANY, an Iowa corporation ("American Equity" or "Plaintiff"), hereby brings this first amended complaint (the "Complaint") against the following defendants (collectively, "Defendants," and individually, "Defendant"): (1) MARICOPA ORCHARDS, LLC, a California limited liability company; (2) 104 INVESTMENTS, LLC, a California limited liability company; (3) ACAP FARMS, LLC, a California limited liability company; (4) C & A FARMS, LLC, a California limited liability company; (5) CANTUA ORCHARDS, LLC, a California limited liability company; (6) COPPER AVENUE INVESTMENTS, LLC, a California limited liability company; (7) FFGT FARMS, LLC, a California limited liability company; (8) GRADON FARMS, LLC, a California limited liability company; (9) GRANTOR REAL ESTATE INVESTMENTS, LLC, a California limited liability company; (10) LINCOLN GRANTOR FARMS, LLC, a California limited liability company; (11) LOCANS INVESTMENTS, LLC, a California limited liability company; (12) WILLOW AVENUE INVESTMENTS, LLC, a California limited liability company; (13) DARIUS ASSEMI, an individual; (14) FARID ASSEMI, an individual; (15) FARSHID ASSEMI, an individual; and (16) SONIA ASSEMI, an individual.  In support of the Complaint, Plaintiff alleges as follows:

## I.    PARTIES

1.    Plaintiff AMERICAN EQUITY INVESTMENT LIFE INSURANCE COMPANY is, and at all times mentioned herein was, an Iowa corporation organized and existing under and by virtue of the laws of the State of Iowa and authorized to do business in the State of California, with its principal place of business located in West Des Moines, Iowa.

2.    On information and belief, defendant MARICOPA ORCHARDS, LLC ("Maricopa Orchards") is, and at all times mentioned herein was, a California limited liability company licensed to do business in the State of California, with its principal place of business located in the State of California.

3.      On information and belief, defendant 104 INVESTMENTS, LLC ("104 Investments") is, and at all times mentioned herein was, a California limited liability company licensed to do business in the State of California, with its principal place of business located in the State of California.

4.      On information and belief, defendant ACAP FARMS, LLC ("ACAP Farms") is, and at all times mentioned herein was, a California limited liability company licensed to do business in the State of California, with its principal place of business located in the State of California.

5.      On information and belief, defendant C & A FARMS, LLC ("C & A Farms") is, and at all times mentioned herein was, a California limited liability company licensed to do business in the State of California, with its principal place of business located in the State of California.

6.      On information and belief, defendant CANTUA ORCHARDS, LLC ("Cantua Orchards") is, and at all times mentioned herein was, a California limited liability company licensed to do business in the State of California, with its principal place of business located in the State of California.

7.      On information and belief, defendant COPPER AVENUE INVESTMENTS, LLC ("Copper Avenue") is, and at all times mentioned herein was, a California limited liability company licensed to do business in the State of California, with its principal place of business located in the State of California.

8.      On information and belief, defendant FFGT FARMS, LLC ("FFGT Farms") is, and at all times mentioned herein was, a California limited liability company licensed to do business in the State of California, with its principal place of business located in the State of California.

9.      On information and belief, defendant GRADON FARMS, LLC ("Gradon Farms") is, and at all times mentioned herein was, a California limited liability company licensed to do business in the State of California, with its principal place of business located in the State of California.

10.     On information and belief, defendant GRANTOR REAL ESTATE INVESTMENTS, LLC ("Grantor Real Estate") is, and at all times mentioned herein was, a California limited liability company licensed to do business in the State of California, with its principal place of business located in the State of California.

11.     On information and belief, defendant LINCOLN GRANTOR FARMS, LLC ("Lincoln Grantor Farms") is, and at all times mentioned herein was, a California limited liability company licensed to do business in the State of California, with its principal place of business located in the State of California.

12.     On information and belief, defendant LOCANS INVESTMENTS, LLC ("Locans Investments") is, and at all times mentioned herein was, a California limited liability company licensed to do business in the State of California, with its principal place of business located in the State of California.

13.     On information and belief, defendant WILLOW AVENUE INVESTMENTS, LLC ("Willow Avenue") is, and at all times mentioned herein was, a California limited liability company licensed to do business in the State of California, with its principal place of business located in the State of California.

14.     On information and belief, defendant DARIUS ASSEMI ("Darius Assemi" or "Darius") is, and at all times mentioned herein was, an individual residing in Fresno County, California.

15.     On information and belief, defendant FARID ASSEMI ("Farid Assemi" or "Farid") is, and at all times mentioned herein was, an individual residing in Fresno County, California.

16.     On information and belief, defendant FARSHID ASSEMI ("Farshid Assemi" or "Farshid") is, and at all times mentioned herein was, an individual residing in Fresno County, California.

17.     On information and belief, defendant SONIA ASSEMI ("Sonia Assemi" or "Sonia") is, and at all times mentioned herein was, an individual residing in Fresno County, California.

18.     Defendants Maricopa Orchards, 104 Investments, ACAP Farms, C & A Farms, Cantua Orchards, Copper Avenue, FFGT Farms, Gradon Farms, Grantor Real Estate, Lincoln Grantor Farms, Locans Investments, and Willow Avenue are collectively referred to herein as "Borrower Defendants" and individually as "Borrower Defendant."

19.     Defendants Darius Assemi, Farid Assemi, Farshid Assemi, and Sonia Assemi are collectively referred to herein as the "Guarantor Defendants" and individually as "Guarantor Defendant."

## II.    JURISDICTION AND VENUE

20.     The United States District Court for the Eastern District of California (the "Court") has subject matter jurisdiction over this action under 28 U.S.C. § 1332 because (a) the action is civil in nature, (b) diversity of citizenship exists between Plaintiff and each Defendant, and (c) the amount in controversy exceeds $75,000, exclusive of interest and costs.

21.     Venue in the Eastern District of California is proper because one or more Defendants reside in this district, and all Defendants are residents of the State of California.  *See* 28 U.S.C. § 1391(b)(1).  Venue is also proper in this district because a substantial part of the events or omissions giving rise to the claims occurred in this district and because a substantial portion of the property at issue in this action is situated in this district.  *See id.* § 1391(b)(2).

## III.    GENERAL ALLEGATIONS

### A.    Loans made to Borrower Defendants.

22.     Beginning in July 2020, Conterra Agricultural Capital, LLC ("Conterra") began making a number of loans to Borrower Defendants (collectively, the "Loans," and individually, a "Loan"), with each Loan made to and to be repaid by two or more Borrower Defendants and guaranteed by at least three Guarantor Defendants, as detailed below.  The Loans had been funded by American Equity, and contemporaneously with the closing of each Loan, Conterra would transfer its

1  interest in the Loan to American Equity.  Thereafter, Conterra would continue to

2  service the Loan as agent for American Equity.

3  **1.    Loan #AG1021 and Loan #AG1024.**

4  23.    On or about July 23, 2020, Conterra, as lender, made a loan to

5  Maricopa Orchards and Willow Avenue, as borrowers, in the original principal

6  amount of $5,550,000, identified as Loan #AG1021 (the "1021 Loan").

7  24.    Maricopa Orchards and Willow Avenue's obligation to repay the

8  1021 Loan is memorialized in that certain promissory note titled *Note* and dated

9  July 23, 2020 (the "1021 Note"), under which they promised to repay $5,550,000 in

10 principal, with interest (originally set at the nondefault rate of 3.75% per annum), to

11 Conterra.  The 1021 Note requires semiannual payments of principal and interest to

12 be made (the first in the amount of $94,400.66 plus all then accrued interest, and the

13 following nineteen in the amount of $198,463.16 each) and has a ten-year term,

14 maturing on July 23, 2030, at which time all remaining amounts owed thereunder

15 become due and payable.  A true and correct copy of the 1021 Note is attached

16 hereto as **Exhibit 1**.

17 25.    The 1021 Note was originally secured by that certain *Deed of Trust[,]*

18 *Security Agreement, Assignment of Rents and Fixture Filing* dated July 23, 2020,

19 which was recorded in the official records of the Kern County Recorder on July 23,

20 2020, as Document No. 220096750 (the "1021-Kern Deed of Trust").

21 26.    On or about July 23, 2020, Conterra, as lender, also extended a

22 revolving line of credit loan to Maricopa Orchards and Willow Avenue, as

23 borrowers, with advances not to exceed $4,696,367, which loan is identified as Loan

24 #AG1024 (the "1024 Loan").  Funds in the amount of $1,310,840 were initially

25 advanced to Maricopa Orchards and Willow Avenue under the 1024 Loan, and on or

26 about July 1, 2021, additional funds in the amount of $303,957 were advanced to

27 Maricopa Orchards and Willow Avenue under the 1024 Loan.

28

27.    Maricopa Orchards and Willow Avenue's obligation to repay the 1024 Loan was originally memorialized in that certain promissory note titled *Note* and dated July 23, 2020 (the "1024 Note"), under which they promised to repay the amount advanced on the 1024 Loan, with interest (at a variable rate), to Conterra. The 1024 Note required semiannual interest-only payments to be made and has a seven-year term, maturing on July 23, 2027, at which time all remaining amounts owed thereunder become due and payable.  A true and correct copy of the 1024 Note is attached hereto as **Exhibit 2**.

28.    The 1024 Note was originally secured by that certain *Open-End Deed of Trust (with Future Advance Clause)[,] Security Agreement, Assignment of Rents and Fixture Filing* dated July 23, 2020, which was recorded in the official records of the Kern County Recorder on July 23, 2020, as Document No. 220096752 (the "1024-Kern Deed of Trust").

29.    In addition, a UCC financing statement, corresponding to both the 1021-Kern Deed of Trust and 1024-Kern Deed of Trust (together, the "1021/1024-Kern Deeds of Trust"), was also (a) filed with the California Secretary of State on October 12, 2020, as File No. U200029038629 (the "Filed 1021/1024 UCC-1"), and (b) recorded in the official records of the Kern County Recorder on October 23, 2020, as Document No. 220156769 (the "Recorded 1021/1024-Kern UCC-1").  The Filed 1021/1024 UCC-1 was subsequently amended (to address the omission of an exhibit) by a UCC financing statement amendment filed with the California Secretary of State on April 7, 2021, as File No. U210036237933 (the "1st Filed 1021/1024 UCC-3").  True and correct copies of the Filed 1021/1024 UCC-1 and 1st Filed 1021/1024 UCC-3 are attached hereto as **Exhibits 3 and 4**, respectively.

30.    Under each of the 1021/1024-Kern Deed of Trust, Willow Avenue originally granted Conterra a security interest in certain real property (generally described as approximately 473 acres located in Kern County, California); all buildings, improvements, equipment, fixtures, and permanent plantings affixed to,

attached to, or incorporated in the real property (including all rents, issues, profits, income, and proceeds therefrom); all water rights appurtenant to the real property; and other property as described in the 1021/1024-Kern Deeds of Trust (collectively, the "Original 1021/1024 Collateral").  Specifically excluded from the Original 1021/1024 Collateral, as set forth in the 1021/1024-Kern Deeds of Trust, are any "growing crop" and any "rolling stock" affixed or attached to the real property, as well as any "crop receivables."  The 1021/1024-Kern Deeds of Trust also include an assignment-of-rents provision, under which Willow Avenue absolutely and unconditionally assigns all rents and revenues of the Original 1021/1024 Collateral to Conterra.

31.    In connection with the 1021 Note and related loan documents and to induce Conterra to fund the 1021 Loan, Darius, Farid, and Farshid Assemi, as guarantors, each executed and delivered to Conterra, as lender, a written personal guaranty (the "1021 Darius Guaranty," "1021 Farid Guaranty," and "1021 Farshid Guaranty," respectively), each of which was similarly titled *Guaranty* and under which the three guaranteed the payment in full of any and all indebtedness owed by Maricopa Orchards and Willow Avenue to Conterra (or any assignee or transferee of Conterra's interest in such indebtedness).  True and correct copies of the 1021 Darius Guaranty, 1021 Farid Guaranty, and 1021 Farshid Guaranty are attached hereto as **Exhibits 5, 6, and 7**, respectively.

32.    Likewise, in connection with the 1024 Note and related loan documents and to induce Conterra to fund the 1024 Loan, Darius, Farid, and Farshid Assemi, as guarantors, each executed and delivered to Conterra, as lender, a written personal guaranty (the "1024 Darius Guaranty," "1024 Farid Guaranty," and "1024 Farshid Guaranty," respectively), each of which was similarly titled *Guaranty* and under which the three guaranteed the payment in full of any and all indebtedness owed by Maricopa Orchards and Willow Avenue to Conterra (or any assignee or transferee of Conterra's interest in such indebtedness).  True and correct copies of the 1024

Darius Guaranty, 1024 Farid Guaranty, and 1024 Farshid Guaranty are attached hereto as **Exhibits 8, 9, and 10**, respectively.

33.    Conterra assigned to American Equity all of its interests relating the 1021 Loan, including in the 1021 Note and 1021-Kern Deed of Trust, as evidenced by, among other things, (a) that certain *Allonge to Promissory Note* relating to the 1021 Note (the "1021 Allonge") and (b) that certain *Assignment of Deed of Trust*, which was recorded in the official records of the Kern County Recorder on July 23, 2020, as Document No. 220096751 (the "1021-Kern DOT Assignment"). Nevertheless, Conterra continues to act as American Equity's agent and loan servicer for the 1021 Loan. A true and correct copy of the 1021 Allonge is attached hereto as **Exhibit 11**.

34.    Conterra also assigned to American Equity all of its interests relating to the 1024 Loan, including in the 1024 Note and 1024-Kern Deed of Trust, as evidenced by, among other things, (a) that certain *Allonge to Promissory Note* relating to the 1024 Note (the "1024 Allonge"), and (b) that certain *Assignment of Deed of Trust*, which was recorded in the official records of the Kern County Recorder on July 23, 2020, as Document No. 220096753 (the "1024-Kern DOT Assignment"). Nevertheless, Conterra continues to act as American Equity's agent and loan servicer for the 1024 Loan. A true and correct copy of the 1024 Allonge is attached hereto as **Exhibit 12**.

35.    On or about December 16, 2021, American Equity, on the one hand, and Maricopa Orchards and Willow Avenue, on the other hand, entered into that certain *Collateral Substitution Agreement* dated December 16, 2021 (the "1021/1024 Collateral Substitution Agreement"), under which Maricopa Orchards and Willow Avenue agreed to substitute the Original 1021/1024 Collateral with other collateral in connection with the 1021 Loan and 1024 Loan. A true and correct copy of the 1021/1024 Collateral Substitution Agreement is attached hereto as **Exhibit 13**.

36.     On or about December 16, 2021, Maricopa Orchards and Willow Avenue also exercised an option to convert the 1024 Loan, which was, at that time, a revolving line of credit loan, into a term loan to repay the amount of funds advanced to date under the 1024 Loan.  Accordingly, on or about December 16, 2021, American Equity, on the one hand, and Maricopa Orchards and Willow Avenue, on the other hand, entered into that certain *Agreement to Convert and Amended and Restated Note* dated December 16, 2021 (the "1024 Amended Note"), under which the terms of the 1024 Note were amended and Maricopa Orchards and Willow Avenue were now promising to repay $1,614,797 in principal, with interest (originally set at the nondefault rate of 3.75% per annum), to American Equity.  The 1024 Amended Note requires semiannual payments of principal and interest to be made (the first in the amount of all then accrued interest, and the following seventeen in the amount of $59,796.99 each) and matures on July 23, 2030, at which time all remaining amounts owed thereunder become due and payable.  A true and correct copy of the 1024 Amended Note is attached hereto as **Exhibit 14**.

37.     In accordance with the 1021/1024 Collateral Substitution Agreement, the 1021 Note became secured by that certain *Deed of Trust[,] Security Agreement, Assignment of Rents and Fixture Filing* dated December 16, 2021, which was recorded in the official records of the Fresno County Recorder on December 17, 2021, as Document No. 2021-0206984 (the "1021-Fresno Deed of Trust").  A true and correct copy of the 1021-Fresno Deed of Trust is attached hereto as **Exhibit 15**.

38.     In accordance with the 1021/1024 Collateral Substitution Agreement, the 1024 Amended Note became secured by that certain *Deed of Trust[,] Security Agreement, Assignment of Rents and Fixture Filing* dated December 16, 2021, which was recorded in the official records of the Fresno County Recorder on December 17, 2021, as Document No. 2021-0206985 (the "1024-Fresno Deed of Trust").  A true and correct copy of the 1024-Fresno Deed of Trust is attached hereto as **Exhibit 16**.

39.     In addition, (a) a UCC financing statement, corresponding to both the 1021-Fresno Deed of Trust and 1024-Fresno Deed of Trust (together, the "1021/1024-Fresno Deeds of Trust"), was recorded in the official records of the Fresno County Recorder on December 17, 2021, as Document No. 2021-0206986 (the "Recorded 1021/1024-Fresno UCC-1"), and (b) two UCC financing statement amendments, further amending the Filed 1021/1024 UCC-1 and corresponding to the 1021/1024-Fresno Deeds of Trust, were filed with the California Secretary of State on December 19, 2021, as File No. U210111410316 (the "2nd Filed 1021/1024 UCC-3") and File No. U210111411217 (the "3rd Filed 1021/1024 UCC-3").  True and correct copies of the Recorded 1021/1024-Fresno UCC-1, 2nd Filed 1021/1024 UCC-3, and 3rd Filed 1021/1024 UCC-3 are attached hereto as **Exhibits 17, 18, and 19**, respectively.

40.     Under each of the 1021/1024-Fresno Deeds of Trust, Willow Avenue originally granted American Equity a security interest in certain real property (generally described as approximately 1,614.18 acres located in Fresno County, California); all buildings, improvements, equipment, fixtures, and permanent plantings affixed to, attached to, or incorporated in the real property (including all rents, issues, profits, income, and proceeds therefrom); all water rights appurtenant to the real property; and other property as described in the 1021/1024-Fresno Deeds of Trust (collectively, the "1021/1024 Collateral").  Specifically excluded from the 1021/1024 Collateral, as set forth in the 1021/1024-Fresno Deeds of Trust, are any "growing crop" and any "rolling stock" affixed or attached to the real property, as well as any "crop receivables."  The 1021/1024-Fresno Deeds of Trust also include an assignment-of-rents provision, under which Willow Avenue absolutely and unconditionally assigns all rents and revenues of the 1021/1024 Collateral to Conterra.

41.     By (a) that certain *Substitution of Trustee and Partial Conveyance* recorded in the official records of the Fresno County Recorder on June 9, 2023, as

Document No. 2023-0053791 (the "1021-Fresno Partial Reconveyance"), (b) that certain *Substitution of Trustee and Partial Conveyance* recorded in the official records of the Fresno County Recorder on June 9, 2023, as Document No. 2023-0053792 (the "1024-Fresno Partial Reconveyance"), (c) a UCC financing statement amendment recorded in the official records of the Fresno County Recorder on June 9, 2023, as Document No. 2023-0053793 (the "Recorded 1021/1024-Fresno UCC-3"), and (d) a UCC financing statement amendment filed with the California Secretary of State on December 9, 2023, as File No. U230040617926 (the "4th Filed 1021/1024 UCC-3"), American Equity subsequently released its liens against certain property constituting a part of the 1021/1024 Collateral that was subject to the 1021/1024-Fresno Deeds of Trust (including certain land located in Fresno County, California, and identified by APN: 027-171-82-S) (the "Reconveyed 1021/1024 Former Collateral"), while retaining its liens against all other property and collateral described in the 1021/1024-Fresno Deeds of Trust (the "Remaining 1021/1024 Collateral").  True and correct copies of the 1021-Fresno Partial Reconveyance, 1024-Fresno Partial Reconveyance, Recorded 1021/1024-Fresno UCC-3, and 4th Filed 1021/1024 UCC-3 are attached hereto as **Exhibits 20, 21, 22, and 23**, respectively.

## 2. Loan #AG1022.

42.    On or about July 23, 2020, Conterra, as lender, made a loan to Maricopa Orchards and Lincoln Grantor Farms, as borrowers, in the original principal amount of $288,000, identified as Loan #AG1022 (the "1022 Loan").

43.    Maricopa Orchards and Lincoln Grantor Farms' obligation to repay the 1022 Loan is memorialized in that certain promissory note titled *Note* and dated July 23, 2020 (the "1022 Note"), under which they promised to repay $288,000 in principal, with interest (originally set at the nondefault rate of 3.75% per annum), to Conterra.  The 1022 Note requires semiannual payments of principal and interest to be made (the first in the amount of $4,898.63 plus all then accrued interest, and the

following nineteen in the amount of $10,298.63 each) and has a ten-year term, maturing on July 23, 2030, at which time all remaining amounts owed thereunder become due and payable.  A true and correct copy of the 1022 Note is attached hereto as **Exhibit 24**.

44.    The 1022 Note is secured by that certain *Deed of Trust[,] Security Agreement, Assignment of Rents and Fixture Filing* dated July 23, 2020, which was recorded in the official records of the Kern County Recorder on July 23, 2020, as Document No. 220096754 (the "1022 Deed of Trust").  A corresponding UCC financing statement was also (a) filed with the California Secretary of State on October 12, 2020, as File No. U200024956631 (the "Filed 1022 UCC-1"), and (b) recorded in the official records of the Kern County Recorder on October 13, 2020, as Document No. 220148455 (the "Recorded 1022 UCC-1").  True and correct copies of the 1022 Deed of Trust, Filed 1022 UCC-1, and Recorded 1022 UCC-1 are attached hereto as **Exhibits 25, 26, and 27**, respectively.

45.    Under the 1022 Deed of Trust, Lincoln Grantor Farms originally granted Conterra a security interest in certain real property (generally described as approximately 20 acres located in Kern County, California); all buildings, improvements, equipment, fixtures, and permanent plantings affixed to, attached to, or incorporated in the real property (including all rents, issues, profits, income, and proceeds therefrom); all water rights appurtenant to the real property; and other property as described in the 1022 Deed of Trust (collectively, the "1022 Collateral").  Specifically excluded from the 1022 Collateral, as set forth in the 1022 Deed of Trust, are any "growing crop" and any "rolling stock" affixed or attached to the real property, as well as any "crop receivables."  The 1022 Deed of Trust also includes an assignment-of-rents provision, under which Lincoln Grantor Farms absolutely and unconditionally assigns all rents and revenues of the 1022 Collateral to Conterra.

46.    In connection with the 1022 Note and related loan documents and to induce Conterra to fund the 1022 Loan, Darius, Farid, and Farshid Assemi, as guarantors, each executed and delivered to Conterra, as lender, a written personal guaranty (the "1022 Darius Guaranty," "1022 Farid Guaranty," and "1022 Farshid Guaranty," respectively), each of which was similarly titled *Guaranty* and under which the three guaranteed the payment in full of any and all indebtedness owed by Maricopa Orchards and Lincoln Grantor Farms to Conterra (or any assignee or transferee of Conterra's interest in such indebtedness).  True and correct copies of the 1022 Darius Guaranty, 1022 Farid Guaranty, and 1022 Farshid Guaranty are attached hereto as **Exhibits 28, 29, and 30**, respectively.

47.    Conterra assigned to American Equity all of its interests relating to the 1022 Loan, including in the 1022 Note and 1022 Deed of Trust, as evidenced by, among other things, (a) that certain *Allonge to Promissory Note* relating to the 1022 Note (the "1022 Allonge") and (b) that certain *Assignment of Deed of Trust*, which was recorded in the official records of the Kern County Recorder on July 23, 2020, as Document No. 220096755 (the "1022 DOT Assignment").  Nevertheless, Conterra continues to act as American Equity's agent and loan servicer for the 1022 Loan.  True and correct copies of the 1022 Allonge and 1022 DOT Assignment are attached hereto as **Exhibits 31 and 32**, respectively.

### 3.    Loan #AG1023.

48.    On or about July 23, 2020, Conterra, as lender, made a loan to Maricopa Orchards and Grantor Real Estate, as borrowers, in the original principal amount of $3,312,000, identified as Loan #AG1023 (the "1023 Loan").

49.    Maricopa Orchards and Grantor Real Estate's obligation to repay the 1023 Loan is memorialized in that certain promissory note titled *Note* and dated July 23, 2020 (the "1023 Note"), under which they promised to repay $3,312,000 in principal, with interest (originally set at the nondefault rate of 3.75% per annum), to Conterra.  The 1023 Note requires semiannual payments of principal and interest to

1    be made (the first in the amount of $56,334.23 plus all then accrued interest, and the

2    following nineteen in the amount of $118,434.23 each) and has a ten-year term,

3    maturing on July 23, 2030, at which time all remaining amounts owed thereunder

4    become due and payable.  A true and correct copy of the 1023 Note is attached

5    hereto as **Exhibit 33**.

6        50.    The 1023 Note is secured by that certain *Deed of Trust[,] Security*

7    *Agreement, Assignment of Rents and Fixture Filing* dated July 23, 2020, which was

8    recorded in the official records of the Kern County Recorder on July 23, 2020, as

9    Document No. 220096746 (the "1023 Deed of Trust").  A corresponding UCC

10   financing statement was also (a) filed with the California Secretary of State on

11   October 12, 2020, as File No. U200025028422 (the "Filed 1023 UCC-1"), and

12   (b) recorded in the official records of the Kern County Recorder on October 23,

13   2020, as Document No. 220156768 (the "Recorded 1023 UCC-1").  True and

14   correct copies of the 1023 Deed of Trust, Filed 1023 UCC-1, and Recorded

15   1023 UCC-1 are attached hereto as **Exhibits 34, 35, and 36**, respectively.

16       51.    Under the 1023 Deed of Trust, Grantor Real Estate originally granted

17   Conterra a security interest in certain real property (generally described as

18   approximately 273 acres located in Kern County, California); all buildings,

19   improvements, equipment, fixtures, and permanent plantings affixed to, attached to,

20   or incorporated in the real property (including all rents, issues, profits, income, and

21   proceeds therefrom); all water rights appurtenant to the real property; and other

22   property as described in the 1023 Deed of Trust (collectively, the

23   "1023 Collateral").  Specifically excluded from the 1023 Collateral, as set forth in

24   the 1022 Deed of Trust, are any "growing crop" and any "rolling stock" affixed or

25   attached to the real property, as well as any "crop receivables."  The 1023 Deed of

26   Trust also includes an assignment-of-rents provision, under which Grantor Real

27   Estate absolutely and unconditionally assigns all rents and revenues of the

28   1023 Collateral to Conterra.

52.     In connection with the 1023 Note and related loan documents and to induce Conterra to fund the 1023 Loan, Darius, Farid, and Farshid Assemi, as guarantors, each executed and delivered to Conterra, as lender, a written personal guaranty (the "1023 Darius Guaranty," "1023 Farid Guaranty," and "1023 Farshid Guaranty," respectively), each of which was similarly titled *Guaranty* and under which the three guaranteed the payment in full of any and all indebtedness owed by Maricopa Orchards and Grantor Real Estate to Conterra (or any assignee or transferee of Conterra's interest in such indebtedness).  True and correct copies of the 1023 Darius Guaranty, 1023 Farid Guaranty, and 1023 Farshid Guaranty are attached hereto as **Exhibits 37, 38, and 39**, respectively.

53.     Conterra assigned to American Equity all of its interests relating to the 1023 Loan, including in the 1023 Note and 1023 Deed of Trust, as evidenced by, among other things, (a) that certain *Allonge to Promissory Note* relating to the 1023 Note (the "1023 Allonge") and (b) that certain *Assignment of Deed of Trust*, which was recorded in the official records of the Kern County Recorder on July 23, 2020, as Document No. 220096747 (the "1023 DOT Assignment").  Nevertheless, Conterra continues to act as American Equity's agent and loan servicer for the 1023 Loan.  True and correct copies of the 1023 Allonge and 1023 DOT Assignment are attached hereto as **Exhibits 40 and 41**, respectively.

### 4.    Loan #AG1069.

54.     On or about October 15, 2021, Conterra, as lender, made a loan to Maricopa Orchards and Gradon Farms, as borrowers, in the original principal amount of $3,852,300, identified as Loan #AG1069 (the "1069 Loan").

55.     Maricopa Orchards and Gradon Farms' obligation to repay the 1069 Loan is memorialized in that certain promissory note titled *Note* and dated October 15, 2021 (the "1069 Note"), under which they promised to repay $3,852,300 in principal, with interest (originally set at the nondefault rate of 3.5% per annum), to Conterra.  The 1069 Note requires semiannual payments of principal

and interest to be made (the first in the amount of $67,307.74 plus all then accrued interest, and the following nineteen in the amount of $134,722.99 each) and has a ten-year term, maturing on October 15, 2031, at which time all remaining amounts owed thereunder become due and payable.  A true and correct copy of the 1069 Note is attached hereto as **Exhibit 42**.

56.    The 1069 Note is secured by that certain *Deed of Trust[,] Security Agreement, Assignment of Rents and Fixture Filing* dated October 15, 2021, which was recorded in the official records of the Fresno County Recorder on October 15, 2021, as Document No. 2021-0172474 (the "1069 Deed of Trust").  A corresponding UCC financing statement was also filed with the California Secretary of State on October 20, 2021, as File No. U210094921531 (the "Filed 1069 UCC-1").  True and correct copies of the 1069 Deed of Trust and Filed 1069 UCC-1 are attached hereto as **Exhibits 43 and 44**, respectively.

57.    Under the 1069 Deed of Trust, Gradon Farms originally granted Conterra a security interest in certain real property (generally described as approximately 642 acres located in Fresno County, California); all buildings, improvements, equipment, fixtures, and permanent plantings affixed to, attached to, or incorporated in the real property (including all rents, issues, profits, income, and proceeds therefrom); all water rights appurtenant to the real property; and other property as described in the 1069 Deed of Trust (collectively, the "1069 Collateral").  Specifically excluded from the 1069 Collateral, as set forth in the 1069 Deed of Trust, are any "growing crop" and any "rolling stock" affixed or attached to the real property, as well as any "crop receivables."  The 1069 Deed of Trust also includes an assignment-of-rents provision, under which Gradon Farms absolutely and unconditionally assigns all rents and revenues of the 1069 Collateral to Conterra.

58.    In connection with the 1069 Note and related loan documents and to induce Conterra to fund the 1069 Loan, Darius, Farid, and Farshid Assemi, as

guarantors, each executed and delivered to Conterra, as lender, a written personal guaranty (the "1069 Darius Guaranty," "1069 Farid Guaranty," and "1069 Farshid Guaranty," respectively), each of which was similarly titled *Guaranty* and under which the three guaranteed the payment in full of any and all indebtedness owed by Maricopa Orchards and Gradon Farms to Conterra (or any assignee or transferee of Conterra's interest in such indebtedness). True and correct copies of the 1069 Darius Guaranty, 1069 Farid Guaranty, and 1069 Farshid Guaranty are attached hereto as **Exhibits 45, 46, and 47**, respectively.

59. Conterra assigned to American Equity all of its interests relating to the 1069 Loan, including in the 1069 Note and 1069 Deed of Trust, as evidenced by, among other things, (a) that certain *Allonge to Promissory Note* relating to the 1069 Note (the "1069 Allonge") and (b) that certain *Assignment of Deed of Trust*, which was recorded in the official records of the Fresno County Recorder on October 15, 2021, as Document No. 2021-0172475 (the "1069 DOT Assignment"). Nevertheless, Conterra continues to act as American Equity's agent and loan servicer for the 1069 Loan. True and correct copies of the 1069 Allonge and 1069 DOT Assignment are attached hereto as **Exhibits 48 and 49**, respectively.

### 5. Loan #AG1078.

60. On or about December 10, 2021, Conterra, as lender, made a loan to Maricopa Orchards and Lincoln Grantor Farms, as borrowers, in the original principal amount of $3,530,910, identified as Loan #AG1078 (the "1078 Loan").

61. Maricopa Orchards and Lincoln Grantor Farms' obligation to repay the 1078 Loan is memorialized in that certain promissory note titled *Note* and dated December 10, 2021 (the "1078 Note"), under which they promised to repay $3,530,910 in principal, with interest (originally set at the nondefault rate of 3.5% per annum), to Conterra. The 1078 Note requires semiannual payments of principal and interest to be made (the first in the amount of $61,692.39 plus all then accrued interest, and the following eighteen in the amount of $123,483.31 each) and has a

1  ten-year term, maturing on December 10, 2031, at which time all remaining

2  amounts owed thereunder become due and payable.  A true and correct copy of the

3  1078 Note is attached hereto as **Exhibit 50**.

4      62.    The 1078 Note is secured by that certain *Deed of Trust[,] Security*

5  *Agreement, Assignment of Rents and Fixture Filing* dated December 10, 2021,

6  which was recorded in the official records of the Fresno County Recorder on

7  December 10, 2021, as Document No. 2021-0202493 (the "1078 Deed of Trust").

8  A corresponding UCC financing statement was also filed with the California

9  Secretary of State on December 14, 2021, as File No. U210110126717 (the "Filed

10  1078 UCC-1").  True and correct copies of the 1078 Deed of Trust and Filed

11  1078 UCC-1 are attached hereto as **Exhibits 51 and 52**, respectively.

12      63.    Under the 1078 Deed of Trust, Lincoln Grantor Farms originally

13  granted Conterra a security interest in certain real property (generally described as

14  approximately 527 acres located in Fresno County, California); all buildings,

15  improvements, equipment, fixtures, and permanent plantings affixed to, attached to,

16  or incorporated in the real property (including all rents, issues, profits, income, and

17  proceeds therefrom); all water rights appurtenant to the real property; and other

18  property as described in the 1078 Deed of Trust (collectively, the

19  "1078 Collateral").  Specifically excluded from the 1078 Collateral, as set forth in

20  the 1078 Deed of Trust, are any "growing crop" and any "rolling stock" affixed or

21  attached to the real property, as well as any "crop receivables."  The 1078 Deed of

22  Trust also includes an assignment-of-rents provision, under which Lincoln Grantor

23  Farms absolutely and unconditionally assigns all rents and revenues of the

24  1078 Collateral to Conterra.

25      64.    In connection with the 1078 Note and related loan documents and to

26  induce Conterra to fund the 1078 Loan, Darius, Farid, and Farshid Assemi, as

27  guarantors, each executed and delivered to Conterra, as lender, a written personal

28  guaranty (the "1078 Darius Guaranty," "1078 Farid Guaranty," and "1078 Farshid

1  Guaranty," respectively), each of which was similarly titled *Guaranty* and under

2  which the three guaranteed the payment in full of any and all indebtedness owed by

3  Maricopa Orchards and Lincoln Grantor Farms to Conterra (or any assignee or

4  transferee of Conterra's interest in such indebtedness).  True and correct copies of

5  the 1078 Darius Guaranty, 1078 Farid Guaranty, and 1078 Farshid Guaranty are

6  attached hereto as **Exhibits 53, 54, and 55**, respectively.

7      65.    Conterra assigned to American Equity all of its interests relating to the

8  1078 Loan, including in the 1078 Note and 1078 Deed of Trust, as evidenced by,

9  among other things, (a) that certain *Allonge to Promissory Note* relating to the

10  1078 Note (the "1078 Allonge"), and (b) that certain *Assignment of Deed of Trust*,

11  which was recorded in the official records of the Fresno County Recorder on

12  December 10, 2021, as Document No. 2021-0202494 (the "1078 DOT

13  Assignment").  Nevertheless, Conterra continues to act as American Equity's agent

14  and loan servicer for the 1078 Loan.  True and correct copies of the 1078 Allonge

15  and 1078 DOT Assignment are attached hereto as **Exhibits 56 and 57**, respectively.

16      66.    By that certain *Substitution of Trustee and Partial Conveyance*

17  recorded in the official records of the Fresno County Recorder on June 9, 2023, as

18  Document No. 2023-0053790 (the "1078 Partial Reconveyance"), American Equity

19  subsequently released its lien against certain property constituting a part of the

20  1078 Collateral that was subject to the 1078 Deed of Trust (including certain land

21  located in Fresno County, California, and identified by APN: 027-171-81-S) (the

22  "Reconveyed 1078 Former Collateral"), while retaining its lien against all other

23  property and collateral described in the 1078 Deed of Trust (the "Remaining 1078

24  Collateral").  A true and correct copy of the 1078 Partial Conveyance is attached

25  hereto as **Exhibit 58**.

26

27

28

### 6.    <u>Loan #AG1077.</u>

67.    On or about December 17, 2021, Conterra, as lender, made a loan to Maricopa Orchards and FFGT Farms, as borrowers, in the original principal amount of $13,500,000, identified as Loan #AG1077 (the "<u>1077 Loan</u>").

68.    Maricopa Orchards and FFGT Farms' obligation to repay the 1077 Loan is memorialized in that certain promissory note titled *Note* and dated December 17, 2021 (the "<u>1077 Note</u>"), under which they promised to repay $13,500,000 in principal, with interest (originally set at the nondefault rate of 3.5% per annum), to Conterra.  The 1077 Note requires semiannual payments of principal and interest to be made (the first in the amount of $235,873.23 plus all then accrued interest, and the following eighteen in the amount of $472,123.23 each) and has a ten-year term, maturing on December 17, 2031, at which time all remaining amounts owed thereunder become due and payable.  A true and correct copy of the 1077 Note is attached hereto as **<u>Exhibit 59</u>**.

69.    The 1077 Note is secured by that certain *Deed of Trust[,] Security Agreement, Assignment of Rents and Fixture Filing* dated December 17, 2021, which was recorded in the official records of the Fresno County Recorder on December 21, 2021, as Document No. 2021-0208172 (the "<u>1077 Deed of Trust</u>"). A corresponding UCC financing statement was also filed with the California Secretary of State on January 5, 2022, as File No. U220115881934 (the "<u>Filed 1077 UCC-1</u>").  True and correct copies of the 1077 Deed of Trust and Filed 1077 UCC-1 are attached hereto as **<u>Exhibits 60 and 61</u>**, respectively.

70.    Under the 1077 Deed of Trust, FFGT Farms originally granted Conterra a security interest in certain real property (generally described as approximately 630 acres located in Fresno County, California); all buildings, improvements, equipment, fixtures, and permanent plantings affixed to, attached to, or incorporated in the real property (including all rents, issues, profits, income, and proceeds therefrom); all water rights appurtenant to the real property; and other

property as described in the 1077 Deed of Trust (collectively, the "1077 Collateral"). Specifically excluded from the 1077 Collateral, as set forth in the 1077 Deed of Trust, are any "growing crop" and any "rolling stock" affixed or attached to the real property, as well as any "crop receivables." The 1077 Deed of Trust also includes an assignment-of-rents provision, under which FFGT Farms absolutely and unconditionally assigns all rents and revenues of the 1077 Collateral to Conterra.

71.    In connection with the 1077 Note and related loan documents and to induce Conterra to fund the 1077 Loan, Darius, Farid, and Farshid Assemi, as guarantors, each executed and delivered to Conterra, as lender, a written personal guaranty (the "1077 Darius Guaranty," "1077 Farid Guaranty," and "1077 Farshid Guaranty," respectively), each of which was similarly titled *Guaranty* and under which the three guaranteed the payment in full of any and all indebtedness owed by Maricopa Orchards and FFGT Farms to Conterra (or any assignee or transferee of Conterra's interest in such indebtedness). True and correct copies of the 1077 Darius Guaranty, 1077 Farid Guaranty, and 1077 Farshid Guaranty are attached hereto as **Exhibits 62, 63, and 64**, respectively.

72.    Conterra assigned to American Equity all of its interests relating to the 1077 Loan, including in the 1077 Note and 1077 Deed of Trust, as evidenced by, among other things, (a) that certain *Allonge to Promissory Note* relating to the 1077 Note (the "1077 Allonge"), and (b) that certain *Assignment of Deed of Trust*, which was recorded in the official records of the Fresno County Recorder on December 21, 2021, as Document No. 2021-0208173 (the "1077 DOT Assignment"). Nevertheless, Conterra continues to act as American Equity's agent and loan servicer for the 1077 Loan. True and correct copies of the 1077 Allonge and 1077 DOT Assignment are attached hereto as **Exhibits 65 and 66**, respectively.

**7.  Loan #AG1076.**

73.  On or about March 10, 2022, Conterra, as lender, made a loan to Maricopa Orchards and FFGT Farms, as borrowers, in the original principal amount of $10,098,930, identified as Loan #AG1076 (the "1076 Loan").

74.  Maricopa Orchards and FFGT Farms' obligation to repay the 1076 Loan is memorialized in that certain promissory note titled *Note* and dated March 10, 2022 (the "1076 Note"), under which they promised to repay $10,098,930 in principal, with interest (originally set at the nondefault rate of 4.0% per annum), to Conterra.  The 1076 Note requires semiannual payments of principal and interest to be made (the first in the amount of $167,195.34 plus all then accrued interest, and the following nineteen in the amount of $369,173.94 each) and has a ten-year term, maturing on March 10, 2032, at which time all remaining amounts owed thereunder become due and payable.  A true and correct copy of the 1076 Note is attached hereto as **Exhibit 67**.

75.  The 1076 Note is secured by (a) that certain *Deed of Trust[,] Security Agreement, Assignment of Rents and Fixture Filing* dated March 10, 2022, which was recorded in the official records of the Fresno County Recorder on March 24, 2022, as Document No. 2022-0038476 (the "1076-Fresno Deed of Trust"), and (b) that certain *Deed of Trust[,] Security Agreement, Assignment of Rents and Fixture Filing* dated March 10, 2022, which was recorded in the official records of the Kings County Recorder on March 24, 2022, as Document No. 2205594 (the "1076-Kings Deed of Trust") (together, the "1076 Deeds of Trust").  True and correct copies of the 1076-Fresno Deed of Trust and 1076-Kings Deed of Trust are attached hereto as **Exhibits 68 and 69**, respectively.

76.  Under the 1076 Deeds of Trust, FFGT Farms originally granted Conterra a security interest in certain real property (generally described as approximately 785 acres located in Fresno and Kings Counties, California); all buildings, improvements, equipment, fixtures, and permanent plantings affixed to,

1   attached to, or incorporated in the real property (including all rents, issues, profits,

2   income, and proceeds therefrom); all water rights appurtenant to the real property;

3   and other property as described in the 1076 Deeds of Trust (collectively, the

4   "1076 Collateral").  Specifically excluded from the 1076 Collateral, as set forth in

5   the 1076 Deeds of Trust, are any "growing crop" and any "rolling stock" affixed or

6   attached to the real property, as well as any "crop receivables."  The 1076 Deeds of

7   Trust also include an assignment-of-rents provision, under which FFGT Farms

8   absolutely and unconditionally assigns all rents and revenues of the 1076 Collateral

9   to Conterra.

10      77.    In connection with the 1076 Note and related loan documents and to

11   induce Conterra to fund the 1076 Loan, Darius, Farid, and Farshid Assemi, as

12   guarantors, each executed and delivered to Conterra, as lender, a written personal

13   guaranty (the "1076 Darius Guaranty," "1076 Farid Guaranty," and "1076 Farshid

14   Guaranty," respectively), each of which was similarly titled *Guaranty* and under

15   which the three guaranteed the payment in full of any and all indebtedness owed by

16   Maricopa Orchards and FFGT Farms to Conterra (or any assignee or transferee of

17   Conterra's interest in such indebtedness).  True and correct copies of the 1076

18   Darius Guaranty, 1076 Farid Guaranty, and 1076 Farshid Guaranty are attached

19   hereto as **Exhibits 70, 71, and 72**, respectively.

20      78.    Conterra assigned to American Equity all of its interests relating to the

21   1076 Loan, including in the 1076 Note and 1076 Deeds of Trust, as evidenced by,

22   among other things, (a) that certain *Allonge to Promissory Note* relating to the

23   1076 Note (the "1076 Allonge"), (b) that certain *Assignment of Deed of Trust*, which

24   was recorded in the official records of the Fresno County Recorder on March 24,

25   2022, as Document No. 2022-0038477 (the "1076-Fresno DOT Assignment"), and

26   (c) that certain *Assignment of Deed of Trust*, which was recorded in the official

27   records of the Kings County Recorder on March 24, 2022, as Document

28   No. 2205595 (the "1076-Kings DOT Assignment").  Nevertheless, Conterra

continues to act as American Equity's agent and loan servicer for the 1076 Loan. True and correct copies of the 1076 Allonge, 1076-Fresno DOT Assignment, and 1076-Kings DOT Assignment are attached hereto as **Exhibits 73, 74, and 75**, respectively.

### 8.    Loan #AG1115 and Loan #AG1116.

79.    On or about February 3, 2023, Conterra, as lender, made a loan to Maricopa Orchards, Copper Avenue, C & A Farms, ACAP Farms, Willow Avenue, 104 Investments, Lincoln Grantor Farms, Grantor Real Estate, Gradon Farms, FFGT Farms, Cantua Orchards, and Locans Investments, as borrowers (collectively, the "1115/1116 Borrowers"), in the original principal amount of $11,300,000, identified as Loan #AG1115 (the "1115 Loan").

80.    On or about February 3, 2023, Conterra, as lender, also extended a revolving line of credit loan to the 1115/1116 Borrowers, with advances not to exceed $11,300,000, which loan is identified as Loan #AG1116 (the "1116 Loan"). Funds in the amount of $11,300,000 were initially advanced to the 1115/1116 Borrowers under the 1116 Loan.

81.    The 1115/1116 Borrowers' obligation to repay the 1115 Loan is memorialized in that certain promissory note titled *Note* and dated February 3, 2023 (the "1115 Note"), under which they promised to repay $11,300,000 in principal, with interest (at a variable rate), to Conterra.  The 1115 Note requires semiannual interest-only payments to be made and has a five-year term, maturing on February 3, 2028, at which time all remaining amounts owed thereunder become due and payable.  A true and correct copy of the 1115 Note is attached hereto as **Exhibit 76**.

82.    The 1115/1116 Borrowers' obligation to repay the 1116 Loan is memorialized in that certain promissory note titled *Note* and dated February 3, 2023 (the "1116 Note"), under which they promised to repay the amount advanced on the 1116 Loan, with interest (at a variable rate), to Conterra.  The 1116 Note requires semiannual interest-only payments to be made and has a five-year term, maturing on

February 3, 2028, at which time all remaining amounts owed thereunder become due and payable.  A true and correct copy of the 1116 Note is attached hereto as **Exhibit 77**.

83.    The 1115 Note and 1116 Note are secured by (a) that certain *Open-End Deed of Trust (with Future Advance Clause)[,] Security Agreement, Assignment of Rents and Fixture Filing* dated February 3, 2023, which was recorded in the official records of the Fresno County Recorder on February 9, 2023, as Document No. 2023-0011566 (the "1115/1116-Fresno Deed of Trust"), (b) that certain *Open-End Deed of Trust (with Future Advance Clause)[,] Security Agreement, Assignment of Rents and Fixture Filing* dated February 3, 2023, which was recorded in the official records of the Kern County Recorder on February 9, 2023, as Document No. 223015311 (the "1115/1116-Kern Deed of Trust"), and (c) that certain *Open-End Deed of Trust (with Future Advance Clause)[,] Security Agreement, Assignment of Rents and Fixture Filing* dated February 3, 2023, which was recorded in the official records of the Kings County Recorder on February 9, 2023, as Document No. 2301976 (the "1115/1116-Kings Deed of Trust") (collectively, the "1115/1116 Deeds of Trust").  True and correct copies of the 1115/1116-Fresno Deed of Trust, 1115/1116-Kern Deed of Trust, and 1115/1116-Kings Deed of Trust are attached hereto as **Exhibits 78, 79, and 80**, respectively.

84.    Collectively, (a) Lincoln Grantor Farms, Gradon Farms, FFGT Farms, 104 Investments, Locans Investments, Cantua Orchards, C & A Farms, and Willow Avenue, under the 1115/1116-Fresno Deed of Trust, (b) C & A Farms, Lincoln Grantor Farms, Maricopa Orchards, Willow Avenue, and Grantor Real Estate, under the 1115/1116-Kern Deed of Trust, and (c) Copper Avenue, Lincoln Grantor Farms, ACAP Farms, FFGT Farms, and Willow Avenue, under the 1115/1116-Kings Deed of Trust, originally granted Conterra a security interest in certain real property located in Fresno, Kern, and Kings Counties; all buildings, improvements, equipment, fixtures, and permanent plantings affixed to, attached to, or incorporated

1  in the real property (including all rents, issues, profits, income, and proceeds

2  therefrom); all water rights appurtenant to the real property; and other property as

3  described in the 1115/1116 Deeds of Trust (collectively, the

4  "1115/1116 Collateral").  Specifically excluded from the 1115/1116 Collateral, as

5  set forth in the 1115/1116 Deeds of Trust, are any "growing crop" and any "rolling

6  stock" affixed or attached to the real property, as well as any "crop receivables."

7  The 1115/1116 Deeds of Trust also include an assignment-of-rents provision, under

8  which the applicable 1115/1116 Borrowers absolutely and unconditionally assign all

9  rents and revenues of the 1115/1116 Collateral to Conterra.

10       85.    In connection with the 1115 Note and related loan documents and to

11  induce Conterra to fund the 1115 Loan, Darius, Farid, Farshid, and Sonia Assemi, as

12  guarantors, each executed and delivered to Conterra, as lender, a written personal

13  guaranty (the "1115 Darius Guaranty," "1115 Farid Guaranty," "1115 Farshid

14  Guaranty," and "1115 Sonia Guaranty," respectively), each of which was similarly

15  titled *Guaranty* and under which the four guaranteed the payment in full of any and

16  all indebtedness owed by the 1115/1116 Borrowers to Conterra (or any assignee or

17  transferee of Conterra's interest in such indebtedness).  True and correct copies of

18  the 1115 Darius Guaranty, 1115 Farid Guaranty, 1115 Farshid Guaranty, and 1115

19  Sonia Guaranty are attached hereto as **Exhibits 81, 82, 83, and 84**, respectively.

20       86.    Likewise, in connection with the 1116 Note and related loan documents

21  and to induce Conterra to fund the 1116 Loan, Darius, Farid, Farshid, and Sonia

22  Assemi, as guarantors, each executed and delivered to Conterra, as lender, a written

23  personal guaranty (the "1116 Darius Guaranty," "1116 Farid Guaranty," "1116

24  Farshid Guaranty," and "1116 Sonia Guaranty," respectively), each of which was

25  similarly titled *Guaranty* and under which the four guaranteed the payment in full of

26  any and all indebtedness owed by the 1115/1116 Borrowers to Conterra (or any

27  assignee or transferee of Conterra's interest in such indebtedness).  True and correct

28  copies of the 1116 Darius Guaranty, 1116 Farid Guaranty, 1116 Farshid Guaranty,

1  and 1116 Sonia Guaranty are attached hereto as **Exhibits 85, 86, 87, and 88**,

2  respectively.

3      87.    Conterra assigned to American Equity all of its interests relating to the

4  1115 Loan and 1116 Loan, including in the 1115 Note, 1116 Note, and

5  1115/1116 Deeds of Trust, as evidenced by, among other things, (a) that certain

6  *Allonge to Promissory Note* relating to the 1115 Note (the "1115 Allonge"), (b) that

7  certain *Allonge to Promissory Note* relating to the 1116 Note (the "1116 Allonge"),

8  (c) that certain *Assignment of Deed of Trust*, which was recorded in the official

9  records of the Fresno County Recorder on March 14, 2023, as Document No. 2023-

10  0023044 (the "1115/1116-Fresno DOT Assignment"), (d) that certain *Assignment of*

11  *Deed of Trust*, which was recorded in the official records of the Kern County

12  Recorder on March 14, 2023, as Document No. 223029410 (the "1115/1116-Kern

13  DOT Assignment"), and (e) that certain *Assignment of Deed of Trust*, which was

14  recorded in the official records of the Kings County Recorder on March 23, 2023, as

15  Document No. 2304389 (the "1115/1116-Kings DOT Assignment").  Nevertheless,

16  Conterra continues to act as American Equity's agent and loan servicer for the

17  1115 Loan and 1116 Loan.  True and correct copies of the 1115 Allonge,

18  1116 Allonge, 1115/1116-Fresno DOT Assignment, 1115/1116-Kern DOT

19  Assignment, and 1115/1116-Kings DOT Assignment are attached hereto as

20  **Exhibits 89, 90, 91, 92, and 93**, respectively.

21      88.    By that certain *Substitution of Trustee and Partial Conveyance*

22  recorded in the official records of the Fresno County Recorder on June 9, 2023, as

23  Document No. 2023-0053794 (the "1115/1116-Fresno Partial Reconveyance"),

24  American Equity subsequently released its lien against certain property constituting

25  a part of the 1115/1116 Collateral that was subject to the 1115/1116-Fresno Deed of

26  Trust (including certain land located in Fresno County, California, and identified by

27  APNs: 019-180-09S, 019-180-27S, 019-180-23S, 019-180-25S, 027-171-81-S, and

28  027-171-82-S) (the "Reconveyed 1115/1116 Former Collateral"), while retaining its

lien against all other property and collateral described in the 1115/1116-Fresno Deed of Trust and the other 1115/1116 Deeds of Trust (the "Remaining 1115/1116 Collateral").  A true and correct copy of the 1115/1116-Fresno Partial Conveyance is attached hereto as **Exhibit 94**.

### B.    Relevant common provisions in the loan documents.

89.    The promissory notes relating to the Loans (i.e., the 1021 Note, 1024 Amended Note, 1022 Note, 1023 Note, 1069 Note, 1078 Note, 1077 Note, 1076 Note, 1115 Note, and 1116 Note) (collectively, the "Notes") include common provisions relating to defaults thereunder.

90.    The deeds of trust securing the Notes (i.e., the 1021-Fresno Deed of Trust, 1024-Fresno Deed of Trust, 1022 Deed of Trust, 1023 Deed of Trust, 1069 Deed of Trust, 1078 Deed of Trust, 1077 Deed of Trust, 1076-Fresno Deed of Trust, 1076-Kings Deed of Trust, 1115/1116-Fresno Deed of Trust, 1115/1116-Kern Deed of Trust, and 1115/1116-Kings Deed of Trust) (collectively, the "Deeds of Trust") also include common provisions relating to defaults thereunder.

91.    Each of the Notes provides, "The occurrence of any one or more of the following shall constitute an 'Event of Default' under this Note, the Security Instrument [i.e., the deed of trust], and any related loan documents, as such term is used herein … (1) If Borrowers fail to repay any interest or Principal under the Note when due …."

92.    Each Deed of Trust similarly sets forth the borrowers' obligation to make timely payments under the applicable Note: "Borrower and/or Borrower Parties shall pay when due the principal of, and interest on, the debt evidenced by the Note and any yield maintenance premiums, any prepayment charges and late charges due under the Note."  In addition, the Deeds of Trust also include a cross-default provision, providing that "Borrower's or Borrower Parties' default or breach under any note or agreement in which Lender has an interest shall be a breach under

1    the Security Instrument and Lender may invoke any of the remedies permitted by

2    the Security Instrument."

3        93.    Under each Deed of Trust, "[f]ollowing Borrower's breach of any

4    covenant or agreement in this Security Instrument … and prior to acceleration or

5    Lender's exercise of any remedy," American Equity is required to "give at least

6    sixty (60) days written notice to Borrower prior to exercising any remedy, *unless*

7    *otherwise provided under this Deed of Trust*."  One such exception is in seeking the

8    appointment of a receiver, where each Deed of Trust provides, "If Lender gives

9    notices of default to Borrower … (vi) Lender shall be entitled to have a receiver

10   appointed to take possession of and manage the Property and collect the Rents and

11   profits derived from the Property without any showing as to the inadequacy of the

12   Property as security."

13       94.    Under each Deed of Trust, following the passage of the required notice

14   period, "Lender at its option may require immediate payment in full of all sums

15   secured by this Security Instrument without further demand and may invoke the

16   power of sale and any other remedies permitted by Applicable Law" and "shall be

17   entitled to collect all expenses incurred in pursuing the remedies provided [herein],

18   including, but not limited to, reasonable attorneys' fees and costs of title evidence."

19       95.    The personal guaranties relating to the Loans from Darius, Farid, and

20   Farshid Assemi (i.e., the 1021 Darius Guaranty, 1021 Farid Guaranty, 1021 Farshid

21   Guaranty, 1024 Darius Guaranty, 1024 Farid Guaranty, 1024 Farshid Guaranty,

22   1022 Darius Guaranty, 1022 Farid Guaranty, 1022 Farshid Guaranty, 1023 Darius

23   Guaranty, 1023 Farid Guaranty, 1023 Farshid Guaranty, 1069 Darius Guaranty,

24   1069 Farid Guaranty, 1069 Farshid Guaranty, 1078 Darius Guaranty, 1078 Farid

25   Guaranty, 1078 Farshid Guaranty, 1077 Darius Guaranty, 1077 Farid Guaranty,

26   1077 Farshid Guaranty, 1076 Darius Guaranty, 1076 Farid Guaranty, 1076 Farshid

27   Guaranty, 1115 Darius Guaranty, 1115 Farid Guaranty, 1115 Farshid Guaranty,

28   1116 Darius Guaranty, 1116 Farid Guaranty, and 1116 Farshid Guaranty

(collectively, the "Guaranties") and the personal guaranties relating to the 1115 Loan and 1116 Loan from Sonia Assemi (i.e., the 1115 Sonia Guaranty and 1116 Sonia Guaranty) (together, the "Sonia Guaranties") also include common provisions relating to Guarantor Defendants' obligation on the indebtedness owed by Borrower Defendants on the Loans.

96.    Under each of the Guaranties or Sonia Guaranties, the applicable Guarantor Defendant "guarantee[d] to the Lender the immediate payment in full of any and all of the Guaranteed Indebtedness … when due, whether by acceleration or otherwise, and at all times thereafter," with the term "Guaranteed Indebtedness" being defined therein to include "(1) any and all indebtedness of every kind and character, without limit as to amount, whether now existing or hereafter arising, of Borrowers to Lender, regardless of whether evidenced by notes, drafts, acceptances, discounts, overdrafts, deeds of trust, security agreements, loan agreements, or otherwise, and regardless whether such indebtedness be fixed, contingent, primary, secondary, joint, several or joint and several, (2) interest, whether accruing before or after maturity, on any and all of the indebtedness described in (1)  preceding, (3) any and all attorneys' fees, costs and expenses incurred or suffered by Lender in the making of, the administration of or collection of the foregoing indebtedness described in (1) preceding or interest described in (2) preceding, or any part thereof."

**C.    Defendants' defaults on the Loans.**

97.    Beginning in July 2024, Borrower Defendants began breaching or defaulting on their obligations under the loan documents relating to each of the Loans, primarily by failing to make the payments due thereon, including all amounts due and owing on the Loans following acceleration.  Relatedly, Guarantor Defendants have also breached or defaulted on their obligations under their respective Guaranties by failing to pay the amounts due and owing under the loan

documents relating to each of the Loans, including all amounts due and owing on the Loans following acceleration.

### 1.    Default on the 1021 Loan.

98.    Maricopa Orchards and Willow Avenue failed to pay the semiannual payment of $198,463.16 due on July 1, 2024, under the 1021 Note.  Accordingly, on or about September 26, 2024, Conterra, as agent and loan servicer for American Equity, served a notice of default on Maricopa Orchards and Willow Avenue by mail, indicating that the borrowers were in default of their obligations under the loan documents relating to the 1021 Loan due to nonpayment.

99.    On or about November 27, 2024, American Equity, through its counsel, served a notice of acceleration on  Maricopa Orchards and Willow Avenue and guarantors Darius, Farid, and Farshid Assemi by mail, indicating that all amounts due and owing under the loan documents relating to the 1021 Loan had been accelerated as a result of the continuing default.

100.   To date, neither the initial default nor the post-acceleration default on the 1021 Loan has been cured by the applicable Borrower Defendants or Guarantor Defendants.

101.   As of July 1, 2024, the unpaid principal balance of the 1021 Note was approximately $3,397,915.77 (exclusive of interest, costs, and other charges).

### 2.    Default on the 1024 Loan.

102.   Maricopa Orchards and Willow Avenue failed to pay the semiannual payment of $59,796.99 due on July 1, 2024, under the 1024 Amended Note. Accordingly, on or about September 26, 2024, Conterra, as agent and loan servicer for American Equity, served a notice of default on Maricopa Orchards and Willow Avenue by mail, indicating that the borrowers were in default of their obligations under the loan documents relating to the 1024 Loan due to nonpayment.

103.   On or about November 27, 2024, American Equity, through its counsel, served a notice of acceleration on borrowers Maricopa Orchards and Willow

Avenue and guarantors Darius, Farid, and Farshid Assemi by mail, indicating that all amounts due and owing under the loan documents relating to the 1024 Loan had been accelerated as a result of the continuing default.

104.   To date, neither the initial default nor the post-acceleration default on the 1024 Loan has been cured by the applicable Borrower Defendants or Guarantor Defendants.

105.   As of July 1, 2024, the unpaid principal balance of the 1024 Amended Note was approximately $1,493,356.15 (exclusive of interest, costs, and other charges).

**3.    Default on the 1022 Loan.**

106.   Maricopa Orchards and Lincoln Grantor Farms failed to pay the semiannual payment of $10,298.63 due on July 1, 2024, under the 1022 Note. Accordingly, on or about September 26, 2024, Conterra, as agent and loan servicer for American Equity, served a notice of default on Maricopa Orchards and Lincoln Grantor Farms by mail, indicating that the borrowers were in default of their obligations under the loan documents relating to the 1022 Loan due to nonpayment.

107.   On or about November 27, 2024, American Equity, through its counsel, served a notice of acceleration on borrowers Maricopa Orchards and Lincoln Grantor Farms and guarantors Darius, Farid, and Farshid Assemi by mail, indicating that all amounts due and owing under the loan documents relating to the 1022 Loan had been accelerated as a result of the continuing default.

108.   To date, neither the initial default nor the post-acceleration default on the 1022 Loan has been cured by the applicable Borrower Defendants or Guarantor Defendants.

109.   As of July 1, 2024, the unpaid principal balance of the 1022 Note was approximately $251,719.34 (exclusive of interest, costs, and other charges).

1

### 4.    Default on the 1023 Loan.

2    110.   Maricopa Orchards and Grantor Real Estate failed to pay the

3    semiannual payment of $118,434.23 due on July 1, 2024, under the 1023 Note.

4    Accordingly, on or about September 26, 2024, Conterra, as agent and loan servicer

5    for American Equity, served a notice of default on Maricopa Orchards and Grantor

6    Real Estate by mail, indicating that the borrowers were in default of their obligations

7    under the loan documents relating to the 1023 Loan due to nonpayment.

8    111.   On or about November 27, 2024, American Equity, through its counsel,

9    served a notice of acceleration on borrowers Maricopa Orchards and Grantor Real

10    Estate and guarantors Darius, Farid, and Farshid Assemi by mail, indicating that all

11    amounts due and owing under the loan documents relating to the 1023 Loan had

12    been accelerated as a result of the continuing default.

13    112.   To date, neither the initial default nor the post-acceleration default on

14    the 1023 Loan has been cured by the applicable Borrower Defendants or Guarantor

15    Defendants.

16    113.   As of July 1, 2024, the unpaid principal balance of the 1023 Note was

17    approximately $2,894,772.46 (exclusive of interest, costs, and other charges).

18

### 5.    Default on the 1069 Loan.

19    114.   Maricopa Orchards and Gradon Farms failed to pay the semiannual

20    payment of $134,722.99 due on July 1, 2024, under the 1069 Note.  Accordingly, on

21    or about September 26, 2024, Conterra, as agent and loan servicer for American

22    Equity, served a notice of default on Maricopa Orchards and Gradon Farms by mail,

23    indicating that the borrowers were in default of their obligations under the loan

24    documents relating to the 1069 Loan due to nonpayment.

25    115.   On or about November 27, 2024, American Equity, through its counsel,

26    served a notice of acceleration on borrowers Maricopa Orchards and Gradon Farms

27    and guarantors Darius, Farid, and Farshid Assemi by mail, indicating that all

28

amounts due and owing under the loan documents relating to the 1069 Loan had been accelerated as a result of the continuing default.

116.   To date, neither the initial default nor the post-acceleration default on the 1069 Loan has been cured by the applicable Borrower Defendants or Guarantor Defendants.

117.   As of July 1, 2024, the unpaid principal balance of the 1069 Note was approximately $3,503,744.50 (exclusive of interest, costs, and other charges).

**6.    Default on the 1078 Loan.**

118.   Maricopa Orchards and Lincoln Grantor Farms failed to pay the semiannual payment of $123,483.31 due on July 1, 2024, under the 1078 Note. Accordingly, on or about September 26, 2024, Conterra, as agent and loan servicer for American Equity, served a notice of default on Maricopa Orchards and Lincoln Grantor Farms by mail, indicating that the borrowers were in default of their obligations under the loan documents relating to the 1078 Loan due to nonpayment.

119.   On or about November 27, 2024, American Equity, through its counsel, served a notice of acceleration on borrowers Maricopa Orchards and Lincoln Grantor Farms and guarantors Darius, Farid, and Farshid Assemi by mail, indicating that all amounts due and owing under the loan documents relating to the 1078 Loan had been accelerated as a result of the continuing default.

120.   To date, neither the initial default nor the post-acceleration default on the 1078 Loan has been cured by the applicable Borrower Defendants or Guarantor Defendants.

121.   As of July 1, 2024, the unpaid principal balance of the 1078 Note was approximately $1,441,978.13 (exclusive of interest, costs, and other charges).

**7.    Default on the 1077 Loan.**

122.   Maricopa Orchards and FFGT Farms failed to pay the semiannual payment of $472,123.23 due on July 1, 2024, under the 1077 Note. Accordingly, on or about September 26, 2024, Conterra, as agent and loan servicer for American

Equity, served a notice of default on Maricopa Orchards and FFGT Farms by mail, indicating that the borrowers were in default of their obligations under the loan documents relating to the 1077 Loan due to nonpayment.

123.    On or about November 27, 2024, American Equity, through its counsel, served a notice of acceleration on borrowers Maricopa Orchards and FFGT Farms and guarantors Darius, Farid, and Farshid Assemi by mail, indicating that all amounts due and owing under the loan documents relating to the 1077 Loan had been accelerated as a result of the continuing default.

124.    To date, neither the initial default nor the post-acceleration default on the 1077 Loan has been cured by the applicable Borrower Defendants or Guarantor Defendants.

125.    As of July 1, 2024, the unpaid principal balance of the 1077 Note was approximately $12,531,450.19 (exclusive of interest, costs, and other charges).

### 8.    Default on the 1076 Loan.

126.    Maricopa Orchards and FFGT Farms failed to pay the semiannual payment of $369,173.94 due on July 1, 2024, under the 1076 Note.  Accordingly, on or about September 26, 2024, Conterra, as agent and loan servicer for American Equity, served a notice of default on Maricopa Orchards and FFGT Farms by mail, indicating that the borrowers were in default of their obligations under the loan documents relating to the 1076 Loan due to nonpayment.

127.    On or about November 27, 2024, American Equity, through its counsel, served a notice of acceleration on borrowers Maricopa Orchards and FFGT Farms and guarantors Darius, Farid, and Farshid Assemi by mail, indicating that all amounts due and owing under the loan documents relating to the 1076 Loan had been accelerated as a result of the continuing default.

128.    To date, neither the initial default nor the post-acceleration default on the 1076 Loan has been cured by the applicable Borrower Defendants or Guarantor Defendants.

129.   As of July 1, 2024, the unpaid principal balance of the 1076 Note was approximately $9,409,816.35 (exclusive of interest, costs, and other charges).

### 9.    Default on the 1115 Loan.

130.   The 1115/1116 Borrowers failed to pay the semiannual payment of $363,774.10 due on July 1, 2024, under the 1115 Note.  Accordingly, on or about September 26, 2024, Conterra, as agent and loan servicer for American Equity, served a notice of default on the 1115/1116 Borrowers (i.e., Maricopa Orchards, Copper Avenue, C & A Farms, ACAP Farms, Willow Avenue, 104 Investments, Lincoln Grantor Farms, Grantor Real Estate, Gradon Farms, FFGT Farms, Cantua Orchards, and Locans Investments) by mail, indicating that the borrowers were in default of their obligations under the loan documents relating to the 1115 Loan due to nonpayment.

131.   On or about December 4, 2024, American Equity, through its counsel, served a notice of acceleration on the 1115/1116 Borrowers and Guarantor Defendants (i.e., Darius, Farid, Farshid, and Sonia Assemi) by mail, indicating that all amounts due and owing under the loan documents relating to the 1115 Loan had been accelerated as a result of the continuing default.

132.   To date, neither the initial default nor the post-acceleration default on the 1115 Loan has been cured by the 1115/1116 Borrowers or Guarantor Defendants.

133.   As of July 1, 2024, the unpaid principal balance of the 1115 Note was approximately $8,212,151.19 (exclusive of interest, costs, and other charges).

### 10.    Default on the 1116 Loan.

134.   The 1115/1116 Borrowers failed to pay the installment payments of (a) $73,766.88 due on July 1, 2024, (b) $73,861.73 due on August 1, 2024, and (c) $73,856.87 due on September 1, 2024, under the 1116 Note.  Accordingly, on or about September 30, 2024, Conterra, as agent and loan servicer for American Equity, served a notice of default on the 1115/1116 Borrowers by mail, indicating

1 that the borrowers were in default of their obligations under the loan documents

2 relating to the 1116 Loan due to nonpayment.

3    135.   On or about December 4, 2024, American Equity, through its counsel,

4 served a notice of acceleration on the 1115/1116 Borrowers and Guarantor

5 Defendants by mail, indicating that all amounts due and owing under the loan

6 documents relating to the 1116 Loan had been accelerated as a result of the

7 continuing default.

8    136.   To date, neither the initial default nor the post-acceleration default on

9 the 1116 Loan has been cured by the 1115/1116 Borrowers or Guarantor

10 Defendants.

11    137.   As of July 1, 2024, the unpaid principal balance of the 1116 Note was

12 approximately $8,212,151.19 (exclusive of interest, costs, and other charges).

13    **D.    The need for the appointment of a receiver.**

14    138.   Given Borrower Defendants' breach or default under each of the Loans,

15 Plaintiff is entitled to the appointment of a receiver to protect and manage the

16 property constituting Plaintiff's collateral for the Loans (i.e., the Remaining

17 1021/1024 Collateral, 1022 Collateral, 1023 Collateral, 1069 Collateral, Remaining

18 1078 Collateral, 1077 Collateral, 1076 Collateral, and Remaining

19 1115/1116 Collateral) (collectively, the "Collateral").

20    139.   Unless a receiver is appointed to, among other things, protect and

21 manage the Collateral, there is a real danger that the Collateral will suffer waste or

22 other harm, resulting in irreparable injury to Plaintiff's rights thereto.

23    140.   Specifically, the Collateral consists of, among other things, thousands

24 of acres of farm land, with a significant number of those acres containing pistachio

25 or almond trees.  Those trees (but not any crops thereon) represent a significant

26 portion of the value of Plaintiff's Collateral.  This farm land requires regular care,

27 without which the trees thereon may be damaged or may die.

28

LAW OFFICES
**Allen Matkins Leck Gamble**
**Mallory & Natsis LLP**

4901-4399-3871.4                      -38-

141.   Borrower Defendants have informed Plaintiff that, due to cash flow and liquidity issues, Borrower Defendants no longer have the ability to pay their operating expenses, maintain their operations, or otherwise care for Plaintiff's Collateral.  As a result, there is manifest and immediate danger of loss, deterioration, and diminution of the Collateral, which will likely be the primary source for repayment of the Loans, and Plaintiff, as an interested and secured party, is threatened with material losses and injuries for which it has no adequate remedy at law against Borrower Defendants.

142.   Under California and federal law and as provided in the Deeds of Trust, Plaintiff has the right to the appointment of a receiver.  Plaintiff is contractually and equitably entitled to the immediate appointment of a receiver to take possession of and hold, subject to the discretion of this Court, the Collateral pledged as security for the Loans.

143.   Plaintiff intends to provide additional funding to the appointed receiver to allow them to maintain and manage the Collateral.

## IV.   CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF

**(For Judicial Foreclosure)**

**(Against Maricopa Orchards, LLC; 104 Investments, LLC; ACAP Farms, LLC; C & A Farms, LLC; Cantua Orchards, LLC; Copper Avenue Investments, LLC; FFGT Farms, LLC; Gradon Farms, LLC; Grantor Real Estate Investments, LLC; Lincoln Grantor Farms, LLC; Locans Investments, LLC; and Willow Avenue Investments, LLC)**

144.   Plaintiff incorporates herein by reference, as though fully set forth herein, the allegations contained in paragraphs 1 through 143, inclusive.

145.   At all relevant times, Plaintiff is the lawful holder of the Notes, the lawful beneficiary under the Deeds of Trust, and the lawful owner of the other loan documents relating to the Loans (collectively, the "Loan Documents").

1    146.   Plaintiff has performed all of the terms and conditions required on its
2  part to be performed under the Loan Documents.

3    147.   On information and belief, when the 1021-Fresno Deed of Trust and
4  1024-Fresno Deed of Trust were executed, Willow Avenue was, and continues to
5  be, the owner of the real property included in the Remaining 1021/1024 Collateral,
6  and Willow Avenue otherwise presently holds an interest in all real and personal
7  property that constitutes the Remaining 1021/1024 Collateral.

8    148.   On information and belief, when the 1022 Deed of Trust was executed,
9  Lincoln Grantor Farms was, and continues to be, the owner of the real property
10  included in the 1022 Collateral, and Lincoln Grantor Farms otherwise presently
11  holds an interest in all real and personal property that constitutes the 1022
12  Collateral.

13    149.   On information and belief, when the 1023 Deed of Trust was executed,
14  Grantor Real Estate was, and continues to be, the owner of the real property
15  included in the 1023 Collateral, and Grantor Real Estate otherwise presently holds
16  an interest in all real and personal property that constitutes the 1023 Collateral.

17    150.   On information and belief, when the 1069 Deed of Trust was executed,
18  Gradon Farms was, and continues to be, the owner of the real property included in
19  the 1069 Collateral, and Gradon Farms otherwise presently holds an interest in all
20  real and personal property that constitutes the 1069 Collateral.

21    151.   On information and belief, when the 1078 Deed of Trust was executed,
22  Lincoln Grantor Farms was, and continues to be, the owner of the real property
23  included in the Remaining 1078 Collateral, and Lincoln Grantor Farms otherwise
24  presently owns all real and personal property that constitutes the 1078 Collateral.

25    152.   On information and belief, when the 1077 Deed of Trust was executed,
26  FFGT Farms was, and continues to be, the owner of the real property included in the
27  1077 Collateral, and FFGT Farms otherwise presently holds an interest in all real
28  and personal property that constitutes the 1077 Collateral.

153.   On information and belief, (a) when the 1076-Fresno Deed of Trust was executed, FFGT Farms was, and continues to be, the owner of the real property located in Fresno County, California, included in the 1076 Collateral, (b) when the 1076-Kings Deed of Trust was executed, FFGT Farms was, and continues to be, the owner of the real property located in Kings County, California, included in the 1076 Collateral, and (c) FFGT Farms otherwise presently holds an interest in all real and personal property that constitutes the 1076 Collateral.

154.   On information and belief, (a) when the 1115/1116-Fresno Deed of Trust was executed, Lincoln Grantor Farms, Gradon Farms, FFGT Farms, 104 Investments, Locans Investments, Cantua Orchards, C & A Farms, and Willow Avenue were, and continue to be, the owners of the real property located in Fresno County, California, included in the Remaining 1115/1116 Collateral, (b) when the 1115/1116-Kern Deed of Trust was executed, C & A Farms, Lincoln Grantor Farms, Maricopa Orchards, Willow Avenue, and Grantor Real Estate were, and continue to be, the owners of the real property located in Kern County, California, included in the Remaining 1115/1116 Collateral, (c) when the 1115/1116-Kings Deed of Trust was executed, Copper Avenue, Lincoln Grantor Farms, ACAP Farms, FFGT Farms, and Willow Avenue were, and continue to be, the owners of the real property located in Kings County, included in the Remaining 1115/1116 Collateral, and (d) the 1115/1116 Borrowers otherwise collectively presently hold interests in all real and personal property that constitutes the Remaining 1115/1116 Collateral.

155.   As set forth above, the Loan Documents, among other things, require that the applicable Borrower Defendants make certain installment payments to Plaintiff that come due under the Notes and pay all amounts due under the Notes to Plaintiff following acceleration, and those Borrower Defendants defaulted under the Loan Documents by failing, and continuing to fail, to make those payments or otherwise pay off the Loans.

156.   Plaintiff has notified the applicable Borrower Defendants of their default under each Loan in writing, and, to date, the applicable Borrower Defendants have not cured their default.

157.   With respect to each Loan, the applicable Loan Documents provide that the applicable Borrower Defendants owes Plaintiff default interest on the outstanding principal balance, accrued interest, and any other amounts due under the corresponding Note, as well as all costs, expenses, and reasonable attorneys' fees incurred by Plaintiff in enforcing the terms of the Loan Documents, including, without limitation, the corresponding Note and Deed of Trust(s).  As a further result of Borrower Defendants' defaults, Plaintiff has been damaged in that it has and will be required to incur attorneys' fees and costs to enforce its rights under the Loan Documents.

158.   Pursuant to each Deed of Trust, Plaintiff is entitled to judgment that (a) the rights, claims, ownership, liens, titles, and demands of the applicable Borrower Defendants, and all persons or entities claiming under any of them, are subject to the lien of that Deed of Trust, (b) that Deed of Trust is foreclosed and the applicable Collateral shall be sold according to law by a sheriff, marshal, or other person appointed by the Court, (c) the applicable Borrower Defendants are liable to Plaintiff for any deficiency owing in connection with the underlying Loan, and (d) when the time for redemption has passed, the commissioner or trustee shall execute and deliver a deed to the purchaser(s) of the applicable Collateral at the foreclosure sale and that said purchaser(s) be put into the possession of the collateral upon delivery of said deed.

159.   With the 1021-Fresno Deed of Trust and 1024-Fresno Deed of Trust, Plaintiff seeks judicial foreclosure of only the real and personal property that constitutes the Remaining 1021/1024 Collateral that remains subject to such Deeds of Trust at the time of sale, and, for the avoidance of doubt, such foreclosure would not include any property that constitutes Reconveyed 1021/1024 Former Collateral.

160.    With respect to the 1022 Deed of Trust, Plaintiff seeks judicial foreclosure of only the real and personal property that constitutes the 1022 Collateral that remains subject to such Deed of Trust at the time of sale.

161.    With respect to the 1023 Deed of Trust, Plaintiff seeks judicial foreclosure of only the real and personal property that constitutes the 1023 Collateral that remains subject to such Deed of Trust at the time of sale.

162.    With respect to the 1069 Deed of Trust, Plaintiff seeks judicial foreclosure of only the real and personal property that constitutes the 1069 Collateral that remains subject to such Deed of Trust at the time of sale.

163.    With respect to the 1078 Deed of Trust, Plaintiff seeks judicial foreclosure of only the real and personal property that constitutes the Remaining 1078 Collateral that remains subject to such Deed of Trust at the time of sale, and, for the avoidance of doubt, such foreclosure would not include any property that constitutes Reconveyed 1078 Former Collateral.

164.    With respect to the 1077 Deed of Trust, Plaintiff seeks judicial foreclosure of only the real and personal property that constitutes the 1077 Collateral that remains subject to such Deed of Trust at the time of sale.

165.    With respect to the 1076-Fresno Deed of Trust and 1076-Kings Deed of Trust, Plaintiff seeks judicial foreclosure of only the real and personal property that constitutes the 1076 Collateral that remains subject to such Deeds of Trust at the time of sale.

166.    With respect to the 1115/1116-Fresno Deed of Trust, 1115/1116-Kern Deed of Trust, and 1115/1116-Kings Deed of Trust, Plaintiff seeks judicial foreclosure of only the real and personal property that constitutes the Remaining 1115/1116 Collateral that remains subject to such Deeds of Trust at the time of sale,

1 and for the avoidance of doubt, such foreclosure would not include any property that

2 constitutes Reconveyed 1115/1116 Former Collateral.[1]

3 **<u>SECOND CLAIM FOR RELIEF</u>**

4 **(For Specific Performance and Appointment of Receiver)**

5 **(Against Maricopa Orchards, LLC; 104 Investments, LLC; ACAP Farms,**

6 **LLC; C & A Farms, LLC; Cantua Orchards, LLC; Copper Avenue**

7 **Investments, LLC; FFGT Farms, LLC; Gradon Farms, LLC; Grantor Real**

8 **Estate Investments, LLC; Lincoln Grantor Farms, LLC; Locans Investments,**

9 **LLC; and Willow Avenue Investments, LLC)**

10    167.    Plaintiff incorporates herein by reference, as though fully set forth

11 herein, the allegations contained in paragraphs 1 through 166, inclusive.

12    168.    Plaintiff is the lawful holder of the Notes, the lawful beneficiary under

13 the Deeds of Trust, and the lawful owner of the other Loan Documents.

14    169.    Plaintiff has performed all of its obligations to Borrower Defendants

15 under the terms of the Loan Documents.

16    170.    On information and belief, Borrower Defendants collectively presently

17 holds interests in all real and personal property that constitutes the Collateral.

18    171.    As set forth above, the Loan Documents, among other things, require

19 that the applicable Borrower Defendants make certain installment payments to

20 Plaintiff that come due under the Notes, and those Borrower Defendants breached

21 the Loan Documents by failing to make those payments.

22

23

24

_____

25 [1]    Certain property that constitutes part of the Remaining 1115/1116 Collateral may
be presently subject to the receivership arising out of *Federal Agricultural*

26 *Mortgage Corp. v. Assemi Brothers, LLC, et al.* (Case No. 1:24-cv-01455-KES-
SAB) pending in this Court.  Accordingly, Plaintiff only seeks the foreclosure of

27 such property to the extent that it is no longer subject to such receivership at the
time of judgment or sale.

28

172.   Plaintiff has notified the applicable Borrower Defendants of their default under each Loan in writing, and, to date, the applicable Borrower Defendants have not cured their default.

173.   Having given written notice of default to Borrower Defendants with respect to the Loans, Plaintiff is entitled pursuant to the express terms of the Deeds of Trust to have a receiver appointed to take possession of and manage the Collateral and to collect the rents and profits from the Collateral, if any, without the need to make any showing as to the inadequacy of the Collateral as security.

174.   Due to Borrower Defendants' defaults, as well as their cash flow and liquidity issues, there is a real danger that the Collateral will suffer waste resulting in irreparable harm to Plaintiff if a receiver is not appointed to manage and protect the Collateral.

175.   It is impractical and impossible for Plaintiff to enjoy the rights granted to it or enforce the obligations of Borrower Defendants under the Loan Documents without the appointment of a receiver who has the power and authority to take possession of and manage the Collateral and collect the rents and profits derived therefrom, if any.

176.   Plaintiff has no plain, speedy, or adequate remedy at law to enforce the provisions of the Deeds of Trust as set forth herein and will suffer irreparable harm unless equitable relief is granted and a receiver is appointed to manage, operate, and control the Collateral.

177.   A receiver should be appointed and granted the general powers and duties of a court-appointed receiver, including the power to take and keep possession of the Collateral and to do such acts respecting the collateral as the Court may authorize pending Plaintiff's forthcoming exercise of its remedies under the Loan Documents.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### THIRD CLAIM FOR RELIEF

### (For Breach of Guaranty)

### (Against Darius Assemi, Farid Assemi, and Farshid Assemi)

178.   Plaintiff incorporates herein by reference, as though fully set forth herein, the allegations contained in paragraphs 1 through 177, inclusive.

179.   Plaintiff is the lawful holder of the Notes, the lawful beneficiary under the Deeds of Trust, and the lawful owner of the other Loan Documents, including the Guaranties.

180.   Darius, Farid, and Farshid Assemi, as guarantors, and Plaintiff, as assignee of Conterra's interest in the Loans, as lender, are parties to the Guaranties, which obligated the former to pay the indebtedness owed by the applicable Borrower Defendants to Plaintiff in connection with the ten Loans.

181.   Plaintiff has performed all of its obligations with respect to the Loan Documents, including with respect to the Guaranties.

182.   Darius, Farid, and Farshid Assemi have breached the Guaranties by failing to pay those amounts due and owing under the Loan Documents, as demanded by Plaintiff.

183.   As a result of the breaches by Darius, Farid, and Farshid Assemi under the Guaranties, Plaintiff has suffered damages of no less than **$51,349,085.26**, plus all accrued and unpaid interest, reasonable attorneys' fees, costs, and other charges allowed under the Loan Documents, including under the Guaranties, in an amount to be determined at trial.  The $51,349,085.26 amount represents the unpaid principal balance owed on each of the Loans, including (a) $3,397,915.77 on the 1021 Loan, (b) $1,493,356.15 on the 1024 Loan, (c) $251,719.34 on the 1022 Loan, (d) $2,894,772.46 on the 1023 Loan, (e) $3,503,774.50 on the 1069 Loan, (f) $1,441,978.13 on the 1078 Loan, (g) $12,531,450.18 on the 1077 Loan, (h) $9,409,816.35 on the 1076 Loan, (i) $8,212,151.19 on the 1115 Loan, and (j) $8,212,151.19 on the 1116 Loan.

## FOURTH CLAIM FOR RELIEF

### (For Breach of Guaranty)

### (Against Sonia Assemi)

184. Plaintiff incorporates herein by reference, as though fully set forth herein, the allegations contained in paragraphs 1 through 183, inclusive.

185. Plaintiff is the lawful holder of the 1115 Note and 1116 Note, the lawful beneficiary under the 1115/1116 Deeds of Trust, and the lawful owner of the other Loan Documents relating to the 1115 Loan and 1116 Loan, including the Sonia Guaranties.

186. Sonia Assemi, as guarantor, and Plaintiff, as assignee of Conterra's interest in the 1115 Loan and 1116 Loan, as lender, are parties to the Sonia Guaranties, which obligated the former to pay the indebtedness owed by the 1115/1116 Borrowers to Plaintiff in connection with the 1115 Loan and 1116 Loan.

187. Plaintiff has performed all of its obligations with respect to the Loan Documents relating to the 1115 Loan and 1116 Loan, including with respect to the Sonia Guaranties.

188. Sonia Assemi has breached the Sonia Guaranties by failing to pay those amounts due and owing under the Loan Documents relating to the 1115 Loan and 1116 Loan, as demanded by Plaintiff.

189. As a result of the breaches by Sonia Assemi under the Sonia Guaranties, Plaintiff has suffered damages of no less than **$16,424,302.38**, plus all accrued and unpaid interest, reasonable attorneys' fees, costs, and other charges allowed under the applicable Loan Documents, including under the Sonia Guaranties, in an amount to be determined at trial. The $16,424,302.38 amount represents the unpaid principal balance of $8,212,151.19 owed on the 1115 Loan and the unpaid principal balance of $8,212,151.19 owed on the 1116 Loan.

1    **V.    PRAYER FOR RELIEF**

2        WHEREFORE, Plaintiff prays for judgment against Defendants, and each of

3    them, and in favor of Plaintiff as follows:

4        **On the First Claim for Relief:**

5        1.    For a declaration of all amounts due and owing under the Loan

6    Documents in the amount of no less than $51,349,085.26 (the aggregate amount of

7    the unpaid principal balances on all ten Loans), together with interest, reasonable

8    attorneys' fees, costs, and other charges, according to proof;

9        2.    For an adjudication that (a) the Deeds of Trust and all other security

10    documents relating the Loans be foreclosed, (b) judgment be made for sale of the

11    Collateral according to law by a sheriff, marshal, or other person appointed by this

12    Court, (c) the sale proceeds be applied in payment of the amount due Plaintiff,

13    (d) any and all entities and persons claiming an interest in the Collateral, whether as

14    owners, lienholders, beneficiaries under a deed of trust, creditors, purchasers,

15    encumbrancers, or otherwise, be barred and foreclosed from all rights, claims,

16    interests, or equities of redemption in the Collateral and every part thereof when the

17    time for redemption, if any, has passed, and (e) any deficiency after sale be

18    permitted by law and the Loan Documents;

19        3.    For an adjudication that (a) Plaintiff or any other party to this lawsuit

20    may be permitted to become a purchaser at the foreclosure sale(s), and (b) Plaintiff

21    may credit bid upon the Collateral at such foreclosure sale(s);

22        4.    For an adjudication that (a) when the time for redemption has passed,

23    the sheriff, marshal, or other person appointed to sell the Collateral shall execute a

24    deed and other required documents necessary to transfer title to the purchaser of the

25    Collateral at the foreclosure sale, and (b) the purchaser shall be permitted to take

26    possession of the Collateral upon production of the deed and other appropriate

27    documents of title; and

28

5.     For an adjudication awarding Plaintiff judgment and execution against Borrower Defendants to the extent permitted by law and the Loan Documents for any deficiency that may remain after applying all of the proceeds of sale of the Collateral properly applicable to the satisfaction of the amounts found due by the Court;

**On the Second Claim for Relief:**

6.     For specific performance of the provisions of the Deeds of Trust, and the assignment referred to therein, relating to the right of Plaintiff, pending a foreclosure and/or trial on the issues herein, to have a receiver appointed to take possession of and care for and operate the Collateral, and to collect rents, issues, profits, income, and proceeds therefrom during the pendency of this action;

7.     For the entry of an order appointing a receiver, and that, pursuant to that order, the receiver be authorized to (a) take possession and control of the Collateral; (b) conserve, maintain, and manage the Collateral, including entering into any appropriate lease(s) or license(s) associated with the management of the Collateral or retaining a third party to manage the Collateral; (c) collect any and all rents, issues, profits, income, and proceeds from the Collateral, if any; and (d) perform all other acts consistent with the terms of the order entered by the Court;

8.     For the entry of an order directing Borrower Defendants and any other third party in possession of the Collateral to deliver possession of the same to the receiver and perform certain acts or refrain from other acts as deemed appropriate by the Court; and

9.     For the entry of a preliminary injunction and permanent injunction enjoining Borrower Defendants and their agents, partners, property managers, employees, officers, directors, affiliates, assignees, successors, and representatives, and all persons acting under, in concert with, or for them, from (a) committing or permitting any waste on the Collateral, or suffering, committing, or permitting any act on the Collateral, or any part thereof, in violation of applicable law, or removing

1  or otherwise disposing of any of the Collateral, including any improvements,

2  equipment, fixtures, and permanent plantings; (b) directly or indirectly interfering in

3  any manner with the discharge of the receiver's duties or the receiver's possession

4  of and operation or management of the Collateral; and (c) doing any act which will,

5  or which will tend to, impair, defeat, divert, prevent, or prejudice the preservation of

6  the Collateral.

7  **On the Third Claim for Relief:**

8      10.   For damages of no less than $51,349,085.26, plus all accrued and

9  unpaid interest, reasonable attorneys' fees, costs, and other charges allowed under

10  the Loan Documents, including under the Guaranties, according to proof at trial;

11  **On the Fourth Claim for Relief:**

12      11.   For damages of no less than $16,424,302.38, plus all accrued and

13  unpaid interest, reasonable attorneys' fees, costs, and other charges allowed under

14  the applicable Loan Documents, including under the Sonia Guaranties, according to

15  proof at trial;

16  **On all Claims for Relief:**

17      12.   For the granting of such other and further relief as the Court deems

18  appropriate under the circumstances.

19

20  Dated:  January 19, 2025          ALLEN MATKINS LECK GAMBLE
21                                              MALLORY & NATSIS LLP
                                          MICHAEL R. FARRELL
                                          MATTHEW D. PHAM
22

23                                  By:    */s/ Matthew D. Pham*
24                                          MATTHEW D. PHAM
                                          Attorneys for Plaintiff
25                                          AMERICAN EQUITY
                                          INVESTMENT LIFE INSURANCE
                                          COMPANY
26

27

28