**KELLER BENVENUTTI KIM LLP**
JANE KIM (Cal. Bar No. 298192)
(jkim@kbkllp.com)
JEREMY V. RICHARDS (Cal. Bar No. 102300)
(jrichards@kbkllp.com)
425 Market Street, 26th Floor
San Francisco, California 94105
Telephone:    (415) 496-6723

Attorneys for Defendants 104 Investments, LLC,
ACAP Farms, LLC, C&A Farms, LLC, Cantua
Orchards, LLC, Cooper Avenue Investments,
LLC, FFGT Farms, LLC, Gradon Farms, LLC,
Grantor Real Estate Investments, LLC, Lincoln
Grantor Farms, LLC, Locans Investments, LLC,
Maricopa Orchards, LLC, and Willow Avenue
Investments, LLC

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMERICAN EQUITY INVESTMENT LIFE INSURANCE COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>MARICOPA ORCHARDS, LLC, et al.,<br><br>Defendants. | Case No. 1:24-cv-01406-KES-SAB<br><br>**ANSWER TO FIRST AMENDED COMPLAINT**<br><br>Action Filed: November 15, 2024<br>First Amended Complaint Filed: January 19, 2025<br>Trial Date: Not yet set |

Defendants 104 Investments, LLC, ACAP Farms, LLC, C&A Farms, LLC, Cantua

Orchards, LLC, Cooper Avenue Investments, LLC, FFGT Farms, LLC, Gradon Farms, LLC,

Grantor Real Estate Investments, LLC, Lincoln Grantor Farms, LLC, Locans Investments, LLC,

Maricopa Orchards, LLC, and Willow Avenue Investments, LLC (collectively, the "Defendants")

hereby answer the *First Amended Complaint* filed by Plaintiff American Equity Investment Life

Insurance Company ("Plaintiff") [Dkt. No. 14] in the above-captioned case, as follows.

KELLER BENVENUTTI KIM LLP
425 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105

**RESPONSE TO COMPLAINT**

Defendants deny each and every allegation in the First Amended Complaint unless specifically admitted. Below, Defendants address each numbered paragraph.

**I.    THE PARTIES**

1.    Plaintiff AMERICAN EQUITY INVESTMENT LIFE INSURANCE COMPANY is, and at all times mentioned herein was, an Iowa corporation organized and existing under and by virtue of the laws of the State of Iowa and authorized to do business in the State of California, with its principal place of business located in West Des Moines, Iowa.

*Response*: Defendants lack sufficient information to admit or deny the allegations and therefore deny them.

2.    On information and belief, defendant MARICOPA ORCHARDS, LLC ("Maricopa Orchards") is, and at all times mentioned herein was, a California limited liability company licensed to do business in the State of California, with its principal place of business located in the State of California.

*Response*: Defendants admit the allegations.

3.    On information and belief, defendant 104 INVESTMENTS, LLC ("104 Investments") is, and at all times mentioned herein was, a California limited liability company licensed to do business in the State of California, with its principal place of business located in the State of California.

*Response*: Defendants admit the allegations.

4.    On information and belief, defendant ACAP FARMS, LLC ("ACAP Farms") is, and at all times mentioned herein was, a California limited liability company licensed to do business in the State of California, with its principal place of business located in the State of California.

*Response*: Defendants admit the allegations.

5.    On information and belief, defendant C & A FARMS, LLC ("C & A Farms") is, and at all times mentioned herein was, a California limited liability company licensed to do business in

1  the State of California, with its principal place of business located in the State of California.

2      **Response**: Defendants admit the allegations.

3      6.      On information and belief, defendant CANTUA ORCHARDS, LLC ("Cantua

4  Orchards") is, and at all times mentioned herein was, a California limited liability company licensed

5  to do business in the State of California, with its principal place of business located in the State of

6  California.

7      **Response**: Defendants admit the allegations.

8      7.      On information and belief, defendant COPPER AVENUE INVESTMENTS, LLC

9  ("Copper Avenue") is, and at all times mentioned herein was, a California limited liability company

10  licensed to do business in the State of California, with its principal place of business located in the

11  State of California.

12      **Response**: Defendants admit the allegations.

13      8.      On information and belief, defendant FFGT FARMS, LLC ("FFGT Farms") is, and

14  at all times mentioned herein was, a California limited liability company licensed to do business in

15  the State of California, with its principal place of business located in the State of California.

16      **Response**: Defendants admit the allegations.

17      9.      On information and belief, defendant GRADON FARMS, LLC ("Gradon Farms") is,

18  and at all times mentioned herein was, a California limited liability company licensed to do business

19  in the State of California, with its principal place of business located in the State of California.

20      **Response**: Defendants admit the allegations.

21      10.      On information and belief, defendant GRANTOR REAL ESTATE INVESTMENTS,

22  LLC ("Grantor Real Estate") is, and at all times mentioned herein was, a California limited liability

23  company licensed to do business in the State of California, with its principal place of business located

24  in the State of California.

25      **Response**: Defendants admit the allegations.

26      11.      On information and belief, defendant LINCOLN GRANTOR FARMS, LLC

KELLER BENVENUTTI KIM LLP
425 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105

ANSWER TO FIRST AMENDED COMPLAINT

("Lincoln Grantor Farms") is, and at all times mentioned herein was, a California limited liability company licensed to do business in the State of California, with its principal place of business located in the State of California.

**Response:** Defendants admit the allegations.

12.    On information and belief, defendant LOCANS INVESTMENTS, LLC ("Locans Investments") is, and at all times mentioned herein was, a California limited liability company licensed to do business in the State of California, with its principal place of business located in the State of California.

**Response:** Defendants admit the allegations.

13.    On information and belief, defendant WILLOW AVENUE INVESTMENTS, LLC ("Willow Avenue") is, and at all times mentioned herein was, a California limited liability company licensed to do business in the State of California, with its principal place of business located in the State of California.

**Response:** Defendants admit the allegations.

14.    On information and belief, defendant DARIUS ASSEMI ("Darius Assemi" or "Darius") is, and at all times mentioned herein was, an individual residing in Fresno County, California.

**Response:** Defendants admit the allegations.

15.    On information and belief, defendant FARID ASSEMI ("Farid Assemi" or "Farid") is, and at all times mentioned herein was, an individual residing in Fresno County, California.

**Response:** Defendants admit that Farid Assemi previously resided in Fresno County, California, but he has resided in Monterey County over the past few years, so on that basis deny the allegation that he resided solely in Fresno County, California at all relevant times mentioned here.

16.    On information and belief, defendant FARSHID ASSEMI ("Farshid Assemi" or "Farshid") is, and at all times mentioned herein was, an individual residing in Fresno County, California.

KELLER BENVENUTTI KIM LLP
425 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105

ANSWER TO FIRST AMENDED COMPLAINT

*Response*: Defendants admit the allegations.

17.     On information and belief, defendant SONIA ASSEMI ("Sonia Assemi" or "Sonia") is, and at all times mentioned herein was, an individual residing in Fresno County, California.

*Response*: Defendants admit the allegations.

18.     Defendants Maricopa Orchards, 104 Investments, ACAP Farms, C & A Farms, Cantua Orchards, Copper Avenue, FFGT Farms, Gradon Farms, Grantor Real Estate, Lincoln Grantor Farms, Locans Investments, and Willow Avenue are collectively referred to herein as "Borrower Defendants" and individually as "Borrower Defendant."

*Response:* No response is required.

19.     Defendants Darius Assemi, Farid Assemi, Farshid Assemi, and Sonia Assemi are collectively referred to herein as the "Guarantor Defendants" and individually as "Guarantor Defendant."

*Response:* No response is required.

## II.    JURISDICTION AND VENUE

20.     The United States District Court for the Eastern District of California (the "Court") has subject matter jurisdiction over this action under 28 U.S.C. § 1332 because (a) the action is civil in nature, (b) diversity of citizenship exists between Plaintiff and each Defendant, and (c) the amount in controversy exceeds $75,000, exclusive of interest and costs.

*Response*: The allegation calls for a legal conclusion to which no response is required. To the extent that an admission or denial is required, Defendants admit that the Court has jurisdiction over Defendants.

21.     Venue in the Eastern District of California is proper because one or more Defendants reside in this district, and all Defendants are residents of the State of California.  *See* 28 U.S.C. § 1391(b)(1).  Venue is also proper in this district because a substantial part of the events or omissions giving rise to the claims occurred in this district and because a substantial portion of the property at issue in this action is situated in this district.  *See id.* § 1391(b)(2).

ANSWER TO FIRST AMENDED COMPLAINT

**Response:** The allegation calls for a legal conclusion to which no response is required. To the extent that an admission or denial is required, Defendants admit that venue in this District is proper.

## III.    GENERAL ALLEGATIONS

### A.    Loans Made to Borrower Defendants.

22.    Beginning in July 2020, Conterra Agricultural Capital, LLC ("Conterra") began making a number of loans to Borrower Defendants (collectively, the "Loans," and individually, a "Loan"), with each Loan made to and to be repaid by two or more Borrower Defendants and guaranteed by at least three Guarantor Defendants, as detailed below.  The Loans had been funded by American Equity, and contemporaneously with the closing of each Loan, Conterra would transfer its interest in the Loan to American Equity. Thereafter, Conterra would continue to service the Loan as agent for American Equity.

**Response:** Defendants aver that to the extent that there are written instruments for the Loans, such documents speak for themselves, and Defendants admit that the Loans' terms are within those documents unless subsequently modified. But to the extent that the allegations call for a legal conclusion about the effect of the Loans, a response is not required, and if a response is required, Defendants lack sufficient information to admit or deny the allegations and therefore deny them. Other than as to Defendants' execution of certain loans, Defendants lack sufficient information to admit or deny the allegations and therefore deny them. As to the final two sentences of this paragraph 22, Defendants lack sufficient information to admit or deny these allegations and therefore deny them.

### 1.    Loan #AG1021 and Loan #AG1024.

23.    On or about July 23, 2020, Conterra, as lender, made a loan to Maricopa Orchards and Willow Avenue, as borrowers, in the original principal amount of $5,550,000, identified as Loan #AG1021 (the "1021 Loan").

**Response:** Defendants admit the allegation except to the extent that the allegation calls for a legal conclusion about the effect of the 1021 Loan, a response is not required, and if a response is

KELLER BENVENUTTI KIM LLP
425 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105

ANSWER TO FIRST AMENDED COMPLAINT

required, Defendants lack sufficient information to admit or deny the allegations and therefore deny them.

24.    Maricopa Orchards and Willow Avenue's obligation to repay the 1021 Loan is memorialized in that certain promissory note titled *Note* and dated July 23, 2020 (the "1021 Note"), under which they promised to repay $5,550,000 in principal, with interest (originally set at the nondefault rate of 3.75% per annum), to Conterra. The 1021 Note requires semiannual payments of principal and interest to be made (the first in the amount of $94,400.66 plus all then accrued interest, and the following nineteen in the amount of $198,463.16 each) and has a ten-year term, maturing on July 23, 2030, at which time all remaining amounts owed thereunder become due and payable. A true and correct copy of the 1021 Note is attached hereto as **Exhibit 1**.

*Response:* Defendants aver that Exhibit 1 (the 1021 Note) is a written instrument that speaks for itself and admit that its terms are within that document unless subsequently modified. To the extent that the allegations call for a legal conclusion about the effect of Exhibit 1, a response is not required, and if a response is required, Defendants lack sufficient information to admit or deny the allegations and therefore deny them.

25.    The 1021 Note was originally secured by that certain *Deed of Trust[,] Security Agreement, Assignment of Rents and Fixture Filing* dated July 23, 2020, which was recorded in the official records of the Kern County Recorder on July 23, 2020, as Document No. 220096750 (the "1021-Kern Deed of Trust").

*Response:* Defendants aver that the 1021-Kern Deed of Trust is a written instrument that speaks for itself and otherwise lack sufficient information to admit or deny the allegations and therefore deny them.

26.    On or about July 23, 2020, Conterra, as lender, also extended a revolving line of credit loan to Maricopa Orchards and Willow Avenue, as borrowers, with advances not to exceed $4,696,367, which loan is identified as Loan #AG1024 (the "1024 Loan"). Funds in the amount of $1,310,840 were initially advanced to Maricopa Orchards and Willow Avenue under the 1024 Loan,

KELLER BENVENUTTI KIM LLP
425 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105

ANSWER TO FIRST AMENDED COMPLAINT

and on or about July 1, 2021, additional funds in the amount of $303,957 were advanced to Maricopa Orchards and Willow Avenue under the 1024 Loan.

**Response:** Defendants aver that the 1024 Loan is a written instrument that speaks for itself and admit that its terms are within that document unless subsequently modified. To the extent that the allegations call for a legal conclusion about the effect of the 1024 Loan, a response is not required and if a response is required, Defendants lack sufficient information to admit or deny the allegations and therefore deny them

27.    Maricopa Orchards and Willow Avenue's obligation to repay the 1024 Loan was originally memorialized in that certain promissory note titled *Note* and dated July 23, 2020 (the "1024 Note"), under which they promised to repay the amount advanced on the 1024 Loan, with interest (at a variable rate), to Conterra. The 1024 Note required semiannual interest-only payments to be made and has a seven-year term, maturing on July 23, 2027, at which time all remaining amounts owed thereunder become due and payable. A true and correct copy of the 1024 Note is attached hereto as **Exhibit 2**.

**Response:** Defendants aver that Exhibit 2 (the 1024 Note) is a written instrument that speaks for itself and admit that its terms are within that document unless subsequently modified. To the extent that the allegations call for a legal conclusion about the effect of Exhibit 2, a response is not required, and if a response is required, Defendants lack sufficient information to admit or deny the allegations and therefore deny them.

28.    The 1024 Note was originally secured by that certain *Open-End Deed of Trust (with Future Advance Clause)[,] Security Agreement, Assignment of Rents and Fixture Filing* dated July 23, 2020, which was recorded in the official records of the Kern County Recorder on July 23, 2020, as Document No. 220096752 (the "1024-Kern Deed of Trust").

**Response:** Defendants aver that the 1024-Kern Deed of Trust is a written instrument that speaks for itself and otherwise lack sufficient information to admit or deny the allegations and therefore deny them.

ANSWER TO FIRST AMENDED COMPLAINT

29.     In addition, a UCC financing statement, corresponding to both the 1021-Kern Deed of Trust and 1024-Kern Deed of Trust (together, the "1021/1024-Kern Deeds of Trust"), was also (a) filed with the California Secretary of State on October 12, 2020, as File No. U200029038629 (the "Filed 1021/1024 UCC-1"), and (b) recorded in the official records of the Kern County Recorder on October 23, 2020, as Document No. 220156769 (the "Recorded 1021/1024-Kern UCC-1"). The Filed 1021/1024 UCC-1 was subsequently amended (to address the omission of an exhibit) by a UCC financing statement amendment filed with the California Secretary of State on April 7, 2021, as File No. U210036237933 (the "1st Filed 1021/1024 UCC-3"). True and correct copies of the Filed 1021/1024 UCC-1 and 1st Filed 1021/1024 UCC-3 are attached hereto as **Exhibits 3 and 4**, respectively.

*Response:* Defendants aver that Exhibits 3 and 4 (the Filed 1021/1024 UCC-1 and 1st Filed 1021/1024 UCC-3) are written instruments that speak for themselves and to the extent that the allegations call for a legal conclusion about the effect of Exhibits 3 and 4, a response is not required, and if a response is required, Defendants lack sufficient information to admit or deny the allegations and therefore deny them.

30.     Under each of the 1021/1024-Kern Deed of Trust, Willow Avenue originally granted Conterra a security interest in certain real property (generally described as approximately 473 acres located in Kern County, California); all buildings, improvements, equipment, fixtures, and permanent plantings affixed to, attached to, or incorporated in the real property (including all rents, issues, profits, income, and proceeds therefrom); all water rights appurtenant to the real property; and other property as described in the 1021/1024-Kern Deeds of Trust (collectively, the "Original 1021/1024 Collateral"). Specifically excluded from the Original 1021/1024 Collateral, as set forth in the 1021/1024-Kern Deeds of Trust, are any "growing crop" and any "rolling stock" affixed or attached to the real property, as well as any "crop receivables." The 1021/1024-Kern Deeds of Trust also include an assignment-of-rents provision, under which Willow Avenue absolutely and unconditionally assigns all rents and revenues of the Original 1021/1024 Collateral to Conterra.

KELLER BENVENUTTI KIM LLP
425 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105

ANSWER TO FIRST AMENDED COMPLAINT

**KELLER BENVENUTTI KIM LLP**
425 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105

***Response:*** Other than as to Defendants' execution of certain loans, Defendants aver that the 1021/1024-Kern Deeds of Trust are written instruments that speak for themselves and to the extent that the allegations call for a legal conclusion about the effect of the 1021/1024-Kern Deeds of Trust, a response is not required, and if a response is required, Defendants lack sufficient information to admit or deny the allegations and therefore deny them.

31.    In connection with the 1021 Note and related loan documents and to induce Conterra to fund the 1021 Loan, Darius, Farid, and Farshid Assemi, as guarantors, each executed and delivered to Conterra, as lender, a written personal guaranty (the "1021 Darius Guaranty," "1021 Farid Guaranty," and "1021 Farshid Guaranty," respectively), each of which was similarly titled *Guaranty* and under which the three guaranteed the payment in full of any and all indebtedness owed by Maricopa Orchards and Willow Avenue to Conterra (or any assignee or transferee of Conterra's interest in such indebtedness). True and correct copies of the 1021 Darius Guaranty, 1021 Farid Guaranty, and 1021 Farshid Guaranty are attached hereto as **Exhibits 5, 6, and 7**, respectively.

***Response:*** As to the allegation "[i]n connection with the 1021 Note and related loan documents and to induce Conterra to fund the 1021 Loan," Other than as to Defendants' execution of certain loans, Defendants lack sufficient information to admit or deny the allegations and therefore deny them. Defendants aver that Exhibits 5, 6, and 7 (the 1021 Darius Guaranty, 1021 Farid Guaranty, and 1021 Farshid Guaranty) are written instruments that speak for themselves and admit that their terms are within those documents unless subsequently modified. To the extent that the allegations call for a legal conclusion about the effect of Exhibits 5, 6, and 7, a response is not required, and if a response is required, Defendants lack sufficient information to admit or deny the allegations and therefore deny them.

32.    Likewise, in connection with the 1024 Note and related loan documents and to induce Conterra to fund the 1024 Loan, Darius, Farid, and Farshid Assemi, as guarantors, each executed and delivered to Conterra, as lender, a written personal guaranty (the "1024 Darius Guaranty," "1024 Farid Guaranty," and "1024 Farshid Guaranty," respectively), each of which was similarly titled

ANSWER TO FIRST AMENDED COMPLAINT

*Guaranty* and under which the three guaranteed the payment in full of any and all indebtedness owed by Maricopa Orchards and Willow Avenue to Conterra (or any assignee or transferee of Conterra's interest in such indebtedness). True and correct copies of the 1024 Darius Guaranty, 1024 Farid Guaranty, and 1024 Farshid Guaranty are attached hereto as **Exhibits 8, 9, and 10**, respectively.

*Response:* As to the allegation "[i]n connection with the 1024 Note and related loan documents and to induce Conterra to fund the 1024 Loan," Defendants lack sufficient information to admit or deny the allegations and therefore deny them. Other than as to Defendants' execution of certain loans, Defendants aver that Exhibits 8, 9, and 10 (the 1024 Darius Guaranty, 1024 Farid Guaranty, and 1024 Farshid Guaranty) are written instruments that speak for themselves and admit that their terms are within those documents unless subsequently modified. To the extent that the allegations call for a legal conclusion about the effect of Exhibits 8, 9, and 10, a response is not required, and if a response is required, Defendants lack sufficient information to admit or deny the allegations and therefore deny them.

33.    Conterra assigned to American Equity all of its interests relating the 1021 Loan, including in the 1021 Note and 1021-Kern Deed of Trust, as evidenced by, among other things, (a) that certain *Allonge to Promissory Note* relating to the 1021 Note (the "1021 Allonge") and (b) that certain *Assignment of Deed of Trust*, which was recorded in the official records of the Kern County Recorder on July 23, 2020, as Document No. 220096751 (the "1021-Kern DOT Assignment"). Nevertheless, Conterra continues to act as American Equity's agent and loan servicer for the 1021 Loan.  A true and correct copy of the 1021 Allonge is attached hereto as **Exhibit 11**.

*Response:* Defendants lack sufficient information to admit or deny that "Conterra assigned to American Equity all of its interests relating the 1021 Loan" and that "Conterra continues to act as American Equity's agent and loan servicer for the 1021 Loan" and therefore deny those allegations. Defendants aver that Exhibit 11 (the 1021 Allonge) is a written instrument that speaks for itself and admit its terms are within that document unless subsequently modified. To the extent that the allegations call for a legal conclusion about the effect of Exhibit 11, a response is not required, and

KELLER BENVENUTTI KIM LLP
425 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105

ANSWER TO FIRST AMENDED COMPLAINT

if a response is required, Defendants lack sufficient information to admit or deny the allegations and therefore deny them.

34.    Conterra also assigned to American Equity all of its interests relating to the 1024 Loan, including in the 1024 Note and 1024-Kern Deed of Trust, as evidenced by, among other things, (a) that certain *Allonge to Promissory Note* relating to the 1024 Note (the "1024 Allonge"), and (b) that certain *Assignment of Deed of Trust*, which was recorded in the official records of the Kern County Recorder on July 23, 2020, as Document No. 220096753 (the "1024-Kern DOT Assignment").  Nevertheless, Conterra continues to act as American Equity's agent and loan servicer for the 1024 Loan.  A true and correct copy of the 1024 Allonge is attached hereto as **Exhibit 12**.

*Response:* Defendants lack sufficient information to admit or deny that "Conterra also assigned to American Equity all of its interests relating the 1024 Loan" and that "Conterra continues to act as American Equity's agent and loan servicer for the 1024 Loan" and therefore deny those allegations. Defendants aver that Exhibit 12 (the 1024 Allonge) is a written instrument that speaks for itself and admit its terms are within that document unless subsequently modified. To the extent that the allegations call for a legal conclusion about the effect of Exhibit 12, a response is not required, and if a response is required, Defendants lack sufficient information to admit or deny the allegations and therefore deny them.

35.    On or about December 16, 2021, American Equity, on the one hand, and Maricopa Orchards and Willow Avenue, on the other hand, entered into that certain *Collateral Substitution Agreement* dated December 16, 2021 (the "1021/1024 Collateral Substitution Agreement"), under which Maricopa Orchards and Willow Avenue agreed to substitute the Original 1021/1024 Collateral with other collateral in connection with the 1021 Loan and 1024 Loan.  A true and correct copy of the 1021/1024 Collateral Substitution Agreement is attached hereto as **Exhibit 13**.

*Response:* Defendants aver that Exhibit 13 (the 1021/1024 Collateral Substitution Agreement) is a written instrument that speaks for itself and admit its terms are within that document unless subsequently modified. Other than as to Defendants' execution of certain agreements, to the

ANSWER TO FIRST AMENDED COMPLAINT

KELLER BENVENUTTI KIM LLP
425 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105

extent that the allegations call for a legal conclusion about the effect of Exhibit 13, a response is not required, and if a response is required, Defendants lack sufficient information to admit or deny the allegations and therefore deny them.

36.    On or about December 16, 2021, Maricopa Orchards and Willow Avenue also exercised an option to convert the 1024 Loan, which was, at that time, a revolving line of credit loan, into a term loan to repay the amount of funds advanced to date under the 1024 Loan.  Accordingly, on or about December 16, 2021, American Equity, on the one hand, and Maricopa Orchards and Willow Avenue, on the other hand, entered into that certain *Agreement to Convert and Amended and Restated Note* dated December 16, 2021 (the "1024 Amended Note"), under which the terms of the 1024 Note were amended and Maricopa Orchards and Willow Avenue were now promising to repay $1,614,797 in principal, with interest (originally set at the nondefault rate of 3.75% per annum), to American Equity.  The 1024 Amended Note requires semiannual payments of principal and interest to be made (the first in the amount of all then accrued interest, and the following seventeen in the amount of $59,796.99 each) and matures on July 23, 2030, at which time all remaining amounts owed thereunder become due and payable.  A true and correct copy of the 1024 Amended Note is attached hereto as **Exhibit 14**.

***Response:*** Defendants aver that Exhibit 14 (the 1024 Amended Note) is a written instrument that speaks for itself and admit its terms are within that document unless subsequently modified. To the extent that the allegations call for a legal conclusion about the effect of Exhibit 14, a response is not required, and if a response is required, Defendants lack sufficient information to admit or deny the allegations and therefore deny them.

37.    In accordance with the 1021/1024 Collateral Substitution Agreement, the 1021 Note became secured by that certain *Deed of Trust[,] Security Agreement, Assignment of Rents and Fixture Filing* dated December 16, 2021, which was recorded in the official records of the Fresno County Recorder on December 17, 2021, as Document No. 2021-0206984 (the "1021-Fresno Deed of Trust").  A true and correct copy of the 1021-Fresno Deed of Trust is attached hereto as **Exhibit 15**.

ANSWER TO FIRST AMENDED COMPLAINT

KELLER BENVENUTTI KIM LLP
425 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105

*Response:* Defendants aver that Exhibit 15 (the 1021-Fresno Deed of Trust) is a written instrument that speaks for itself and admit its terms are within that document unless subsequently modified. To the extent that the allegations call for a legal conclusion about the effect of Exhibit 15, a response is not required, and if a response is required, Defendants lack sufficient information to admit or deny the allegations and therefore deny them.

38.    In accordance with the 1021/1024 Collateral Substitution Agreement, the 1024 Amended Note became secured by that certain *Deed of Trust[,] Security Agreement, Assignment of Rents and Fixture Filing* dated December 16, 2021, which was recorded in the official records of the Fresno County Recorder on December 17, 2021, as Document No. 2021-0206985 (the "<u>1024-Fresno Deed of Trust</u>").  A true and correct copy of the 1024-Fresno Deed of Trust is attached hereto as **<u>Exhibit 16</u>**.

*Response:* Defendants aver that Exhibit 16 (the 1024-Fresno Deed of Trust) is a written instrument that speaks for itself and admit its terms are within that document unless subsequently modified. To the extent that the allegations call for a legal conclusion about the effect of Exhibit 16, a response is not required, and if a response is required, Defendants lack sufficient information to admit or deny the allegations and therefore deny them.

39.    In addition, (a) a UCC financing statement, corresponding to both the 1021-Fresno Deed of Trust and 1024-Fresno Deed of Trust (together, the "<u>1021/1024-Fresno Deeds of Trust</u>"), was recorded in the official records of the Fresno County Recorder on December 17, 2021, as Document No. 2021-0206986 (the "<u>Recorded 1021/1024-Fresno UCC-1</u>"), and (b) two UCC financing statement amendments, further amending the Filed 1021/1024 UCC-1 and corresponding to the 1021/1024-Fresno Deeds of Trust, were filed with the California Secretary of State on December 19, 2021, as File No. U210111410316 (the "<u>2nd Filed 1021/1024 UCC-3</u>") and File No. U210111411217 (the "<u>3rd Filed 1021/1024 UCC-3</u>").  True and correct copies of the Recorded 1021/1024-Fresno UCC-1, 2nd Filed 1021/1024 UCC-3, and 3rd Filed 1021/1024 UCC-3 are attached hereto as **<u>Exhibits 17, 18, and 19</u>**, respectively.

ANSWER TO FIRST AMENDED COMPLAINT

*Response:* Defendants aver that Exhibits 17, 18, and 19 (the Recorded 1021/1024-Fresno UCC-1, 2nd Filed 1021/1024 UCC-3, and 3rd Filed 1021/1024 UCC-3) are written instruments that speak for themselves and otherwise lack sufficient information to admit or deny the allegations and therefore deny them.

40.    Under each of the 1021/1024-Fresno Deeds of Trust, Willow Avenue originally granted American Equity a security interest in certain real property (generally described as approximately 1,614.18 acres located in Fresno County, California); all buildings, improvements, equipment, fixtures, and permanent plantings affixed to, attached to, or incorporated in the real property (including all rents, issues, profits, income, and proceeds therefrom); all water rights appurtenant to the real property; and other property as described in the 1021/1024-Fresno Deeds of Trust (collectively, the "1021/1024 Collateral").    Specifically excluded from the 1021/1024 Collateral, as set forth in the 1021/1024-Fresno Deeds of Trust, are any "growing crop" and any "rolling stock" affixed or attached to the real property, as well as any "crop receivables."    The 1021/1024-Fresno Deeds of Trust also include an assignment-of-rents provision, under which Willow Avenue absolutely and unconditionally assigns all rents and revenues of the 1021/1024 Collateral to Conterra.

*Response:* Defendants aver that the 1021/1024-Fresno Deeds of Trust are written instruments that speak for themselves and otherwise lack sufficient information to admit or deny the allegations and therefore deny them. To the extent that the allegations call for a legal conclusion about the effect of the 1021/1024-Fresno Deeds of Trust, a response is not required, and if a response is required, Defendants lack sufficient information to admit or deny the allegations and therefore deny them.

41.    By (a) that certain *Substitution of Trustee and Partial Conveyance* recorded in the official records of the Fresno County Recorder on June 9, 2023, as Document No. 2023-0053791 (the "1021-Fresno Partial Reconveyance"), (b) that certain *Substitution of Trustee and Partial Conveyance* recorded in the official records of the Fresno County Recorder on June 9, 2023, as Document No. 2023-0053792 (the "1024-Fresno Partial Reconveyance"), (c) a UCC financing

KELLER BENVENUTTI KIM LLP
425 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105

ANSWER TO FIRST AMENDED COMPLAINT

statement amendment recorded in the official records of the Fresno County Recorder on June 9, 2023, as Document No. 2023-0053793 (the "Recorded 1021/1024-Fresno UCC-3"), and (d) a UCC financing statement amendment filed with the California Secretary of State on December 9, 2023, as File No. U230040617926 (the "4th Filed 1021/1024 UCC-3"), American Equity subsequently released its liens against certain property constituting a part of the 1021/1024 Collateral that was subject to the 1021/1024-Fresno Deeds of Trust (including certain land located in Fresno County, California, and identified by APN: 027-171-82-S) (the "Reconveyed 1021/1024 Former Collateral"), while retaining its liens against all other property and collateral described in the 1021/1024-Fresno Deeds of Trust (the "Remaining 1021/1024 Collateral"). True and correct copies of the 1021-Fresno Partial Reconveyance, 1024-Fresno Partial Reconveyance, Recorded 1021/1024-Fresno UCC-3, and 4th Filed 1021/1024 UCC-3 are attached hereto as **Exhibits 20, 21, 22, and 23**, respectively.

*Response:* Defendants aver that Exhibits 20, 21, 22, and 23 (the 1021-Fresno Partial Reconveyance, 1024-Fresno Partial Reconveyance, Recorded 1021/1024-Fresno UCC-3, and 4th Filed 1021/1024 UCC-3) are written instruments that speak for themselves and otherwise lack sufficient information to admit or deny the allegations and therefore deny them. To the extent that the allegations call for a legal conclusion about the effect of Exhibits 20, 21, 22, and 23, a response is not required, and if a response is required, Defendants lack sufficient information to admit or deny the allegations and therefore deny them.

**2.    Loan #AG1022.**

42.    On or about July 23, 2020, Conterra, as lender, made a loan to Maricopa Orchards and Lincoln Grantor Farms, as borrowers, in the original principal amount of $288,000, identified as Loan #AG1022 (the "1022 Loan").

*Response:* Defendants admit the allegation except to the extent that the allegation calls for a legal conclusion about the effect of the 1022 Loan, a response is not required, and if a response is required, Defendants lack sufficient information to admit or deny the allegations and therefore deny them.

ANSWER TO FIRST AMENDED COMPLAINT

43.     Maricopa Orchards and Lincoln Grantor Farms' obligation to repay the 1022 Loan is memorialized in that certain promissory note titled *Note* and dated July 23, 2020 (the "1022 Note"), under which they promised to repay $288,000 in principal, with interest (originally set at the nondefault rate of 3.75% per annum), to Conterra. The 1022 Note requires semiannual payments of principal and interest to be made (the first in the amount of $4,898.63 plus all then accrued interest, and the following nineteen in the amount of $10,298.63 each) and has a ten-year term, maturing on July 23, 2030, at which time all remaining amounts owed thereunder become due and payable.   A true and correct copy of the 1022 Note is attached hereto as **Exhibit 24**.

*Response:* Other than as to Defendants' execution of certain loans, Defendants aver that Exhibit 24 (the 1022 Note) is a written instrument that speaks for itself and admit that its terms are within that document unless subsequently modified, and otherwise, to the extent that the allegations call for a legal conclusion about the effect of Exhibit 24, a response is not required, and if a response is required, Defendants lack sufficient information to admit or deny the allegations and therefore deny them.

44.     The 1022 Note is secured by that certain *Deed of Trust[,] Security Agreement, Assignment of Rents and Fixture Filing* dated July 23, 2020, which was recorded in the official records of the Kern County Recorder on July 23, 2020, as Document No. 220096754 (the "1022 Deed of Trust").   A corresponding UCC financing statement was also (a) filed with the California Secretary of State on October 12, 2020, as File No. U200024956631 (the "Filed 1022 UCC-1"), and (b) recorded in the official records of the Kern County Recorder on October 13, 2020, as Document No. 220148455 (the "Recorded 1022 UCC-1").   True and correct copies of the 1022 Deed of Trust, Filed 1022 UCC-1, and Recorded 1022 UCC-1 are attached hereto as **Exhibits 25, 26, and 27**, respectively.

*Response:* Defendants aver that Exhibits 25, 26, and 27 (the 1022 Deed of Trust, Filed 1022 UCC-1, and Recorded 1022 UCC-1) are written instruments that speak for themselves and admit that the terms of the 1022 Deed of Trust are within that document unless subsequently modified, and as

ANSWER TO FIRST AMENDED COMPLAINT

KELLER BENVENUTTI KIM LLP
425 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105

to the Filed 1022 UCC-1 and Recorded 1022 UCC-1, Defendants otherwise lack sufficient information to admit or deny those allegations and therefore deny them. To the extent that the allegations call for a legal conclusion about the effect of Exhibits 25, 26, and 27, a response is not required, and if a response is required, Defendants lack sufficient information to admit or deny the allegations and therefore deny them.

45. Under the 1022 Deed of Trust, Lincoln Grantor Farms originally granted Conterra a security interest in certain real property (generally described as approximately 20 acres located in Kern County, California); all buildings, improvements, equipment, fixtures, and permanent plantings affixed to, attached to, or incorporated in the real property (including all rents, issues, profits, income, and proceeds therefrom); all water rights appurtenant to the real property; and other property as described in the 1022 Deed of Trust (collectively, the "1022 Collateral"). Specifically excluded from the 1022 Collateral, as set forth in the 1022 Deed of Trust, are any "growing crop" and any "rolling stock" affixed or attached to the real property, as well as any "crop receivables." The 1022 Deed of Trust also includes an assignment-of-rents provision, under which Lincoln Grantor Farms absolutely and unconditionally assigns all rents and revenues of the 1022 Collateral to Conterra.

***Response:*** Defendants aver that the 1022 Deed of Trust is a written instrument that speaks for itself and admit that the terms of the 1022 Deed of Trust are within that document unless subsequently modified. To the extent that the allegations call for a legal conclusion about the effect of Exhibit 25, a response is not required, and if a response is required, Defendants lack sufficient information to admit or deny the allegations and therefore deny them.

46. In connection with the 1022 Note and related loan documents and to induce Conterra to fund the 1022 Loan, Darius, Farid, and Farshid Assemi, as guarantors, each executed and delivered to Conterra, as lender, a written personal guaranty (the "1022 Darius Guaranty," "1022 Farid Guaranty," and "1022 Farshid Guaranty," respectively), each of which was similarly titled *Guaranty* and under which the three guaranteed the payment in full of any and all indebtedness owed by Maricopa Orchards and Lincoln Grantor Farms to Conterra (or any assignee or transferee of

ANSWER TO FIRST AMENDED COMPLAINT

KELLER BENVENUTTI KIM LLP
425 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105

KELLER BENVENUTTI KIM LLP
425 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105

Conterra's interest in such indebtedness). True and correct copies of the 1022 Darius Guaranty, 1022 Farid Guaranty, and 1022 Farshid Guaranty are attached hereto as **Exhibits 28, 29, and 30**, respectively.

*Response:* As to the allegation "[i]n connection with the 1022 Note and related loan documents and to induce Conterra to fund the 1022 Loan," Defendants lack sufficient information to admit or deny the allegations and therefore deny them. Defendants aver that Exhibits 28, 29, and 30 (the 1022 Darius Guaranty, 1022 Farid Guaranty, and 1022 Farshid Guaranty) are written instruments that speak for themselves and admit that their terms are within those documents unless subsequently modified. To the extent that the allegations call for a legal conclusion about the effect of Exhibits 28, 29, and 30, a response is not required, and if a response is required, Defendants lack sufficient information to admit or deny the allegations and therefore deny them.

47.     Conterra assigned to American Equity all of its interests relating to the 1022 Loan, including in the 1022 Note and 1022 Deed of Trust, as evidenced by, among other things, (a) that certain *Allonge to Promissory Note* relating to the  1022 Note (the "1022 Allonge") and (b) that certain *Assignment of Deed of Trust*, which was recorded in the official records of the Kern County Recorder on July 23, 2020, as Document No. 220096755 (the "1022 DOT Assignment"). Nevertheless, Conterra continues to act as American Equity's agent and loan servicer for the 1022 Loan.  True and correct copies of the 1022 Allonge and 1022 DOT Assignment are attached hereto as **Exhibits 31 and 32**, respectively.

*Response:* Defendants lack sufficient information to admit or deny that "Conterra assigned to American Equity all of its interests relating the 1022 Loan" and that "Conterra continues to act as American Equity's agent and loan servicer for the 1022 Loan" and therefore deny those allegations. Defendants aver that Exhibits 31 and 32 (the 1022 Allonge and 1022 DOT Assignment) are written instruments that speak for themselves and admit that their terms are within those documents unless subsequently modified. To the extent that the allegations call for a legal conclusion about the effect

ANSWER TO FIRST AMENDED COMPLAINT

1    of Exhibits 31 and 32, a response is not required, and if a response is required, Defendants lack

2    sufficient information to admit or deny the allegations and therefore deny them.

3                                        **3.    Loan #AG1023.**

4        48.    On or about July 23, 2020, Conterra, as lender, made a loan to Maricopa Orchards and

5    Grantor Real Estate, as borrowers, in the original principal amount of $3,312,000, identified as Loan

6    #AG1023 (the "1023 Loan").

7        *Response:* Defendants admit the allegation except to the extent that the allegation calls for a

8    legal conclusion about the effect of the 1023 Loan, a response is not required, and if a response is

9    required, Defendants lack sufficient information to admit or deny the allegations and therefore deny

10   them.

11       49.    Maricopa Orchards and Grantor Real Estate's obligation to repay the 1023 Loan is

12   memorialized in that certain promissory note titled *Note* and dated July 23, 2020 (the "1023 Note"),

13   under which they promised to repay $3,312,000 in principal, with interest (originally set at the

14   nondefault rate of 3.75% per annum), to Conterra.  The 1023 Note requires semiannual payments of

15   principal and interest to be made (the first in the amount of $56,334.23 plus all then accrued interest,

16   and the following nineteen in the amount of $118,434.23 each) and has a ten-year term, maturing on

17   July 23, 2030, at which time all remaining amounts owed thereunder become due and payable.  A

18   true and correct copy of the 1023 Note is attached hereto as **Exhibit 33**.

19       *Response:* Other than as to Defendants' execution of certain loans, Defendants aver that

20   Exhibit 33 (the 1023 Note) is a written instrument that speaks for itself and admit that its terms are

21   within that document unless subsequently modified, and otherwise, to the extent that the allegations

22   call for a legal conclusion about the effect of Exhibit 33, a response is not required, and if a response

23   is required, Defendants lack sufficient information to admit or deny the allegations and therefore

24   deny them.

25       50.    The 1023 Note is secured by that certain *Deed of Trust[,] Security Agreement,*

26   *Assignment of Rents and Fixture Filing* dated July 23, 2020, which was recorded in the official

KELLER BENVENUTTI KIM LLP
425 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105

ANSWER TO FIRST AMENDED COMPLAINT

records of the Kern County Recorder on July 23, 2020, as Document No. 220096746 (the "1023 Deed of Trust"). A corresponding UCC financing statement was also (a) filed with the California Secretary of State on October 12, 2020, as File No. U200025028422 (the "Filed 1023 UCC-1"), and (b) recorded in the official records of the Kern County Recorder on October 23, 2020, as Document No. 220156768 (the "Recorded 1023 UCC-1"). True and correct copies of the 1023 Deed of Trust, Filed 1023 UCC-1, and Recorded 1023 UCC-1 are attached hereto as **Exhibits 34, 35, and 36**, respectively.

*Response:* Defendants aver that Exhibits 34, 35, and 36 (the 1023 Deed of Trust, Filed 1023 UCC-1, and Recorded 1023 UCC-1) are written instruments that speak for themselves and admit that the terms of the 1023 Deed of Trust are within that document unless subsequently modified, and as to the Filed 1023 UCC-1 and Recorded 1023 UCC-1, Defendants otherwise lack sufficient information to admit or deny those allegations and therefore deny them. To the extent that the allegations call for a legal conclusion about the effect of Exhibits 34, 35, and 36, a response is not required, and if a response is required, Defendants lack sufficient information to admit or deny the allegations and therefore deny them.

51.     Under the 1023 Deed of Trust, Grantor Real Estate originally granted Conterra a security interest in certain real property (generally described as approximately 273 acres located in Kern County, California); all buildings, improvements, equipment, fixtures, and permanent plantings affixed to, attached to, or incorporated in the real property (including all rents, issues, profits, income, and proceeds therefrom); all water rights appurtenant to the real property; and other property as described in the 1023 Deed of Trust (collectively, the "1023 Collateral"). Specifically excluded from the 1023 Collateral, as set forth in the 1022 Deed of Trust, are any "growing crop" and any "rolling stock" affixed or attached to the real property, as well as any "crop receivables." The 1023 Deed of Trust also includes an assignment-of-rents provision, under which Grantor Real Estate absolutely and unconditionally assigns all rents and revenues of the 1023 Collateral to Conterra.

KELLER BENVENUTTI KIM LLP
425 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105

ANSWER TO FIRST AMENDED COMPLAINT

***Response:*** Defendants aver that the 1023 Deed of Trust is a written instrument that speaks for itself and admit that the terms of the 1023 Deed of Trust are within that document unless subsequently modified. To the extent that the allegations call for a legal conclusion about the effect of Exhibit 34, a response is not required, and if a response is required, Defendants lack sufficient information to admit or deny the allegations and therefore deny them.

52.     In connection with the 1023 Note and related loan documents and to induce Conterra to fund the 1023 Loan, Darius, Farid, and Farshid Assemi, as guarantors, each executed and delivered to Conterra, as lender, a written personal guaranty (the "1023 Darius Guaranty," "1023 Farid Guaranty," and "1023 Farshid Guaranty," respectively), each of which was similarly titled *Guaranty* and under which the three guaranteed the payment in full of any and all indebtedness owed by Maricopa Orchards and Grantor Real Estate to Conterra (or any assignee or transferee of Conterra's interest in such indebtedness).   True and correct copies of the 1023 Darius Guaranty, 1023 Farid Guaranty, and 1023 Farshid Guaranty are attached hereto as **Exhibits 37, 38, and 39**, respectively.

***Response:*** As to the allegation "[i]n connection with the 1023 Note and related loan documents and to induce Conterra to fund the 1023 Loan," Defendants lack sufficient information to admit or deny the allegations and therefore deny them. Defendants aver that Exhibits 37, 38, and 39 (the 1023 Darius Guaranty, 1023 Farid Guaranty, and 1023 Farshid Guaranty) are written instruments that speak for themselves and admit that their terms are within those documents unless subsequently modified. To the extent that the allegations call for a legal conclusion about the effect of Exhibits 37, 38, and 39, a response is not required, and if a response is required, Defendants lack sufficient information to admit or deny the allegations and therefore deny them.

53.     Conterra assigned to American Equity all of its interests relating to the 1023 Loan, including in the 1023 Note and 1023 Deed of Trust, as evidenced by, among other things, (a) that certain *Allonge to Promissory Note* relating to the  1023 Note (the "1023 Allonge") and (b) that certain *Assignment of Deed of Trust*, which was recorded in the official records of the Kern County Recorder on July 23, 2020, as Document No. 220096747 (the "1023 DOT Assignment").

KELLER BENVENUTTI KIM LLP
425 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105

ANSWER TO FIRST AMENDED COMPLAINT

Nevertheless, Conterra continues to act as American Equity's agent and loan servicer for the 1023 Loan. True and correct copies of the 1023 Allonge and 1023 DOT Assignment are attached hereto as **Exhibits 40 and 41**, respectively.

*Response:* Defendants lack sufficient information to admit or deny that "Conterra assigned to American Equity all of its interests relating the 1023 Loan" and that "Conterra continues to act as American Equity's agent and loan servicer for the 1023 Loan" and therefore deny those allegations. Defendants aver that Exhibits 40 and 41 (the 1023 Allonge and 1023 DOT Assignment) are written instruments that speak for themselves and admit that their terms are within those documents unless subsequently modified. To the extent that the allegations call for a legal conclusion about the effect of Exhibits 40 and 41, a response is not required, and if a response is required, Defendants lack sufficient information to admit or deny the allegations and therefore deny them.

### 4. Loan #AG1069.

54.    On or about October 15, 2021, Conterra, as lender, made a loan to Maricopa Orchards and Gradon Farms, as borrowers, in the original principal amount of $3,852,300, identified as Loan #AG1069 (the "1069 Loan").

*Response:* Defendants admit the allegation except to the extent that the allegation calls for a legal conclusion about the effect of the 1069 Loan, a response is not required, and if a response is required, Defendants lack sufficient information to admit or deny the allegations and therefore deny them.

55.    Maricopa Orchards and Gradon Farms' obligation to repay the 1069 Loan is memorialized in that certain promissory note titled *Note* and dated October 15, 2021 (the "1069 Note"), under which they promised to repay $3,852,300 in principal, with interest (originally set at the nondefault rate of 3.5% per annum), to Conterra. The 1069 Note requires semiannual payments of principal and interest to be made (the first in the amount of $67,307.74 plus all then accrued interest, and the following nineteen in the amount of $134,722.99 each) and has a ten-year term, maturing on October 15, 2031, at which time all remaining amounts owed thereunder become due

KELLER BENVENUTTI KIM LLP
425 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105

ANSWER TO FIRST AMENDED COMPLAINT

and payable.  A true and correct copy of the 1069 Note is attached hereto as **Exhibit 42**.

**Response:** Defendants aver that Exhibit 42 (the 1069 Note) is a written instrument that speaks for itself and admit that its terms are within that document unless subsequently modified. Other than as to Defendants' execution of certain loans, to the extent that the allegations call for a legal conclusion about the effect of Exhibit 42, a response is not required, and if a response is required, Defendants lack sufficient information to admit or deny the allegations and therefore deny them.

56.    The 1069 Note is secured by that certain *Deed of Trust[,] Security Agreement, Assignment of Rents and Fixture Filing* dated October 15, 2021, which was recorded in the official records of the Fresno County Recorder on October 15, 2021, as Document No. 2021-0172474 (the "1069 Deed of Trust").  A corresponding UCC financing statement was also filed with the California Secretary of State on October 20, 2021, as File No. U210094921531 (the "Filed 1069 UCC-1"). True and correct copies of the 1069 Deed of Trust and Filed 1069 UCC-1 are attached hereto as **Exhibits 43 and 44**, respectively.

**Response:** Defendants aver that Exhibits 43 and 44 (the 1069 Deed of Trust and Filed 1069 UCC-1) are written instruments that speak for themselves and admit that the terms of the 1069 Deed of Trust are within that document unless subsequently modified, and as to the Filed 1069 UCC-1, Defendants otherwise lack sufficient information to admit or deny those allegations and therefore deny them. To the extent that the allegations call for a legal conclusion about the effect of Exhibits 43 and 44, a response is not required, and if a response is required, Defendants lack sufficient information to admit or deny the allegations and therefore deny them.

57.    Under the 1069 Deed of Trust, Gradon Farms originally granted Conterra a security interest in certain real property (generally described as approximately 642 acres located in Fresno County, California); all buildings, improvements, equipment, fixtures, and permanent plantings affixed to, attached to, or incorporated in the real property (including all rents, issues, profits, income, and proceeds therefrom); all water rights appurtenant to the real property; and other property as described in the 1069 Deed of Trust (collectively, the "1069 Collateral").  Specifically excluded from

ANSWER TO FIRST AMENDED COMPLAINT

the 1069 Collateral, as set forth in the 1069 Deed of Trust, are any "growing crop" and any "rolling stock" affixed or attached to the real property, as well as any "crop receivables." The 1069 Deed of Trust also includes an assignment-of-rents provision, under which Gradon Farms absolutely and unconditionally assigns all rents and revenues of the 1069 Collateral to Conterra.

*Response:* Defendants aver that the 1069 Deed of Trust is a written instrument that speaks for itself and admit that the terms of the 1069 Deed of Trust are within that document unless subsequently modified. To the extent that the allegations call for a legal conclusion about the effect of Exhibit 43, a response is not required, and if a response is required, Defendants lack sufficient information to admit or deny the allegations and therefore deny them.

58.    In connection with the 1069 Note and related loan documents and to induce Conterra to fund the 1069 Loan, Darius, Farid, and Farshid Assemi, as guarantors, each executed and delivered to Conterra, as lender, a written personal guaranty (the "1069 Darius Guaranty," "1069 Farid Guaranty," and "1069 Farshid Guaranty," respectively), each of which was similarly titled *Guaranty* and under which the three guaranteed the payment in full of any and all indebtedness owed by Maricopa Orchards and Gradon Farms to Conterra (or any assignee or transferee of Conterra's interest in such indebtedness). True and correct copies of the 1069 Darius Guaranty, 1069 Farid Guaranty, and 1069 Farshid Guaranty are attached hereto as **Exhibits 45, 46, and 47**, respectively.

*Response:* As to the allegation "[i]n connection with the 1069 Note and related loan documents and to induce Conterra to fund the 1069 Loan," Defendants lack sufficient information to admit or deny the allegations and therefore deny them. Defendants aver that Exhibits 45, 46, and 47 (the 1069 Darius Guaranty, 1069 Farid Guaranty, and 1069 Farshid Guaranty) are written instruments that speak for themselves and admit that their terms are within those documents unless subsequently modified. To the extent that the allegations call for a legal conclusion about the effect of Exhibits 45, 46, and 47, a response is not required, and if a response is required, Defendants lack sufficient information to admit or deny the allegations and therefore deny them.

59.    Conterra assigned to American Equity all of its interests relating to the 1069 Loan,

ANSWER TO FIRST AMENDED COMPLAINT

including in the 1069 Note and 1069 Deed of Trust, as evidenced by, among other things, (a) that certain *Allonge to Promissory Note* relating to the 1069 Note (the "1069 Allonge") and (b) that certain *Assignment of Deed of Trust*, which was recorded in the official records of the Fresno County Recorder on October 15, 2021, as Document No. 2021-0172475 (the "1069 DOT Assignment"). Nevertheless, Conterra continues to act as American Equity's agent and loan servicer for the 1069 Loan. True and correct copies of the 1069 Allonge and 1069 DOT Assignment are attached hereto as **Exhibits 48 and 49**, respectively.

*Response:* Defendants lack sufficient information to admit or deny that "Conterra assigned to American Equity all of its interests relating the 1069 Loan" and that "Conterra continues to act as American Equity's agent and loan servicer for the 1069 Loan" and therefore deny those allegations. Defendants aver that Exhibits 48 and 49 (the 1069 Allonge and 1069 DOT Assignment) are written instruments that speak for themselves and admit that their terms are within those documents unless subsequently modified. To the extent that the allegations call for a legal conclusion about the effect of Exhibits 48 and 49, a response is not required, and if a response is required, Defendants lack sufficient information to admit or deny the allegations and therefore deny them.

### 5. Loan #AG1078.

60.    On or about December 10, 2021, Conterra, as lender, made a loan to Maricopa Orchards and Lincoln Grantor Farms, as borrowers, in the original principal amount of $3,530,910, identified as Loan #AG1078 (the "1078 Loan").

*Response:* Defendants admit the allegation except to the extent that the allegation calls for a legal conclusion about the effect of the 1078 Loan, a response is not required, and if a response is required, Defendants lack sufficient information to admit or deny the allegations and therefore deny them.

61.    Maricopa Orchards and Lincoln Grantor Farms' obligation to repay the 1078 Loan is memorialized in that certain promissory note titled *Note* and dated December 10, 2021 (the "1078 Note"), under which they promised to repay $3,530,910 in principal, with interest (originally set at

ANSWER TO FIRST AMENDED COMPLAINT

KELLER BENVENUTTI KIM LLP
425 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105

the nondefault rate of 3.5% per annum), to Conterra.  The 1078 Note requires semiannual payments of principal and interest to be made (the first in the amount of $61,692.39 plus all then accrued interest, and the following eighteen in the amount of $123,483.31 each) and has a ten-year term, maturing on December 10, 2031, at which time all remaining amounts owed thereunder become due and payable.  A true and correct copy of the 1078 Note is attached hereto as **Exhibit 50**.

*Response:* Defendants aver that Exhibit 50 (the 1078 Note) is a written instrument that speaks for itself and admit that its terms are within that document unless subsequently modified. Other than as to Defendants' execution of certain loans, to the extent that the allegations call for a legal conclusion about the effect of Exhibit 50, a response is not required, and if a response is required, Defendants lack sufficient information to admit or deny the allegations and therefore deny them.

62.    The 1078 Note is secured by that certain *Deed of Trust[,] Security Agreement, Assignment of Rents and Fixture Filing* dated December 10, 2021, which was recorded in the official records of the Fresno County Recorder on December 10, 2021, as Document No. 2021-0202493 (the "1078 Deed of Trust"). A corresponding UCC financing statement was also filed with the California Secretary of State on December 14, 2021, as File No. U210110126717 (the "Filed 1078 UCC-1"). True and correct copies of the 1078 Deed of Trust and Filed 1078 UCC-1 are attached hereto as **Exhibits 51 and 52**, respectively.

*Response:* Defendants aver that Exhibits 51 and 52 (the 1078 Deed of Trust and Filed 1078 UCC-1) are written instruments that speak for themselves and admit that the terms of the 1078 Deed of Trust are within that document unless subsequently modified, and as to the Filed 1078 UCC-1, Defendants otherwise lack sufficient information to admit or deny those allegations and therefore deny them. To the extent that the allegations call for a legal conclusion about the effect of Exhibits 51 and 52, a response is not required, and if a response is required, Defendants lack sufficient information to admit or deny the allegations and therefore deny them.

63.    Under the 1078 Deed of Trust, Lincoln Grantor Farms originally granted Conterra a security interest in certain real property (generally described as approximately 527 acres located in

ANSWER TO FIRST AMENDED COMPLAINT

KELLER BENVENUTTI KIM LLP
425 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105

Fresno County, California); all buildings, improvements, equipment, fixtures, and permanent plantings affixed to, attached to, or incorporated in the real property (including all rents, issues, profits, income, and proceeds therefrom); all water rights appurtenant to the real property; and other property as described in the 1078 Deed of Trust (collectively, the "1078 Collateral").  Specifically excluded from the 1078 Collateral, as set forth in the 1078 Deed of Trust, are any "growing crop" and any "rolling stock" affixed or attached to the real property, as well as any "crop receivables." The 1078 Deed of Trust also includes an assignment-of-rents provision, under which Lincoln Grantor Farms absolutely and unconditionally assigns all rents and revenues of the 1078 Collateral to Conterra.

**Response:** Defendants aver that the 1078 Deed of Trust is a written instrument that speaks for itself and admit that the terms of the 1078 Deed of Trust are within that document unless subsequently modified. To the extent that the allegations call for a legal conclusion about the effect of Exhibit 51, a response is not required, and if a response is required, Defendants lack sufficient information to admit or deny the allegations and therefore deny them.

64.    In connection with the 1078 Note and related loan documents and to induce Conterra to fund the 1078 Loan, Darius, Farid, and Farshid Assemi, as guarantors, each executed and delivered to Conterra, as lender, a written personal guaranty (the "1078 Darius Guaranty," "1078 Farid Guaranty," and "1078 Farshid Guaranty," respectively), each of which was similarly titled *Guaranty* and under which the three guaranteed the payment in full of any and all indebtedness owed by Maricopa Orchards and Lincoln Grantor Farms to Conterra (or any assignee or transferee of Conterra's interest in such indebtedness).  True and correct copies of the 1078 Darius Guaranty, 1078 Farid Guaranty, and 1078 Farshid Guaranty are attached hereto as **Exhibits 53, 54, and 55**, respectively.

**Response:** As to the allegation "[i]n connection with the 1078 Note and related loan documents and to induce Conterra to fund the 1078 Loan," Defendants lack sufficient information to admit or deny the allegations and therefore deny them. Defendants aver that Exhibits 53, 54, and 55

ANSWER TO FIRST AMENDED COMPLAINT

KELLER BENVENUTTI KIM LLP
425 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105

(the 1078 Darius Guaranty, 1078 Farid Guaranty, and 1078 Farshid Guaranty) are written instruments that speak for themselves and admit that their terms are within those documents unless subsequently modified. To the extent that the allegations call for a legal conclusion about the effect of Exhibits 53, 54, and 55, a response is not required, and if a response is required, Defendants lack sufficient information to admit or deny the allegations and therefore deny them.

65.    Conterra assigned to American Equity all of its interests relating to the 1078 Loan, including in the 1078 Note and 1078 Deed of Trust, as evidenced by, among other things, (a) that certain *Allonge to Promissory Note* relating to the  1078 Note (the "<u>1078 Allonge</u>"), and (b) that certain *Assignment of Deed of Trust*, which was recorded in the official records of the Fresno County Recorder on December 10, 2021, as Document No. 2021-0202494 (the "<u>1078 DOT  Assignment</u>"). Nevertheless, Conterra continues to act as American Equity's agent and loan servicer for the 1078 Loan.  True and correct copies of the 1078 Allonge and 1078 DOT Assignment are attached hereto as **<u>Exhibits 56 and 57</u>**, respectively.

***Response:*** Defendants lack sufficient information to admit or deny that "Conterra assigned to American Equity all of its interests relating the 1078 Loan" and that "Conterra continues to act as American Equity's agent and loan servicer for the 1078 Loan" and therefore deny those allegations. Defendants aver that Exhibits 56 and 57 (the 1078 Allonge and 1078 DOT Assignment) are written instruments that speak for themselves and admit that their terms are within those documents unless subsequently modified. To the extent that the allegations call for a legal conclusion about the effect of Exhibits 56 and 57, a response is not required, and if a response is required, Defendants lack sufficient information to admit or deny the allegations and therefore deny them.

66.    By that certain *Substitution of Trustee and Partial Conveyance* recorded in the official records of the Fresno County Recorder on June 9, 2023, as Document No. 2023-0053790 (the "<u>1078 Partial Reconveyance</u>"), American Equity subsequently released its lien against certain property constituting a part of the  1078 Collateral that was subject to the 1078 Deed of Trust (including certain land located in Fresno County, California, and identified by APN: 027-171-81-S) (the "<u>Reconveyed</u>

ANSWER TO FIRST AMENDED COMPLAINT

1078 Former Collateral"), while retaining its lien against all other property and collateral described in the 1078 Deed of Trust (the "Remaining 1078 Collateral").  A true and correct copy of the 1078 Partial Conveyance is attached hereto as **Exhibit 58**.

*Response:* Defendants aver that Exhibit 58 (the 1078 Partial Reconveyance) is a written instrument that speaks for itself and admit that its terms are within that document unless subsequently modified. To the extent that the allegations call for a legal conclusion about the effect of Exhibit 58, a response is not required, and if a response is required, Defendants lack sufficient information to admit or deny the allegations and therefore deny them.

### 6.    Loan #AG1077.

67.    On or about December 17, 2021, Conterra, as lender, made a loan to Maricopa Orchards and FFGT Farms, as borrowers, in the original principal amount of $13,500,000, identified as Loan #AG1077 (the "1077 Loan").

*Response:* Defendants admit the allegation except to the extent that the allegation calls for a legal conclusion about the effect of the 1077 Loan, a response is not required, and if a response is required, Defendants lack sufficient information to admit or deny the allegations and therefore deny them.

68.    Maricopa Orchards and FFGT Farms' obligation to repay the 1077 Loan is memorialized in that certain promissory note titled *Note* and dated December 17, 2021 (the "1077 Note"), under which they promised to repay $13,500,000 in principal, with interest (originally set at the nondefault rate of 3.5% per annum), to Conterra.  The 1077 Note requires semiannual payments of principal and interest to be made (the first in the amount of $235,873.23 plus all then accrued interest, and the following eighteen in the amount of $472,123.23 each) and has a ten-year term, maturing on December 17, 2031, at which time all remaining amounts owed thereunder become due and payable.  A true and correct copy of the 1077 Note is attached hereto as **Exhibit 59**.

*Response:* Defendants aver that Exhibit 59 (the 1077 Note) is a written instrument that speaks for itself and admit that its terms are within that document unless subsequently modified. Other than

KELLER BENVENUTTI KIM LLP
425 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105

ANSWER TO FIRST AMENDED COMPLAINT

as to Defendants' execution of certain loans, to the extent that the allegations call for a legal conclusion about the effect of Exhibit 59, a response is not required, and if a response is required, Defendants lack sufficient information to admit or deny the allegations and therefore deny them.

69.     The 1077 Note is secured by that certain *Deed of Trust[,] Security Agreement, Assignment of Rents and Fixture Filing* dated December 17, 2021, which was recorded in the official records of the Fresno County Recorder on December 21, 2021, as Document No. 2021-0208172 (the "1077 Deed of Trust"). A corresponding UCC financing statement was also filed with the California Secretary of State on January 5, 2022, as File No. U220115881934 (the "Filed 1077 UCC-1"). True and correct copies of the 1077 Deed of Trust and Filed 1077 UCC-1 are attached hereto as **Exhibits 60 and 61**, respectively.

*Response:* Defendants aver that Exhibits 60 and 61 (the 1077 Deed of Trust and Filed 1077 UCC-1) are written instruments that speak for themselves and admit that the terms of the 1077 Deed of Trust are within that document unless subsequently modified, and as to the Filed 1077 UCC-1, Defendants otherwise lack sufficient information to admit or deny those allegations and therefore deny them. To the extent that the allegations call for a legal conclusion about the effect of Exhibits 60 and 61, a response is not required, and if a response is required, Defendants lack sufficient information to admit or deny the allegations and therefore deny them.

70.     Under the 1077 Deed of Trust, FFGT Farms originally granted Conterra a security interest in certain real property (generally described as approximately 630 acres located in Fresno County, California); all buildings, improvements, equipment, fixtures, and permanent plantings affixed to, attached to, or incorporated in the real property (including all rents, issues, profits, income, and proceeds therefrom); all water rights appurtenant to the real property; and other property as described in the 1077 Deed of Trust (collectively, the "1077 Collateral"). Specifically excluded from the 1077 Collateral, as set forth in the 1077 Deed of Trust, are any "growing crop" and any "rolling stock" affixed or attached to the real property, as well as any "crop receivables." The 1077 Deed of Trust also includes an assignment-of-rents provision, under which FFGT Farms absolutely and

ANSWER TO FIRST AMENDED COMPLAINT

unconditionally assigns all rents and revenues of the 1077 Collateral to Conterra.

*Response:* Defendants aver that the 1077 Deed of Trust is a written instrument that speaks for itself and admit that the terms of the 1077 Deed of Trust are within that document unless subsequently modified. To the extent that the allegations call for a legal conclusion about the effect of Exhibit 60, a response is not required, and if a response is required, Defendants lack sufficient information to admit or deny the allegations and therefore deny them.

71.    In connection with the 1077 Note and related loan documents and to induce Conterra to fund the 1077 Loan, Darius, Farid, and Farshid Assemi, as guarantors, each executed and delivered to Conterra, as lender, a written personal guaranty (the "<u>1077 Darius Guaranty</u>," "<u>1077 Farid Guaranty</u>," and "<u>1077 Farshid Guaranty</u>," respectively), each of which was similarly titled *Guaranty* and under which the three guaranteed the payment in full of any and all indebtedness owed by Maricopa Orchards and FFGT Farms to Conterra (or any assignee or transferee of Conterra's interest in such indebtedness).  True and correct copies of the 1077 Darius Guaranty, 1077 Farid Guaranty, and 1077 Farshid Guaranty are attached hereto as **<u>Exhibits 62, 63, and 64</u>**, respectively.

*Response:* As to the allegation "[i]n connection with the 1077 Note and related loan documents and to induce Conterra to fund the 1077 Loan," Defendants lack sufficient information to admit or deny the allegations and therefore deny them. Defendants aver that Exhibits 62, 63, and 64 (the 1077 Darius Guaranty, 1077 Farid Guaranty, and 1077 Farshid Guaranty) are written instruments that speak for themselves and admit that their terms are within those documents unless subsequently modified. To the extent that the allegations call for a legal conclusion about the effect of Exhibits 62, 63, and 64, a response is not required, and if a response is required, Defendants lack sufficient information to admit or deny the allegations and therefore deny them.

72.    Conterra assigned to American Equity all of its interests relating to the 1077 Loan, including in the 1077 Note and 1077 Deed of Trust, as evidenced by, among other things, (a) that certain *Allonge to Promissory Note* relating to the  1077 Note (the "<u>1077 Allonge</u>"), and (b) that certain *Assignment of Deed of Trust*, which was recorded in the official records of the Fresno County

KELLER BENVENUTTI KIM LLP
425 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105

ANSWER TO FIRST AMENDED COMPLAINT

Recorder on December 21, 2021, as Document No. 2021-0208173 (the "1077 DOT Assignment"). Nevertheless, Conterra continues to act as American Equity's agent and loan servicer for the 1077 Loan. True and correct copies of the 1077 Allonge and 1077 DOT Assignment are attached hereto as **Exhibits 65 and 66**, respectively.

*Response:* Defendants lack sufficient information to admit or deny that "Conterra assigned to American Equity all of its interests relating the 1077 Loan" and that "Conterra continues to act as American Equity's agent and loan servicer for the 1077 Loan" and therefore deny those allegations. Defendants aver that Exhibits 65 and 66 (the 1077 Allonge and 1077 DOT Assignment) are written instruments that speak for themselves and admit that their terms are within those documents unless subsequently modified. To the extent that the allegations call for a legal conclusion about the effect of Exhibits 65 and 66, a response is not required, and if a response is required, Defendants lack sufficient information to admit or deny the allegations and therefore deny them.

### 7. Loan #AG1076.

73. On or about March 10, 2022, Conterra, as lender, made a loan to Maricopa Orchards and FFGT Farms, as borrowers, in the original principal amount of $10,098,930, identified as Loan #AG1076 (the "1076 Loan").

*Response:* Defendants admit the allegation except to the extent that the allegation calls for a legal conclusion about the effect of the 1076 Loan, a response is not required, and if a response is required, Defendants lack sufficient information to admit or deny the allegations and therefore deny them.

74. Maricopa Orchards and FFGT Farms' obligation to repay the 1076 Loan is memorialized in that certain promissory note titled *Note* and dated March 10, 2022 (the "1076 Note"), under which they promised to repay $10,098,930 in principal, with interest (originally set at the nondefault rate of 4.0% per annum), to Conterra. The 1076 Note requires semiannual payments of principal and interest to be made (the first in the amount of $167,195.34 plus all then accrued interest, and the following nineteen in the amount of $369,173.94 each) and has a ten-year term, maturing on

KELLER BENVENUTTI KIM LLP
425 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105

ANSWER TO FIRST AMENDED COMPLAINT

March 10, 2032, at which time all remaining amounts owed thereunder become due and payable.  A true and correct copy of the 1076 Note is attached hereto as **Exhibit 67**.

*Response:* Defendants aver that Exhibit 67 (the 1076 Note) is a written instrument that speaks for itself and admit that its terms are within that document unless subsequently modified. Other than as to Defendants' execution of certain loans, to the extent that the allegations call for a legal conclusion about the effect of Exhibit 67, a response is not required, and if a response is required, Defendants lack sufficient information to admit or deny the allegations and therefore deny them.

75.    The 1076 Note is secured by (a) that certain *Deed of Trust[,] Security Agreement, Assignment of Rents and Fixture Filing* dated March 10, 2022, which was recorded in the official records of the Fresno County Recorder on March 24, 2022, as Document No. 2022-0038476 (the "1076-Fresno Deed of Trust"), and (b) that certain *Deed of Trust[,] Security Agreement, Assignment of Rents and Fixture Filing* dated March 10, 2022, which was recorded in the official records of the Kings County Recorder on March 24, 2022, as Document No. 2205594 (the "1076-Kings Deed of Trust") (together, the "1076 Deeds of Trust").  True and correct copies of the 1076-Fresno Deed of Trust and 1076-Kings Deed of Trust are attached hereto as **Exhibits 68 and 69**, respectively.

*Response:* Defendants aver that Exhibits 68 and 69 (the 1076-Fresno Deed of Trust and 1076-Kings Deed of Trust) are written instruments that speak for themselves and admit that the terms of the 1076-Fresno Deed of Trust and 1076-Kings Deed of Trust are within those documents unless subsequently modified. To the extent that the allegations call for a legal conclusion about the effect of Exhibits 68 and 69, a response is not required, and if a response is required, Defendants lack sufficient information to admit or deny the allegations and therefore deny them.

76.    Under the 1076 Deeds of Trust, FFGT Farms originally granted Conterra a security interest in certain real property (generally described as approximately 785 acres located in Fresno and Kings Counties, California); all buildings, improvements, equipment, fixtures, and permanent plantings affixed to, attached to, or incorporated in the real property (including all rents, issues, profits, income, and proceeds therefrom); all water rights appurtenant to the real property; and other

KELLER BENVENUTTI KIM LLP
425 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105

ANSWER TO FIRST AMENDED COMPLAINT

property as described in the 1076 Deeds of Trust (collectively, the "1076 Collateral"). Specifically excluded from the 1076 Collateral, as set forth in the 1076 Deeds of Trust, are any "growing crop" and any "rolling stock" affixed or attached to the real property, as well as any "crop receivables." The 1076 Deeds of Trust also include an assignment-of-rents provision, under which FFGT Farms absolutely and unconditionally assigns all rents and revenues of the 1076 Collateral to Conterra.

**Response:** Defendants aver that the 1076 Deeds of Trust are written instruments that speak for themselves and admit that the terms of the 1076 Deeds of Trust are within that document unless subsequently modified. To the extent that the allegations call for a legal conclusion about the effect of Exhibits 68 and 69, a response is not required, and if a response is required, Defendants lack sufficient information to admit or deny the allegations and therefore deny them.

77.    In connection with the 1076 Note and related loan documents and to induce Conterra to fund the 1076 Loan, Darius, Farid, and Farshid Assemi, as guarantors, each executed and delivered to Conterra, as lender, a written personal guaranty (the "1076 Darius Guaranty," "1076 Farid Guaranty," and "1076 Farshid Guaranty," respectively), each of which was similarly titled *Guaranty* and under which the three guaranteed the payment in full of any and all indebtedness owed by Maricopa Orchards and FFGT Farms to Conterra (or any assignee or transferee of Conterra's interest in such indebtedness). True and correct copies of the 1076 Darius Guaranty, 1076 Farid Guaranty, and 1076 Farshid Guaranty are attached hereto as **Exhibits 70, 71, and 72**, respectively.

**Response:** As to the allegation "[i]n connection with the 1076 Note and related loan documents and to induce Conterra to fund the 1076 Loan," Defendants lack sufficient information to admit or deny the allegations and therefore deny them. Defendants aver that Exhibits 70, 71, and 72 (the 1076 Darius Guaranty, 1076 Farid Guaranty, and 1076 Farshid Guaranty) are written instruments that speak for themselves and admit that their terms are within those documents unless subsequently modified. To the extent that the allegations call for a legal conclusion about the effect of Exhibits 70, 71, and 72, a response is not required, and if a response is required, Defendants lack sufficient information to admit or deny the allegations and therefore deny them.

ANSWER TO FIRST AMENDED COMPLAINT

KELLER BENVENUTTI KIM LLP
425 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105

78.    Conterra assigned to American Equity all of its interests relating to the 1076 Loan, including in the 1076 Note and 1076 Deeds of Trust, as evidenced by, among other things, (a) that certain *Allonge to Promissory Note* relating to the 1076 Note (the "1076 Allonge"), (b) that certain *Assignment of Deed of Trust*, which was recorded in the official records of the Fresno County Recorder on March 24, 2022, as Document No. 2022-0038477 (the "1076-Fresno DOT Assignment"), and (c) that certain *Assignment of Deed of Trust*, which was recorded in the official records of the Kings County Recorder on March 24, 2022, as Document No. 2205595 (the "1076-Kings DOT Assignment").  Nevertheless, Conterra continues to act as American Equity's agent and loan servicer for the 1076 Loan. True and correct copies of the 1076 Allonge, 1076-Fresno DOT Assignment, and 1076-Kings DOT Assignment are attached hereto as **Exhibits 73, 74, and 75**, respectively.

*Response:* Defendants lack sufficient information to admit or deny that "Conterra assigned to American Equity all of its interests relating the 1076 Loan" and that "Conterra continues to act as American Equity's agent and loan servicer for the 1076 Loan" and therefore deny those allegations. Defendants aver that Exhibits 73, 74, and 75 (the 1076 Allonge, 1076-Fresno DOT Assignment, and 1076-Kings DOT Assignment) are written instruments that speak for themselves and admit that their terms are within those documents unless subsequently modified. To the extent that the allegations call for a legal conclusion about the effect of Exhibits 73, 74, and 75, a response is not required, and if a response is required, Defendants lack sufficient information to admit or deny the allegations and therefore deny them.

### 8.    Loan #AG1115 and Loan #AG1116.

79.    On or about February 3, 2023, Conterra, as lender, made a loan to Maricopa Orchards, Copper Avenue, C & A Farms, ACAP Farms, Willow Avenue, 104 Investments, Lincoln Grantor Farms, Grantor Real Estate, Gradon Farms, FFGT Farms, Cantua Orchards, and Locans Investments, as borrowers (collectively, the "1115/1116 Borrowers"), in the original principal amount of $11,300,000, identified as Loan #AG1115 (the "1115 Loan").

KELLER BENVENUTTI KIM LLP
425 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105

ANSWER TO FIRST AMENDED COMPLAINT

KELLER BENVENUTTI KIM LLP
425 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105

*Response:* Defendants admit the allegation except to the extent that the allegation calls for a legal conclusion about the effect of the 1115 Loan, a response is not required, and if a response is required, Defendants lack sufficient information to admit or deny the allegations and therefore deny them.

80.    On or about February 3, 2023, Conterra, as lender, also extended a revolving line of credit loan to the 1115/1116 Borrowers, with advances not to exceed $11,300,000, which loan is identified as Loan #AG1116 (the "1116 Loan"). Funds in the amount of $11,300,000 were initially advanced to the 1115/1116 Borrowers under the 1116 Loan.

*Response:* Defendants admit the allegation except to the extent that the allegation calls for a legal conclusion about the effect of the 1116 Loan, a response is not required, and if a response is required, Defendants lack sufficient information to admit or deny the allegations and therefore deny them.

81.    The 1115/1116 Borrowers' obligation to repay the 1115 Loan is memorialized in that certain promissory note titled *Note* and dated February 3, 2023 (the "1115 Note"), under which they promised to repay $11,300,000 in principal, with interest (at a variable rate), to Conterra.  The 1115 Note requires semiannual interest-only payments to be made and has a five-year term, maturing on February 3, 2028, at which time all remaining amounts owed thereunder become due and payable. A true and correct copy of the 1115 Note is attached hereto as **Exhibit 76**.

*Response:* Defendants aver that Exhibit 76 (the 1115 Note) is a written instrument that speaks for itself and admit that its terms are within that document unless subsequently modified. To the extent that the allegations call for a legal conclusion about the effect of Exhibit 76, a response is not required, and if a response is required, Defendants lack sufficient information to admit or deny the allegations and therefore deny them.

82.    The 1115/1116 Borrowers' obligation to repay the 1116 Loan is memorialized in that certain promissory note titled *Note* and dated February 3, 2023 (the "1116 Note"), under which they promised to repay the amount advanced on the 1116 Loan, with interest (at a variable rate), to

ANSWER TO FIRST AMENDED COMPLAINT

Conterra. The 1116 Note requires semiannual interest-only payments to be made and has a five-year term, maturing on February 3, 2028, at which time all remaining amounts owed thereunder become due and payable. A true and correct copy of the 1116 Note is attached hereto as **Exhibit 77**.

*Response:* Defendants aver that Exhibit 77 (the 1116 Note) is a written instrument that speaks for itself and admit that its terms are within that document unless subsequently modified. To the extent that the allegations call for a legal conclusion about the effect of Exhibit 77, a response is not required, and if a response is required, Defendants lack sufficient information to admit or deny the allegations and therefore deny them.

83. The 1115 Note and 1116 Note are secured by (a) that certain *Open-End Deed of Trust (with Future Advance Clause)[,] Security Agreement, Assignment of Rents and Fixture Filing* dated February 3, 2023, which was recorded in the official records of the Fresno County Recorder on February 9, 2023, as Document No. 2023-0011566 (the "<u>1115/1116-Fresno Deed of Trust</u>"), (b) that certain *Open- End Deed of Trust (with Future Advance Clause)[,] Security Agreement, Assignment of Rents and Fixture Filing* dated February 3, 2023, which was recorded in the official records of the Kern County Recorder on February 9, 2023, as Document No. 223015311 (the "<u>1115/1116-Kern Deed of Trust</u>"), and (c) that certain *Open- End Deed of Trust (with Future Advance Clause)[,] Security Agreement, Assignment of Rents and Fixture Filing* dated February 3, 2023, which was recorded in the official records of the Kings County Recorder on February 9, 2023, as Document No. 2301976 (the "<u>1115/1116-Kings Deed of Trust</u>") (collectively, the "<u>1115/1116 Deeds of Trust</u>"). True and correct copies of the 1115/1116-Fresno Deed of Trust, 1115/1116-Kern Deed of Trust, and 1115/1116-Kings Deed of Trust are attached hereto as **Exhibits 78, 79, and 80**, respectively.

*Response:* Defendants aver that Exhibits 78, 79, and 80 (the 1115/1116-Fresno Deed of Trust, 1115/1116-Kern Deed of Trust, and 1115/1116-Kings Deed of Trust) are written instruments that speak for themselves and admit that the terms of Exhibits 78, 79, and 80 are within those documents unless subsequently modified. To the extent that the allegations call for a legal conclusion about the

ANSWER TO FIRST AMENDED COMPLAINT

KELLER BENVENUTTI KIM LLP
425 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105

effect of Exhibits 78, 79, and 80, a response is not required, and if a response is required, Defendants lack sufficient information to admit or deny the allegations and therefore deny them.

84.    Collectively, (a) Lincoln Grantor Farms, Gradon Farms, FFGT Farms, 104 Investments, Locans Investments, Cantua Orchards, C & A Farms, and Willow Avenue, under the 1115/1116-Fresno Deed of Trust, (b) C & A Farms, Lincoln Grantor Farms, Maricopa Orchards, Willow Avenue, and Grantor Real Estate, under the 1115/1116-Kern Deed of Trust, and (c) Copper Avenue, Lincoln Grantor Farms, ACAP Farms, FFGT Farms, and Willow Avenue, under the 1115/1116-Kings Deed of Trust, originally granted Conterra a security interest in certain real property located in Fresno, Kern, and Kings Counties; all buildings, improvements, equipment, fixtures, and permanent plantings affixed to, attached to, or incorporated in the real property (including all rents, issues, profits, income, and proceeds therefrom); all water rights appurtenant to the real property; and other property as described in the 1115/1116 Deeds of Trust (collectively, the "1115/1116 Collateral").  Specifically excluded from the 1115/1116 Collateral, as set forth in the 1115/1116 Deeds of Trust, are any "growing crop" and any "rolling stock" affixed or attached to the real property, as well as any "crop receivables." The 1115/1116 Deeds of Trust also include an assignment-of-rents provision, under which the applicable 1115/1116 Borrowers absolutely and unconditionally assign all rents and revenues of the 1115/1116 Collateral to Conterra.

***Response:*** Defendants aver that the 1115/1116-Fresno Deed of Trust, 1115/1116-Kern Deed of Trust, and 1115/1116-Kings Deed of Trust are written instruments that speak for themselves and admit that the terms of the 1115/1116 Deeds of Trust are within those documents unless subsequently modified. To the extent that the allegations call for a legal conclusion about the effect of Exhibits 78, 79, and 80, a response is not required, and if a response is required, Defendants lack sufficient information to admit or deny the allegations and therefore deny them.

85.    In connection with the 1115 Note and related loan documents and to induce Conterra to fund the 1115 Loan, Darius, Farid, Farshid, and Sonia Assemi, as guarantors, each executed and delivered to Conterra, as lender, a written personal guaranty (the "1115 Darius Guaranty," "1115

Farid Guaranty," "<u>1115 Farshid Guaranty</u>," and "<u>1115 Sonia Guaranty</u>," respectively), each of which was similarly titled *Guaranty* and under which the four guaranteed the payment in full of any and all indebtedness owed by the 1115/1116 Borrowers to Conterra (or any assignee or transferee of Conterra's interest in such indebtedness).  True and correct copies of the 1115 Darius Guaranty, 1115 Farid Guaranty, 1115 Farshid Guaranty, and 1115 Sonia Guaranty are attached hereto as **Exhibits 81, 82, 83, and 84**, respectively.

*Response:* As to the allegation "[i]n connection with the 1115 Note and related loan documents and to induce Conterra to fund the 1115 Loan," Defendants lack sufficient information to admit or deny the allegations and therefore deny them. Defendants aver that Exhibits 81, 82, 83, and 84 (the 1115 Darius Guaranty, 1115 Farid Guaranty, 1115 Farshid Guaranty, and 1115 Sonia Guaranty) are written instruments that speak for themselves and admit that their terms are within those documents unless subsequently modified. To the extent that the allegations call for a legal conclusion about the effect of Exhibits 81, 82, 83, and 84, a response is not required, and if a response is required, Defendants lack sufficient information to admit or deny the allegations and therefore deny them.

86.    Likewise, in connection with the 1116 Note and related loan documents and to induce Conterra to fund the 1116 Loan, Darius, Farid, Farshid, and Sonia Assemi, as guarantors, each executed and delivered to Conterra, as lender, a written personal guaranty (the "<u>1116 Darius Guaranty</u>," "<u>1116 Farid Guaranty</u>," "<u>1116 Farshid Guaranty</u>," and "<u>1116 Sonia Guaranty</u>," respectively), each of which was similarly titled *Guaranty* and under which the four guaranteed the payment in full of any and all indebtedness owed by the 1115/1116 Borrowers to Conterra (or any assignee or transferee of Conterra's interest in such indebtedness).  True and correct copies of the 1116 Darius Guaranty, 1116 Farid Guaranty, 1116 Farshid Guaranty, and 1116 Sonia Guaranty are attached hereto as **Exhibits 85, 86, 87, and 88**, respectively.

*Response:* As to the allegation "[i]n connection with the 1116 Note and related loan documents and to induce Conterra to fund the 1116 Loan," Defendants lack sufficient information to

ANSWER TO FIRST AMENDED COMPLAINT

KELLER BENVENUTTI KIM LLP
425 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105

admit or deny the allegations and therefore deny them. Defendants aver that Exhibits 85, 86, 87, and 88 (the 1116 Darius Guaranty, 1116 Farid Guaranty, 1116 Farshid Guaranty, and 1116 Sonia Guaranty) are written instruments that speak for themselves and admit that their terms are within those documents unless subsequently modified. To the extent that the allegations call for a legal conclusion about the effect of Exhibits 85, 86, 87, and 88, a response is not required, and if a response is required, Defendants lack sufficient information to admit or deny the allegations and therefore deny them.

87.     Conterra assigned to American Equity all of its interests relating to the 1115 Loan and 1116 Loan, including in the 1115 Note, 1116 Note, and 1115/1116 Deeds of Trust, as evidenced by, among other things, (a) that certain *Allonge to Promissory Note* relating to the 1115 Note (the "1115 Allonge"), (b) that certain *Allonge to Promissory Note* relating to the 1116 Note (the "1116 Allonge"), (c) that certain *Assignment of Deed of Trust*, which was recorded in the official records of the Fresno County Recorder on March 14, 2023, as Document No. 2023- 0023044 (the "1115/1116-Fresno DOT Assignment"), (d) that certain *Assignment of Deed of Trust*, which was recorded in the official records of the Kern County Recorder on March 14, 2023, as Document No. 223029410 (the "1115/1116-Kern  DOT Assignment"), and (e) that certain *Assignment of Deed of Trust*, which was recorded in the official records of the Kings County Recorder on March 23, 2023, as Document No. 2304389 (the "1115/1116-Kings DOT Assignment").   Nevertheless, Conterra continues to act as American Equity's agent and loan servicer for the 1115 Loan and 1116 Loan.  True and correct copies of the 1115 Allonge, 1116 Allonge, 1115/1116-Fresno DOT Assignment, 1115/1116-Kern DOT Assignment, and 1115/1116-Kings DOT Assignment are attached hereto as **Exhibits 89, 90, 91, 92, and 93**, respectively.

***Response:*** Defendants lack sufficient information to admit or deny that "Conterra assigned to American Equity all of its interests relating the 1115 Loan and 1116 Loan" and that "Conterra continues to act as American Equity's agent and loan servicer for the 1115 Loan and 1116 Loan" and therefore deny those allegations. Defendants aver that Exhibits 89, 90, 91, 92, and 93 (the 1115

ANSWER TO FIRST AMENDED COMPLAINT

Allonge, 1116 Allonge, 1115/1116-Fresno DOT Assignment, 1115/1116-Kern DOT Assignment, and 1115/1116-Kings DOT Assignment) are written instruments that speak for themselves and admit that their terms are within those documents unless subsequently modified. To the extent that the allegations call for a legal conclusion about the effect of Exhibits 89, 90, 91, 92, and 93, a response is not required, and if a response is required, Defendants lack sufficient information to admit or deny the allegations and therefore deny them.

88.    By that certain *Substitution of Trustee and Partial Conveyance* recorded in the official records of the Fresno County Recorder on June 9, 2023, as Document No. 2023-0053794 (the "1115/1116-Fresno Partial Reconveyance"), American Equity subsequently released its lien against certain property constituting a part of the 1115/1116 Collateral that was subject to the 1115/1116-Fresno Deed of Trust (including certain land located in Fresno County, California, and identified by APNs: 019-180-09S, 019-180-27S, 019-180-23S, 019-180-25S, 027-171-81-S, and 027-171-82-S) (the "Reconveyed 1115/1116 Former Collateral"), while retaining its lien against all other property and collateral described in the 1115/1116-Fresno Deed of Trust and the other 1115/1116 Deeds of Trust (the "Remaining 1115/1116 Collateral").  A true and correct copy of the 1115/1116-Fresno Partial Conveyance is attached hereto as **Exhibit 94**.

*Response:* Defendants aver that Exhibit 94 (the 1115/1116-Fresno Partial Reconveyance) is a written instrument that speaks for itself and otherwise lack sufficient information to admit or deny the allegations and therefore deny them. To the extent that the allegations call for a legal conclusion about the effect of Exhibit 94, a response is not required, and if a response is required, Defendants lack sufficient information to admit or deny the allegations and therefore deny them.

### B.  Relevant Common Provisions in the Loan Documents.

89.    The promissory notes relating to the Loans (i.e., the 1021 Note, 1024 Amended Note, 1022 Note, 1023 Note, 1069 Note, 1078 Note, 1077 Note, 1076 Note, 1115 Note, and 1116 Note) (collectively, the "Notes") include common provisions relating to defaults thereunder.

KELLER BENVENUTTI KIM LLP
425 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105

KELLER BENVENUTTI KIM LLP
425 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105

**Response:** Defendants aver that the Notes (*i.e.*, the 1021 Note, 1024 Amended Note, 1022 Note, 1023 Note, 1069 Note, 1078 Note, 1077 Note, 1076 Note, 1115 Note, and 1116 Note) are written instruments that speak for themselves and otherwise lack sufficient information to admit or deny the allegations and therefore deny them.

90.     The deeds of trust securing the Notes (i.e., the 1021-Fresno Deed of Trust, 1024-Fresno Deed of Trust, 1022 Deed of Trust, 1023 Deed of Trust, 1069 Deed of Trust, 1078 Deed of Trust, 1077 Deed of Trust, 1076-Fresno Deed of Trust, 1076-Kings Deed of Trust, 1115/1116-Fresno Deed of Trust, 1115/1116-Kern Deed of Trust, and 1115/1116-Kings Deed of Trust) (collectively, the "<u>Deeds of Trust</u>") also include common provisions relating to defaults thereunder.

**Response:** Defendants aver that the Deeds of Trust (*i.e.*, the 1021-Fresno Deed of Trust, 1024-Fresno Deed of Trust, 1022 Deed of Trust, 1023 Deed of Trust, 1069 Deed of Trust, 1078 Deed of Trust, 1077 Deed of Trust, 1076-Fresno Deed of Trust, 1076-Kings Deed of Trust, 1115/1116-Fresno Deed of Trust, 1115/1116-Kern Deed of Trust, and 1115/1116-Kings Deed of Trust) are written instruments that speak for themselves and otherwise lack sufficient information to admit or deny the allegations and therefore deny them.

91.     Each of the Notes provides, "The occurrence of any one or more of the following shall constitute an 'Event of Default' under this Note, the Security Instrument [i.e., the deed of trust], and any related loan documents, as such term is used herein … (1) If Borrowers fail to repay any interest or Principal under the Note when due …."

**Response:** Defendants aver that the Notes (*i.e.*, the 1021 Note, 1024 Amended Note, 1022 Note, 1023 Note, 1069 Note, 1078 Note, 1077 Note, 1076 Note, 1115 Note, and 1116 Note) are written instruments that speak for themselves and otherwise lack sufficient information to admit or deny the allegations and therefore deny them.

92.     Each Deed of Trust similarly sets forth the borrowers' obligation to make timely payments under the applicable Note: "Borrower and/or Borrower Parties shall pay when due the principal of, and interest on, the debt evidenced by the Note and any yield maintenance premiums,

ANSWER TO FIRST AMENDED COMPLAINT

any prepayment charges and late charges due under the Note." In addition, the Deeds of Trust also include a cross-default provision, providing that "Borrower's or Borrower Parties' default or breach under any note or agreement in which Lender has an interest shall be a breach under the Security Instrument and Lender may invoke any of the remedies permitted by the Security Instrument."

*Response:* Defendants aver that the Deeds of Trust (*i.e.*, the 1021-Fresno Deed of Trust, 1024-Fresno Deed of Trust, 1022 Deed of Trust, 1023 Deed of Trust, 1069 Deed of Trust, 1078 Deed of Trust, 1077 Deed of Trust, 1076-Fresno Deed of Trust, 1076-Kings Deed of Trust, 1115/1116-Fresno Deed of Trust, 1115/1116-Kern Deed of Trust, and 1115/1116-Kings Deed of Trust) are written instruments that speak for themselves and otherwise lack sufficient information to admit or deny the allegations and therefore deny them.

93.    Under each Deed of Trust, "[f]ollowing Borrower's breach of any covenant or agreement in this Security Instrument … and prior to acceleration or Lender's exercise of any remedy," American Equity is required to "give at least sixty (60) days written notice to Borrower prior to exercising any remedy, *unless otherwise provided under this Deed of Trust*." One such exception is in seeking the appointment of a receiver, where each Deed of Trust provides, "If Lender gives notices of default to Borrower … (vi) Lender shall be entitled to have a receiver appointed to take possession of and manage the Property and collect the Rents and profits derived from the Property without any showing as to the inadequacy of the Property as security."

*Response:* Defendants aver that the Deeds of Trust (*i.e.*, the 1021-Fresno Deed of Trust, 1024-Fresno Deed of Trust, 1022 Deed of Trust, 1023 Deed of Trust, 1069 Deed of Trust, 1078 Deed of Trust, 1077 Deed of Trust, 1076-Fresno Deed of Trust, 1076-Kings Deed of Trust, 1115/1116-Fresno Deed of Trust, 1115/1116-Kern Deed of Trust, and 1115/1116-Kings Deed of Trust) are written instruments that speak for themselves and otherwise lack sufficient information to admit or deny the allegations and therefore deny them.

94.    Under each Deed of Trust, following the passage of the required notice period, "Lender at its option may require immediate payment in full of all sums secured by this Security

KELLER BENVENUTTI KIM LLP
425 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105

ANSWER TO FIRST AMENDED COMPLAINT

Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law" and "shall be entitled to collect all expenses incurred in pursuing the remedies provided [herein], including, but not limited to, reasonable attorneys' fees and costs of title evidence."

*Response:* Defendants aver that the Deeds of Trust (*i.e.*, the 1021-Fresno Deed of Trust, 1024-Fresno Deed of Trust, 1022 Deed of Trust, 1023 Deed of Trust, 1069 Deed of Trust, 1078 Deed of Trust, 1077 Deed of Trust, 1076-Fresno Deed of Trust, 1076-Kings Deed of Trust, 1115/1116-Fresno Deed of Trust, 1115/1116-Kern Deed of Trust, and 1115/1116-Kings Deed of Trust) are written instruments that speak for themselves and otherwise lack sufficient information to admit or deny the allegations and therefore deny them.

95.    The personal guaranties relating to the Loans from Darius, Farid, and Farshid Assemi (i.e., the 1021 Darius Guaranty, 1021 Farid Guaranty, 1021 Farshid Guaranty, 1024 Darius Guaranty, 1024 Farid Guaranty, 1024 Farshid Guaranty, 1022 Darius Guaranty, 1022 Farid Guaranty, 1022 Farshid Guaranty, 1023 Darius Guaranty, 1023 Farid Guaranty, 1023 Farshid Guaranty, 1069 Darius Guaranty, 1069 Farid Guaranty, 1069 Farshid Guaranty, 1078 Darius Guaranty, 1078 Farid Guaranty, 1078 Farshid Guaranty, 1077 Darius Guaranty, 1077 Farid Guaranty, 1077 Farshid Guaranty, 1076 Darius Guaranty, 1076 Farid Guaranty, 1076 Farshid Guaranty, 1115 Darius Guaranty, 1115 Farid Guaranty, 1115 Farshid Guaranty, 1116 Darius Guaranty, 1116 Farid Guaranty, and 1116 Farshid Guaranty (collectively, the "Guaranties") and the personal guaranties relating to the 1115 Loan and 1116 Loan from Sonia Assemi (i.e., the 1115 Sonia Guaranty and 1116 Sonia Guaranty) (together, the "Sonia Guaranties") also include common provisions relating to Guarantor Defendants' obligation on the indebtedness owed by Borrower Defendants on the Loans.

*Response:* Defendants aver that the Guaranties (*i.e.*, the 1021 Darius Guaranty, 1021 Farid Guaranty, 1021 Farshid Guaranty, 1024 Darius Guaranty, 1024 Farid Guaranty, 1024 Farshid Guaranty, 1022 Darius Guaranty, 1022 Farid Guaranty, 1022 Farshid Guaranty, 1023 Darius Guaranty, 1023 Farid Guaranty, 1023 Farshid Guaranty, 1069 Darius Guaranty, 1069 Farid Guaranty,

ANSWER TO FIRST AMENDED COMPLAINT

1069 Farshid Guaranty, 1078 Darius Guaranty, 1078 Farid Guaranty, 1078 Farshid Guaranty, 1077 Darius Guaranty, 1077 Farid Guaranty, 1077 Farshid Guaranty, 1076 Darius Guaranty, 1076 Farid Guaranty, 1076 Farshid Guaranty, 1115 Darius Guaranty, 1115 Farid Guaranty, 1115 Farshid Guaranty, 1116 Darius Guaranty, 1116 Farid Guaranty, and 1116 Farshid Guaranty) and the Sonia Guaranties (*i.e.*, the 1115 Sonia Guaranty and 1116 Sonia Guaranty) are written instruments that speak for themselves and otherwise lack sufficient information to admit or deny the allegations and therefore deny them.

96.    Under each of the Guaranties or Sonia Guaranties, the applicable Guarantor Defendant "guarantee[d] to the Lender the immediate payment in full of any and all of the Guaranteed Indebtedness … when due, whether by acceleration or otherwise, and at all times thereafter," with the term "Guaranteed Indebtedness" being defined therein to include "(1) any and all indebtedness of every kind and character, without limit as to amount, whether now existing or hereafter arising, of Borrowers to Lender, regardless of whether evidenced by notes, drafts, acceptances, discounts, overdrafts, deeds of trust, security agreements, loan agreements, or otherwise, and regardless whether such indebtedness be fixed, contingent, primary, secondary, joint, several or joint and several, (2) interest, whether accruing before or after maturity, on any and all of the indebtedness described in (1) preceding, (3) any and all attorneys' fees, costs and expenses incurred or suffered by Lender in the making of, the administration of or collection of the foregoing indebtedness described in (1) preceding or interest described in (2) preceding, or any part thereof."

*Response:* Defendants aver that the Guaranties (*i.e.*, the 1021 Darius Guaranty, 1021 Farid Guaranty, 1021 Farshid Guaranty, 1024 Darius Guaranty, 1024 Farid Guaranty, 1024 Farshid Guaranty, 1022 Darius Guaranty, 1022 Farid Guaranty, 1022 Farshid Guaranty, 1023 Darius Guaranty, 1023 Farid Guaranty, 1023 Farshid Guaranty, 1069 Darius Guaranty, 1069 Farid Guaranty, 1069 Farshid Guaranty, 1078 Darius Guaranty, 1078 Farid Guaranty, 1078 Farshid Guaranty, 1077 Darius Guaranty, 1077 Farid Guaranty, 1077 Farshid Guaranty, 1076 Darius Guaranty, 1076 Farid Guaranty, 1076 Farshid Guaranty, 1115 Darius Guaranty, 1115 Farid Guaranty, 1115 Farshid

KELLER BENVENUTTI KIM LLP
425 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105

ANSWER TO FIRST AMENDED COMPLAINT

Guaranty, 1116 Darius Guaranty, 1116 Farid Guaranty, and 1116 Farshid Guaranty) and the Sonia Guaranties (*i.e.*, the 1115 Sonia Guaranty and 1116 Sonia Guaranty) are written instruments that speak for themselves and otherwise lack sufficient information to admit or deny the allegations and therefore deny them.

### C. Defendants' Defaults on the Loans.

97.    Beginning in July 2024, Borrower Defendants began breaching or defaulting on their obligations under the loan documents relating to each of the Loans, primarily by failing to make the payments due thereon, including all amounts due and owing on the Loans following acceleration. Relatedly, Guarantor Defendants have also breached or defaulted on their obligations under their respective Guaranties by failing to pay the amounts due and owing under the loan documents relating to each of the Loans, including all amounts due and owing on the Loans following acceleration.

*Response***:** Defendants deny the allegations.

### 1.   Default on the 1021 Loan.

98.    Maricopa Orchards and Willow Avenue failed to pay the semiannual payment of $198,463.16 due on July 1, 2024, under the 1021 Note.  Accordingly, on or about September 26, 2024, Conterra, as agent and loan servicer for American Equity, served a notice of default on Maricopa Orchards and Willow Avenue by mail, indicating that the borrowers were in default of their obligations under the loan documents relating to the 1021 Loan due to nonpayment.

*Response***:** Defendants lack sufficient information to admit or deny the allegations and therefore deny them.

99.    On or about November 27, 2024, American Equity, through its counsel, served a notice of acceleration on  Maricopa Orchards and Willow Avenue and guarantors Darius, Farid, and Farshid Assemi by mail, indicating that all amounts due and owing under the loan documents relating to the 1021 Loan had been accelerated as a result of the continuing default.

*Response***:** Defendants admit that Plaintiff served the notice of acceleration alleged in this paragraph and such writing speaks for itself, but to the extent that the allegations in this paragraph

KELLER BENVENUTTI KIM LLP
425 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105

ANSWER TO FIRST AMENDED COMPLAINT

KELLER BENVENUTTI KIM LLP
425 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105

call for a legal conclusion about the effect of the notice of acceleration and any alleged amounts due and owing under the 1021 Loan, a response is not required, and if a response is required, Defendants lack sufficient information to admit or deny the allegations and therefore deny them.

100.    To date, neither the initial default nor the post-acceleration default on the 1021 Loan has been cured by the applicable Borrower Defendants or Guarantor Defendants.

*Response*: Defendants deny the allegations.

101.    As of July 1, 2024, the unpaid principal balance of the 1021 Note was approximately $3,397,915.77 (exclusive of interest, costs, and other charges).

*Response*: Defendants lack sufficient information to admit or deny the allegations and therefore deny them.

### 2.  <u>Default on the 1024 Loan.</u>

102.    Maricopa Orchards and Willow Avenue failed to pay the semiannual payment of $59,796.99 due on July 1, 2024, under the 1024 Amended Note. Accordingly, on or about September 26, 2024, Conterra, as agent and loan servicer for American Equity, served a notice of default on Maricopa Orchards and Willow Avenue by mail, indicating that the borrowers were in default of their obligations under the loan documents relating to the 1024 Loan due to nonpayment.

*Response*: Defendants lack sufficient information to admit or deny the allegations and therefore deny them.

103.    On or about November 27, 2024, American Equity, through its counsel, served a notice of acceleration on borrowers Maricopa Orchards and Willow Avenue and guarantors Darius, Farid, and Farshid Assemi by mail, indicating that all amounts due and owing under the loan documents relating to the 1024 Loan had been accelerated as a result of the continuing default.

*Response*: Defendants admit that Plaintiff served the notice of acceleration alleged in this paragraph and such writing speaks for itself, but to the extent that the allegations in this paragraph call for a legal conclusion about the effect of the notice of acceleration and any alleged amounts due and owing under the 1024 Loan, a response is not required, and if a response is required, Defendants

ANSWER TO FIRST AMENDED COMPLAINT

1    lack sufficient information to admit or deny the allegations and therefore deny them.

2    104.    To date, neither the initial default nor the post-acceleration default on the 1024 Loan

3    has been cured by the applicable Borrower Defendants or Guarantor Defendants.

4    **Response**: Defendants deny the allegations.

5    105.    As of  July 1, 2024, the unpaid principal balance of the 1024 Amended Note was

6    approximately $1,493,356.15 (exclusive of interest, costs, and other charges).

7    **Response**: Defendants lack sufficient information to admit or deny the allegations and

8    therefore deny them.

9    ### 3.   Default on the 1022 Loan.

10    106.    Maricopa Orchards and Lincoln Grantor Farms failed to pay the semiannual payment

11    of $10,298.63 due on July 1, 2024, under the 1022 Note. Accordingly, on or about September 26,

12    2024, Conterra, as agent and loan servicer for American Equity, served a notice of default on

13    Maricopa Orchards and Lincoln Grantor Farms by mail, indicating that the borrowers were in default

14    of their obligations under the loan documents relating to the 1022 Loan due to nonpayment.

15    **Response:** Defendants lack sufficient information to admit or deny the allegations and

16    therefore deny them.

17    107.    On or about November 27, 2024, American Equity, through its counsel, served a

18    notice of acceleration on borrowers Maricopa Orchards and Lincoln Grantor Farms and guarantors

19    Darius, Farid, and Farshid Assemi by mail, indicating that all amounts due and owing under the loan

20    documents relating to the 1022 Loan had been accelerated as a result of the continuing default.

21    **Response:** Defendants admit that Plaintiff served the notice of acceleration alleged in this

22    paragraph and such writing speaks for itself, but to the extent that the allegations in this paragraph

23    call for a legal conclusion about the effect of the notice of acceleration and any alleged amounts due

24    and owing under the 1022 Loan, a response is not required, and if a response is required, Defendants

25    lack sufficient information to admit or deny the allegations and therefore deny them.

26    108.    To date, neither the initial default nor the post-acceleration default on the 1022 Loan

KELLER BENVENUTTI KIM LLP
425 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105

ANSWER TO FIRST AMENDED COMPLAINT

has been cured by the applicable Borrower Defendants or Guarantor Defendants.

*Response*: Defendants deny the allegations.

109.    As of July 1, 2024, the unpaid principal balance of the 1022 Note was approximately $251,719.34 (exclusive of interest, costs, and other charges).

*Response*: Defendants lack sufficient information to admit or deny the allegations and therefore deny them.

### 4.    Default on the 1023 Loan.

110.    Maricopa Orchards and Grantor Real Estate failed to pay the semiannual payment of $118,434.23 due on July 1, 2024, under the 1023 Note. Accordingly, on or about September 26, 2024, Conterra, as agent and loan servicer for American Equity, served a notice of default on Maricopa Orchards and Grantor Real Estate by mail, indicating that the borrowers were in default of their obligations under the loan documents relating to the 1023 Loan due to nonpayment.

*Response*: Defendants lack sufficient information to admit or deny the allegations and therefore deny them.

111.    On or about November 27, 2024, American Equity, through its counsel, served a notice of acceleration on borrowers Maricopa Orchards and Grantor Real Estate and guarantors Darius, Farid, and Farshid Assemi by mail, indicating that all amounts due and owing under the loan documents relating to the 1023 Loan had been accelerated as a result of the continuing default.

*Response*: Defendants admit that Plaintiff served the notice of acceleration alleged in this paragraph and such writing speaks for itself, but to the extent that the allegations in this paragraph call for a legal conclusion about the effect of the notice of acceleration and any alleged amounts due and owing under the 1023 Loan, a response is not required, and if a response is required, Defendants lack sufficient information to admit or deny the allegations and therefore deny them.

112.    To date, neither the initial default nor the post-acceleration default on the 1023 Loan has been cured by the applicable Borrower Defendants or Guarantor Defendants.

*Response*: Defendants deny the allegations.

ANSWER TO FIRST AMENDED COMPLAINT

113.    As of July 1, 2024, the unpaid principal balance of the 1023 Note was approximately $2,894,772.46 (exclusive of interest, costs, and other charges).

**Response:** Defendants lack sufficient information to admit or deny the allegations and therefore deny them.

### 5.    Default on the 1069 Loan.

114.    Maricopa Orchards and Gradon Farms failed to pay the semiannual payment of $134,722.99 due on July 1, 2024, under the 1069 Note.  Accordingly, on or about September 26, 2024, Conterra, as agent and loan servicer for American Equity, served a notice of default on Maricopa Orchards and Gradon Farms by mail, indicating that the borrowers were in default of their obligations under the loan documents relating to the 1069 Loan due to nonpayment.

**Response:** Defendants lack sufficient information to admit or deny the allegations and therefore deny them.

115.    On or about November 27, 2024, American Equity, through its counsel, served a notice of acceleration on borrowers Maricopa Orchards and Gradon Farms and guarantors Darius, Farid, and Farshid Assemi by mail, indicating that all amounts due and owing under the loan documents relating to the 1069 Loan had been accelerated as a result of the continuing default.

**Response:** Defendants admit that Plaintiff served the notice of acceleration alleged in this paragraph and such writing speaks for itself, but to the extent that the allegations in this paragraph call for a legal conclusion about the effect of the notice of acceleration and any alleged amounts due and owing under the 1069 Loan, a response is not required, and if a response is required, Defendants lack sufficient information to admit or deny the allegations and therefore deny them.

116.    To date, neither the initial default nor the post-acceleration default on the 1069 Loan has been cured by the applicable Borrower Defendants or Guarantor Defendants.

**Response:** Defendants deny the allegations.

117.    As of July 1, 2024, the unpaid principal balance of the 1069 Note was approximately $3,503,744.50 (exclusive of interest, costs, and other charges).

ANSWER TO FIRST AMENDED COMPLAINT

*Response*: Defendants lack sufficient information to admit or deny the allegations and therefore deny them.

### 6. <u>Default on the 1078 Loan.</u>

118.    Maricopa Orchards and Lincoln Grantor Farms failed to pay the semiannual payment of $123,483.31 due on July 1, 2024, under the 1078 Note. Accordingly, on or about September 26, 2024, Conterra, as agent and loan servicer for American Equity, served a notice of default on Maricopa Orchards and Lincoln Grantor Farms by mail, indicating that the borrowers were in default of their obligations under the loan documents relating to the 1078 Loan due to nonpayment.

*Response*: Defendants lack sufficient information to admit or deny the allegations and therefore deny them.

119.    On or about November 27, 2024, American Equity, through its counsel, served a notice of acceleration on borrowers Maricopa Orchards and Lincoln Grantor Farms and guarantors Darius, Farid, and Farshid Assemi by mail, indicating that all amounts due and owing under the loan documents relating to the 1078 Loan had been accelerated as a result of the continuing default.

*Response*: Defendants admit that Plaintiff served the notice of acceleration alleged in this paragraph and such writing speaks for itself, but to the extent that the allegations in this paragraph call for a legal conclusion about the effect of the notice of acceleration and any alleged amounts due and owing under the 1078 Loan, a response is not required, and if a response is required, Defendants lack sufficient information to admit or deny the allegations and therefore deny them.

120.    To date, neither the initial default nor the post-acceleration default on the 1078 Loan has been cured by the applicable Borrower Defendants or Guarantor Defendants.

*Response*: Defendants deny the allegations.

121.    As of July 1, 2024, the unpaid principal balance of the 1078 Note was approximately $1,441,978.13 (exclusive of interest, costs, and other charges).

*Response*: Defendants lack sufficient information to admit or deny the allegations and therefore deny them.

ANSWER TO FIRST AMENDED COMPLAINT

KELLER BENVENUTTI KIM LLP
425 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105

**7. Default on the 1077 Loan.**

122. Maricopa Orchards and FFGT Farms failed to pay the semiannual payment of $472,123.23 due on July 1, 2024, under the 1077 Note. Accordingly, on or about September 26, 2024, Conterra, as agent and loan servicer for American Equity, served a notice of default on Maricopa Orchards and FFGT Farms by mail, indicating that the borrowers were in default of their obligations under the loan documents relating to the 1077 Loan due to nonpayment.

**Response:** Defendants lack sufficient information to admit or deny the allegations and therefore deny them.

123. On or about November 27, 2024, American Equity, through its counsel, served a notice of acceleration on borrowers Maricopa Orchards and FFGT Farms and guarantors Darius, Farid, and Farshid Assemi by mail, indicating that all amounts due and owing under the loan documents relating to the 1077 Loan had been accelerated as a result of the continuing default.

**Response:** Defendants admit that Plaintiff served the notice of acceleration alleged in this paragraph and such writing speaks for itself, but to the extent that the allegations in this paragraph call for a legal conclusion about the effect of the notice of acceleration and any alleged amounts due and owing under the 1077 Loan, a response is not required, and if a response is required, Defendants lack sufficient information to admit or deny the allegations and therefore deny them.

124. To date, neither the initial default nor the post-acceleration default on the 1077 Loan has been cured by the applicable Borrower Defendants or Guarantor Defendants.

**Response:** Defendants deny the allegations.

125. As of July 1, 2024, the unpaid principal balance of the 1077 Note was approximately $12,531,450.19 (exclusive of interest, costs, and other charges).

**Response:** Defendants lack sufficient information to admit or deny the allegations and therefore deny them.

ANSWER TO FIRST AMENDED COMPLAINT

KELLER BENVENUTTI KIM LLP
425 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105

**8.  <u>Default on the 1076 Loan.</u>**

126.    Maricopa Orchards and FFGT Farms failed to pay the semiannual payment of $369,173.94 due on July 1, 2024, under the 1076 Note. Accordingly, on or about September 26, 2024, Conterra, as agent and loan servicer for American Equity, served a notice of default on Maricopa Orchards and FFGT Farms by mail, indicating that the borrowers were in default of their obligations under the loan documents relating to the 1076 Loan due to nonpayment.

**Response:** Defendants lack sufficient information to admit or deny the allegations and therefore deny them.

127. On or about November 27, 2024, American Equity, through its counsel, served a notice of acceleration on borrowers Maricopa Orchards and FFGT Farms and guarantors Darius, Farid, and Farshid Assemi by mail, indicating that all amounts due and owing under the loan documents relating to the 1076 Loan had been accelerated as a result of the continuing default.

**Response:** Defendants admit that Plaintiff served the notice of acceleration alleged in this paragraph and such writing speaks for itself, but to the extent that the allegations in this paragraph call for a legal conclusion about the effect of the notice of acceleration and any alleged amounts due and owing under the 1076 Loan, a response is not required, and if a response is required, Defendants lack sufficient information to admit or deny the allegations and therefore deny them.

128. To date, neither the initial default nor the post-acceleration default on the 1076 Loan has been cured by the applicable Borrower Defendants or Guarantor Defendants.

**Response:** Defendants deny the allegations.

129.    As of July 1, 2024, the unpaid principal balance of the 1076 Note was approximately $9,409,816.35 (exclusive of interest, costs, and other charges).

**Response:** Defendants lack sufficient information to admit or deny the allegations and therefore deny them.

**9.  <u>Default on the 1115 Loan.</u>**

130.    The 1115/1116 Borrowers failed to pay the semiannual payment of $363,774.10 due

ANSWER TO FIRST AMENDED COMPLAINT

KELLER BENVENUTTI KIM LLP
425 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105

on July 1, 2024, under the 1115 Note.  Accordingly, on or about September 26, 2024, Conterra, as agent and loan servicer for American Equity, served a notice of default on the 1115/1116 Borrowers (i.e., Maricopa Orchards, Copper Avenue, C & A Farms, ACAP Farms, Willow Avenue, 104 Investments, Lincoln Grantor Farms, Grantor Real Estate, Gradon Farms, FFGT Farms, Cantua Orchards, and Locans Investments) by mail, indicating that the borrowers were in default of their obligations under the loan documents relating to the 1115 Loan due to nonpayment.

**Response**: Defendants lack sufficient information to admit or deny the allegations and therefore deny them.

131.    On or about December 4, 2024, American Equity, through its counsel, served a notice of acceleration on the 1115/1116 Borrowers and Guarantor Defendants (i.e., Darius, Farid, Farshid, and Sonia Assemi) by mail, indicating that all amounts due and owing under the loan documents relating to the 1115 Loan had been accelerated as a result of the continuing default.

**Response**: Defendants admit that Plaintiff served the notice of acceleration alleged in this paragraph and such writing speaks for itself, but to the extent that the allegations in this paragraph call for a legal conclusion about the effect of the notice of acceleration and any alleged amounts due and owing under the 1115 Loan, a response is not required, and if a response is required, Defendants lack sufficient information to admit or deny the allegations and therefore deny them.

132.    To date, neither the initial default nor the post-acceleration default on the 1115 Loan has been cured by the 1115/1116 Borrowers or Guarantor Defendants.

**Response**: Defendants deny the allegations.

133.    As of July 1, 2024, the unpaid principal balance of the 1115 Note was approximately $8,212,151.19 (exclusive of interest, costs, and other charges).

**Response**: Defendants lack sufficient information to admit or deny the allegations and therefore deny them.

**10. <u>Default on the 1116 Loan.</u>**

134.    The 1115/1116 Borrowers failed to pay the installment payments of (a) $73,766.88

ANSWER TO FIRST AMENDED COMPLAINT

KELLER BENVENUTTI KIM LLP
425 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105

due on July 1, 2024, (b) $73,861.73 due on August 1, 2024, and (c) $73,856.87 due on September 1, 2024, under the 1116 Note.  Accordingly, on or about September 30, 2024, Conterra, as agent and loan servicer for American Equity, served a notice of default on the 1115/1116 Borrowers by mail, indicating that the borrowers were in default of their obligations under the loan documents relating to the 1116 Loan due to nonpayment.

**Response:** Defendants lack sufficient information to admit or deny the allegations and therefore deny them.

135.    On or about December 4, 2024, American Equity, through its counsel, served a notice of acceleration on the 1115/1116 Borrowers and Guarantor Defendants by mail, indicating that all amounts due and owing under the loan documents relating to the 1116 Loan had been accelerated as a result of the continuing default.

**Response:** Defendants admit that Plaintiff served the notice of acceleration alleged in this paragraph and such writing speaks for itself, but to the extent that the allegations in this paragraph call for a legal conclusion about the effect of the notice of acceleration and any alleged amounts due and owing under the 1116 Loan, a response is not required, and if a response is required, Defendants lack sufficient information to admit or deny the allegations and therefore deny them.

136.    To date, neither the initial default nor the post-acceleration default on the 1116 Loan has been cured by the 1115/1116 Borrowers or Guarantor Defendants.

**Response:** Defendants deny the allegations.

137.    As of July 1, 2024, the unpaid principal balance of the 1116 Note was approximately $8,212,151.19 (exclusive of interest, costs, and other charges).

**Response:** Defendants lack sufficient information to admit or deny the allegations and therefore deny them.

### D.  The Need for the Appointment of a Receiver

138.    Given Borrower Defendants' breach or default under each of the Loans, Plaintiff is entitled to the appointment of a receiver to protect and manage the property constituting Plaintiff's

ANSWER TO FIRST AMENDED COMPLAINT

collateral for the Loans (i.e., the Remaining 1021/1024 Collateral, 1022 Collateral, 1023 Collateral, 1069 Collateral, Remaining 1078 Collateral, 1077 Collateral, 1076 Collateral, and Remaining 1115/1116 Collateral) (collectively, the "Collateral").

**Response:** The allegation calls for a legal conclusion to which no response is required, so it is denied.

139.    Unless a receiver is appointed to, among other things, protect and manage the Collateral, there is a real danger that the Collateral will suffer waste or other harm, resulting in irreparable injury to Plaintiff's rights thereto.

**Response:** Defendants deny the allegations.

140.    Specifically, the Collateral consists of, among other things, thousands of acres of farm land, with a significant number of those acres containing pistachio or almond trees. Those trees (but not any crops thereon) represent a significant portion of the value of Plaintiff's Collateral. This farm land requires regular care, without which the trees thereon may be damaged or may die.

**Response:** Defendants admit the allegations.

141.    Borrower Defendants have informed Plaintiff that, due to cash flow and liquidity issues, Borrower Defendants no longer have the ability to pay their operating expenses, maintain their operations, or otherwise care for Plaintiff's Collateral. As a result, there is manifest and immediate danger of loss, deterioration, and diminution of the Collateral, which will likely be the primary source for repayment of the Loans, and Plaintiff, as an interested and secured party, is threatened with material losses and injuries for which it has no adequate remedy at law against Borrower Defendants.

**Response:** Defendants lack sufficient information to admit or deny the allegations and therefore deny them.

142.    Under California and federal law and as provided in the Deeds of Trust, Plaintiff has the right to the appointment of a receiver. Plaintiff is contractually and equitably entitled to the immediate appointment of a receiver to take possession of and hold, subject to the discretion of this

KELLER BENVENUTTI KIM LLP
425 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105

ANSWER TO FIRST AMENDED COMPLAINT

Keller Benvenutti Kim LLP
425 Market Street, 26th Floor
San Francisco, California 94105

Court, the Collateral pledged as security for the Loans.

*Response*: The allegation calls for a legal conclusion to which no response is required, so it is denied.

143.   Plaintiff intends to provide additional funding to the appointed receiver to allow them to maintain and manage the Collateral.

*Response*: Defendants lack sufficient information to admit or deny the allegations and therefore deny them.

## IV.   CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF

#### (For Judicial Foreclosure)

**(Against Maricopa Orchards, LLC; 104 Investments, LLC; ACAP Farms, LLC; C & A Farms, LLC; Cantua Orchards, LLC; Copper Avenue Investments, LLC; FFGT Farms, LLC; Gradon Farms, LLC; Grantor Real Estate Investments, LLC; Lincoln Grantor Farms, LLC; Locans Investments, LLC; and Willow Avenue Investments, LLC)**

144.   Plaintiff incorporates herein by reference, as though fully set forth herein, the allegations contained in paragraphs 1 through 143, inclusive.

*Response*: Defendants incorporate their answers to the foregoing paragraphs 1 through 143, inclusive. Defendants aver that this claim for relief is not asserted against them, so no response is required to the allegations in this claim for relief and to the extent that a response is required, the allegations are denied.

145.   At all relevant times, Plaintiff is the lawful holder of the Notes, the lawful beneficiary under the Deeds of Trust, and the lawful owner of the other loan documents relating to the Loans (collectively, the "Loan Documents").

*Response*: The allegation calls for a legal conclusion to which no response is required, so it is denied.

ANSWER TO FIRST AMENDED COMPLAINT

146.    Plaintiff has performed all of the terms and conditions required on its part to be performed under the Loan Documents.

**Response:** Defendants lack sufficient information to admit or deny the allegations and therefore deny them.

147.    On information and belief, when the 1021-Fresno Deed of Trust and 1024-Fresno Deed of Trust were executed, Willow Avenue was, and continues to be, the owner of the real property included in the Remaining 1021/1024 Collateral, and Willow Avenue otherwise presently holds an interest in all real and personal property that constitutes the Remaining 1021/1024 Collateral.

**Response:** Defendants lack sufficient information to admit or deny the allegations and therefore deny them.

148.    On information and belief, when the 1022 Deed of Trust was executed, Lincoln Grantor Farms was, and continues to be, the owner of the real property included in the 1022 Collateral, and Lincoln Grantor Farms otherwise presently holds an interest in all real and personal property that constitutes the 1022 Collateral.

**Response:** Defendants lack sufficient information to admit or deny the allegations and therefore deny them.

149.    On information and belief, when the 1023 Deed of Trust was executed, Grantor Real Estate was, and continues to be, the owner of the real property included in the 1023 Collateral, and Grantor Real Estate otherwise presently holds an interest in all real and personal property that constitutes the 1023 Collateral.

**Response:** Defendants lack sufficient information to admit or deny the allegations and therefore deny them.

150.    On information and belief, when the 1069 Deed of Trust was executed, Gradon Farms was, and continues to be, the owner of the real property included in the 1069 Collateral, and Gradon Farms otherwise presently holds an interest in all real and personal property that constitutes the 1069 Collateral.

KELLER BENVENUTTI KIM LLP
425 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105

ANSWER TO FIRST AMENDED COMPLAINT

**Response**: Defendants lack sufficient information to admit or deny the allegations and therefore deny them.

151.    On information and belief, when the 1078 Deed of Trust was executed, Lincoln Grantor Farms was, and continues to be, the owner of the real property included in the Remaining 1078 Collateral, and Lincoln Grantor Farms otherwise presently owns all real and personal property that constitutes the 1078 Collateral.

**Response**: Defendants lack sufficient information to admit or deny the allegations and therefore deny them.

152.    On information and belief, when the 1077 Deed of Trust was executed, FFGT Farms was, and continues to be, the owner of the real property included in the 1077 Collateral, and FFGT Farms otherwise presently holds an interest in all real and personal property that constitutes the 1077 Collateral.

**Response**: Defendants lack sufficient information to admit or deny the allegations and therefore deny them.

153.    On information and belief, (a) when the 1076-Fresno Deed of Trust was executed, FFGT Farms was, and continues to be, the owner of the real property located in Fresno County, California, included in the 1076 Collateral, (b) when the 1076-Kings Deed of Trust was executed, FFGT Farms was, and continues to be, the owner of the real property located in Kings County, California, included in the 1076 Collateral, and (c) FFGT Farms otherwise presently holds an interest in all real and personal property that constitutes the 1076 Collateral.

**Response**: Defendants lack sufficient information to admit or deny the allegations and therefore deny them.

154.    On information and belief, (a) when the 1115/1116-Fresno Deed of Trust was executed, Lincoln Grantor Farms, Gradon Farms, FFGT Farms, 104 Investments, Locans Investments, Cantua Orchards, C & A Farms, and Willow Avenue were, and continue to be, the owners of the real property located in Fresno County, California, included in the Remaining

KELLER BENVENUTTI KIM LLP
425 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105

ANSWER TO FIRST AMENDED COMPLAINT

1115/1116 Collateral, (b) when the 1115/1116-Kern Deed of Trust was executed, C & A Farms, Lincoln Grantor Farms, Maricopa Orchards, Willow Avenue, and Grantor Real Estate were, and continue to be, the owners of the real property located in Kern County, California, included in the Remaining 1115/1116 Collateral, (c) when the 1115/1116-Kings Deed of Trust was executed, Copper Avenue, Lincoln Grantor Farms, ACAP Farms, FFGT Farms, and Willow Avenue were, and continue to be, the owners of the real property located in Kings County, included in the Remaining 1115/1116 Collateral, and (d) the 1115/1116 Borrowers otherwise collectively presently hold interests in all real and personal property that constitutes the Remaining 1115/1116 Collateral.

*Response*: Defendants lack sufficient information to admit or deny the allegations and therefore deny them.

155. As set forth above, the Loan Documents, among other things, require that the applicable Borrower Defendants make certain installment payments to Plaintiff that come due under the Notes and pay all amounts due under the Notes to Plaintiff following acceleration, and those Borrower Defendants defaulted under the Loan Documents by failing, and continuing to fail, to make those payments or otherwise pay off the Loans.

*Response*: Defendants lack sufficient information to admit or deny the allegations and therefore deny them.

156. Plaintiff has notified the applicable Borrower Defendants of their default under each Loan in writing, and, to date, the applicable Borrower Defendants have not cured their default.

*Response*: Defendants lack sufficient information to admit or deny the allegations and therefore deny them.

157. With respect to each Loan, the applicable Loan Documents provide that the applicable Borrower Defendants owes Plaintiff default interest on the outstanding principal balance, accrued interest, and any other amounts due under the corresponding Note, as well as all costs, expenses, and reasonable attorneys' fees incurred by Plaintiff in enforcing the terms of the Loan Documents, including, without limitation, the corresponding Note and Deed of Trust(s). As a further result of

ANSWER TO FIRST AMENDED COMPLAINT

KELLER BENVENUTTI KIM LLP
425 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105

Borrower Defendants' defaults, Plaintiff has been damaged in that it has and will be required to incur attorneys' fees and costs to enforce its rights under the Loan Documents.

*Response*: Defendants lack sufficient information to admit or deny the allegations and therefore deny them.

158.    Pursuant to each Deed of Trust, Plaintiff is entitled to judgment that (a) the rights, claims, ownership, liens, titles, and demands of the applicable Borrower Defendants, and all persons or entities claiming under any of them, are subject to the lien of that Deed of Trust, (b) that Deed of Trust is foreclosed and the applicable Collateral shall be sold according to law by a sheriff, marshal, or other person appointed by the Court, (c) the applicable Borrower Defendants are liable to Plaintiff for any deficiency owing in connection with the underlying Loan, and (d) when the time for redemption has passed, the commissioner or trustee shall execute and deliver a deed to the purchaser(s) of the applicable Collateral at the foreclosure sale and that said purchaser(s) be put into the possession of the collateral upon delivery of said deed.

*Response*: Defendants lack sufficient information to admit or deny the allegations and therefore deny them.

159.    With the 1021-Fresno Deed of Trust and 1024-Fresno Deed of Trust, Plaintiff seeks judicial foreclosure of only the real and personal property that constitutes the Remaining 1021/1024 Collateral that remains subject to such Deeds of Trust at the time of sale, and, for the avoidance of doubt, such foreclosure would not include any property that constitutes Reconveyed 1021/1024 Former Collateral.

*Response*: Defendants lack sufficient information to admit or deny the allegations and therefore deny them.

160.    With respect to the 1022 Deed of Trust, Plaintiff seeks judicial foreclosure of only the real and personal property that constitutes the 1022 Collateral that remains subject to such Deed of Trust at the time of sale.

ANSWER TO FIRST AMENDED COMPLAINT

KELLER BENVENUTTI KIM LLP
425 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105

**Response**: Defendants lack sufficient information to admit or deny the allegations and therefore deny them.

161.    With respect to the 1023 Deed of Trust, Plaintiff seeks judicial foreclosure of only the real and personal property that constitutes the 1023 Collateral that remains subject to such Deed of Trust at the time of sale.

**Response**: Defendants lack sufficient information to admit or deny the allegations and therefore deny them.

162.    With respect to the 1069 Deed of Trust, Plaintiff seeks judicial foreclosure of only the real and personal property that constitutes the 1069 Collateral that remains subject to such Deed of Trust at the time of sale.

**Response**: Defendants lack sufficient information to admit or deny the allegations and therefore deny them.

163.    With respect to the 1078 Deed of Trust, Plaintiff seeks judicial foreclosure of only the real and personal property that constitutes the Remaining 1078 Collateral that remains subject to such Deed of Trust at the time of sale, and, for the avoidance of doubt, such foreclosure would not include any property that constitutes Reconveyed 1078 Former Collateral.

**Response**: Defendants lack sufficient information to admit or deny the allegations and therefore deny them.

164.    With respect to the 1077 Deed of Trust, Plaintiff seeks judicial foreclosure of only the real and personal property that constitutes the 1077 Collateral that remains subject to such Deed of Trust at the time of sale.

**Response**: Defendants lack sufficient information to admit or deny the allegations and therefore deny them.

165.    With respect to the 1076-Fresno Deed of Trust and 1076-Kings Deed of Trust, Plaintiff seeks judicial foreclosure of only the real and personal property that constitutes the 1076 Collateral that remains subject to such Deeds of Trust at the time of sale.

ANSWER TO FIRST AMENDED COMPLAINT

KELLER BENVENUTTI KIM LLP
425 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105

*Response*: Defendants lack sufficient information to admit or deny the allegations and therefore deny them.

166.    With respect to the 1115/1116-Fresno Deed of Trust, 1115/1116-Kern Deed of Trust, and 1115/1116-Kings Deed of Trust, Plaintiff seeks judicial foreclosure of only the real and personal property that constitutes the Remaining 1115/1116 Collateral that remains subject to such Deeds of Trust at the time of sale, and for the avoidance of doubt, such foreclosure would not include any property that constitutes Reconveyed 1115/1116 Former Collateral.[1]

*Response*: Defendants lack sufficient information to admit or deny the allegations and therefore deny them.

## SECOND CLAIM FOR RELIEF

**(For Specific Performance and Appointment of Receiver)**

**(Against Maricopa Orchards, LLC; 104 Investments, LLC; ACAP Farms, LLC; C & A Farms, LLC; Cantua Orchards, LLC; Copper Avenue Investments, LLC; FFGT Farms, LLC; Gradon Farms, LLC; Grantor Real Estate Investments, LLC; Lincoln Grantor Farms, LLC; Locans Investments, LLC; and Willow Avenue Investments, LLC)**

167.    Plaintiff incorporates herein by reference, as though fully set forth herein, the allegations contained in paragraphs 1 through 166, inclusive.

*Response*: Defendants incorporate their answers to the foregoing paragraphs 1 through 166, inclusive. Defendants aver that this claim for relief is not asserted against them, so no response is required to the allegations in this claim for relief and to the extent that a response is required, the allegations are denied.

168.    Plaintiff is the lawful holder of the Notes, the lawful beneficiary under the Deeds of

---

[1] Certain property that constitutes part of the Remaining 1115/1116 Collateral may be presently subject to the receivership arising out of *Federal Agricultural Mortgage Corp. v. Assemi Brothers, LLC, et al.* (Case No. 1:24-cv-01455-KES- SAB) pending in this Court.  Accordingly, Plaintiff only seeks the foreclosure of such property to the extent that it is no longer subject to such receivership at the time of judgment or sale.

ANSWER TO FIRST AMENDED COMPLAINT

KELLER BENVENUTTI KIM LLP
425 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105

Trust, and the lawful owner of the other Loan Documents.

**Response:** The allegation calls for a legal conclusion to which no response is required, so it is denied.

169.    Plaintiff has performed all of its obligations to Borrower Defendants under the terms of the Loan Documents.

**Response:** Defendants lack sufficient information to admit or deny the allegations and therefore deny them.

170.    On information and belief, Borrower Defendants collectively presently holds interests in all real and personal property that constitutes the Collateral.

**Response:** Defendants lack sufficient information to admit or deny the allegations and therefore deny them.

171.    As set forth above, the Loan Documents, among other things, require that the applicable Borrower Defendants make certain installment payments to Plaintiff that come due under the Notes, and those Borrower Defendants breached the Loan Documents by failing to make those payments.

**Response:** Defendants lack sufficient information to admit or deny the allegations and therefore deny them.

172.    Plaintiff has notified the applicable Borrower Defendants of their default under each Loan in writing, and, to date, the applicable Borrower Defendants have not cured their default.

**Response:** Defendants lack sufficient information to admit or deny the allegations and therefore deny them.

173.    Having given written notice of default to Borrower Defendants with respect to the Loans, Plaintiff is entitled pursuant to the express terms of the Deeds of Trust to have a receiver appointed to take possession of and manage the Collateral and to collect the rents and profits from the Collateral, if any, without the need to make any showing as to the inadequacy of the Collateral as security.

ANSWER TO FIRST AMENDED COMPLAINT

KELLER BENVENUTTI KIM LLP
425 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105

1   **Response**: The allegation calls for a legal conclusion to which no response is required, so it

2   is denied.

3   174.    Due to Borrower Defendants' defaults, as well as their cash flow and liquidity issues,

4   there is a real danger that the Collateral will suffer waste resulting in irreparable harm to Plaintiff if

5   a receiver is not appointed to manage and protect the Collateral.

6   **Response**: Defendants deny the allegations.

7   175.    It is impractical and impossible for Plaintiff to enjoy the rights granted to it or enforce

8   the obligations of Borrower Defendants under the Loan Documents without the appointment of a

9   receiver who has the power and authority to take possession of and manage the Collateral and collect

10  the rents and profits derived therefrom, if any.

11  **Response**: Defendants lack sufficient information to admit or deny the allegations and

12  therefore deny them.

13  176.    Plaintiff has no plain, speedy, or adequate remedy at law to enforce the provisions of

14  the Deeds of Trust as set forth herein and will suffer irreparable harm unless equitable relief is granted

15  and a receiver is appointed to manage, operate, and control the Collateral.

16  **Response**: Defendants deny the allegations.

17  177.    A receiver should be appointed and granted the general powers and duties of a court-

18  appointed receiver, including the power to take and keep possession of the Collateral and to do such

19  acts respecting the collateral as the Court may authorize pending Plaintiff's forthcoming exercise of

20  its remedies under the Loan Documents.

21  **Response**: Defendants deny the allegations.

22  ### THIRD CLAIM FOR RELIEF

23  **(For Breach of Guaranty)**

24  **(Against Darius Assemi, Farid Assemi, and Farshid Assemi)**

25  178.    Plaintiff incorporates herein by reference, as though fully set forth herein, the

26  allegations contained in paragraphs 1 through 177, inclusive.

ANSWER TO FIRST AMENDED COMPLAINT

KELLER BENVENUTTI KIM LLP
425 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105

**Response**: Defendants incorporate their answers to the foregoing paragraphs 1 through 177, inclusive. Defendants aver that this claim for relief is not asserted against Defendants, so no response from them is required to the allegations in this claim for relief and to the extent that a response is required from Defendants, the allegations are denied.

179.    Plaintiff is the lawful holder of the Notes, the lawful beneficiary under the Deeds of Trust, and the lawful owner of the other Loan Documents, including the Guaranties.

**Response**: The allegation calls for a legal conclusion to which no response is required, so it is denied.

180.    Darius, Farid, and Farshid Assemi, as guarantors, and Plaintiff, as assignee of Conterra's interest in the Loans, as lender, are parties to the Guaranties, which obligated the former to pay the indebtedness owed by the applicable Borrower Defendants to Plaintiff in connection with the ten Loans.

**Response:** Defendants aver that the Guaranties are written instruments that speak for themselves and admit that their terms are within those documents unless subsequently modified. To the extent that the allegations call for a legal conclusion about the effect of the Guaranties, a response is not required, and if a response is required, Defendants lack sufficient information to admit or deny the allegations and therefore deny them.

181.    Plaintiff has performed all of its obligations with respect to the Loan Documents, including with respect to the Guaranties.

**Response**: Defendants lack sufficient information to admit or deny the allegations and therefore deny them.

182.    Darius, Farid, and Farshid Assemi have breached the Guaranties by failing to pay those amounts due and owing under the Loan Documents, as demanded by Plaintiff.

**Response**: Defendants deny the allegations.

183.    As a result of the breaches by Darius, Farid, and Farshid Assemi under the Guaranties, Plaintiff has suffered damages of no less than **$51,349,085.26**, plus all accrued and unpaid interest,

ANSWER TO FIRST AMENDED COMPLAINT

reasonable attorneys' fees, costs, and other charges allowed under the Loan Documents, including under the Guaranties, in an amount to be determined at trial. The $51,349,085.26 amount represents the unpaid principal balance owed on each of the Loans, including (a) $3,397,915.77 on the 1021 Loan, (b) $1,493,356.15 on the 1024 Loan, (c) $251,719.34 on the 1022 Loan, (d) $2,894,772.46 on the 1023 Loan, (e) $3,503,774.50 on the 1069 Loan, (f) $1,441,978.13 on the 1078 Loan, (g) $12,531,450.18 on the 1077 Loan, (h) $9,409,816.35 on the 1076 Loan, (i) $8,212,151.19 on the 1115 Loan, and (j) $8,212,151.19 on the 1116 Loan.

**Response:** Defendants deny the allegations.

## FOURTH CLAIM FOR RELIEF

### (For Breach of Guaranty)

### (Against Sonia Assemi)

184. Plaintiff incorporates herein by reference, as though fully set forth herein, the allegations contained in paragraphs 1 through 183, inclusive.

**Response:** Defendants incorporate their answers to the foregoing paragraphs 1 through 183, inclusive. Defendants aver that this claim for relief is not asserted against Defendants, so no response from them is required to the allegations in this claim for relief and to the extent that a response is required from Defendants, the allegations are denied.

185. Plaintiff is the lawful holder of the 1115 Note and 1116 Note, the lawful beneficiary under the 1115/1116 Deeds of Trust, and the lawful owner of the other Loan Documents relating to the 1115 Loan and 1116 Loan, including the Sonia Guaranties.

**Response:** The allegation calls for a legal conclusion to which no response is required, so it is denied.

186. Sonia Assemi, as guarantor, and Plaintiff, as assignee of Conterra's interest in the 1115 Loan and 1116 Loan, as lender, are parties to the Sonia Guaranties, which obligated the former to pay the indebtedness owed by the 1115/1116 Borrowers to Plaintiff in connection with the 1115 Loan and 1116 Loan.

KELLER BENVENUTTI KIM LLP
425 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105

ANSWER TO FIRST AMENDED COMPLAINT

*Response:* Defendants aver that the Guaranties are written instruments that speak for themselves and admit that their terms are within those documents unless subsequently modified. To the extent that the allegations call for a legal conclusion about the effect of the Guaranties, a response is not required, and if a response is required, Defendants lack sufficient information to admit or deny the allegations and therefore deny them.

187.    Plaintiff has performed all of its obligations with respect to the Loan Documents relating to the 1115 Loan and 1116 Loan, including with respect to the Sonia Guaranties.

*Response***:** Defendants lack sufficient information to admit or deny the allegations and therefore deny them.

188.    Sonia Assemi has breached the Sonia Guaranties by failing to pay those amounts due and owing under the Loan Documents relating to the 1115 Loan and 1116 Loan, as demanded by Plaintiff.

*Response***:** Defendants deny the allegations.

189.    As a result of the breaches by Sonia Assemi under the Sonia Guaranties, Plaintiff has suffered damages of no less than **$16,424,302.38**, plus all accrued and unpaid interest, reasonable attorneys' fees, costs, and other charges allowed under the applicable Loan Documents, including under the Sonia Guaranties, in an amount to be determined at trial.  The $16,424,302.38 amount represents the unpaid principal balance of $8,212,151.19 owed on the 1115 Loan and the unpaid principal balance of $8,212,151.19 owed on the 1116 Loan.

*Response***:** Defendants deny the allegations.

## V.    PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendants, and each of them, and in favor of Plaintiff as follows:

## ON THE FIRST CLAIM FOR RELIEF:

1.    For a declaration of all amounts due and owing under the Loan Documents in the amount of no less than $51,349,085.26 (the aggregate amount of the unpaid principal balances on all

ANSWER TO FIRST AMENDED COMPLAINT

KELLER BENVENUTTI KIM LLP
425 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105

ten Loans), together with interest, reasonable attorneys' fees, costs, and other charges, according to proof;

2.    For an adjudication that (a) the Deeds of Trust and all other security documents relating the Loans be foreclosed, (b) judgment be made for sale of the Collateral according to law by a sheriff, marshal, or other person appointed by this Court, (c) the sale proceeds be applied in payment of the amount due Plaintiff, any and all entities and persons claiming an interest in the Collateral, whether as owners, lienholders, beneficiaries under a deed of trust, creditors, purchasers, encumbrancers, or otherwise, be barred and foreclosed from all rights, claims, interests, or equities of redemption in the Collateral and every part thereof when the time for redemption, if any, has passed, and (e) any deficiency after sale be permitted by law and the Loan Documents;

3.    For an adjudication that (a) Plaintiff or any other party to this lawsuit may be permitted to become a purchaser at the foreclosure sale(s), and (b) Plaintiff may credit bid upon the Collateral at such foreclosure sale(s);

4.    For an adjudication that (a) when the time for redemption has passed, the sheriff, marshal, or other person appointed to sell the Collateral shall execute a deed and other required documents necessary to transfer title to the purchaser of the Collateral at the foreclosure sale, and (b) the purchaser shall be permitted to take possession of the Collateral upon production of the deed and other appropriate

documents of title; and

5.    For an adjudication awarding Plaintiff judgment and execution against Borrower Defendants to the extent permitted by law and the Loan Documents for any deficiency that may remain after applying all of the proceeds of sale of the Collateral properly applicable to the satisfaction of the amounts found due by the Court.

**ON THE SECOND CLAIM FOR RELIEF:**

6.    For specific performance of the provisions of the Deeds of Trust, and the assignment referred to therein, relating to the right of Plaintiff, pending a foreclosure and/or trial on the issues

herein, to have a receiver appointed to take possession of and care for and operate the Collateral, and to collect rents, issues, profits, income, and proceeds therefrom during the pendency of this action;

7.    For the entry of an order appointing a receiver, and that, pursuant to that order, the receiver be authorized to (a) take possession and control of the Collateral; (b) conserve, maintain, and manage the Collateral, including entering into any appropriate lease(s) or license(s) associated with the management of the Collateral or retaining a third party to manage the Collateral; (c) collect any and all rents, issues, profits, income, and proceeds from the Collateral, if any; and perform all other acts consistent with the terms of the order entered by the Court;

8.    For the entry of an order directing Borrower Defendants and any other third party in possession of the Collateral to deliver possession of the same to the receiver and perform certain acts or refrain from other acts as deemed appropriate by the Court; and

9.    For the entry of a preliminary injunction and permanent injunction enjoining Borrower Defendants and their agents, partners, property managers, employees, officers, directors, affiliates, assignees, successors, and representatives, and all persons acting under, in concert with, or for them, from (a) committing or permitting any waste on the Collateral, or suffering, committing, or permitting any act on the Collateral, or any part thereof, in violation of applicable law, or removing or otherwise disposing of any of the Collateral, including any improvements, equipment, fixtures, and permanent plantings; (b) directly or indirectly interfering in any manner with the discharge of the receiver's duties or the receiver's possession of and operation or management of the Collateral; and (c) doing any act which will, or which will tend to, impair, defeat, divert, prevent, or prejudice the preservation of the Collateral.

**ON THE THIRD CLAIM FOR RELIEF:**

10.    For damages of no less than $51,349,085.26, plus all accrued and unpaid interest, reasonable attorneys' fees, costs, and other charges allowed under the Loan Documents, including under the Guaranties, according to proof at trial.

ANSWER TO FIRST AMENDED COMPLAINT

**ON THE FOURTH CLAIM FOR RELIEF**:

11.    For damages of no less than $16,424,302.38, plus all accrued and unpaid interest, reasonable attorneys' fees, costs, and other charges allowed under the applicable Loan Documents, including under the Sonia Guaranties, according to proof at trial.

**ON ALL CLAIMS FOR RELIEF**:

12.    For the granting of such other and further relief as the Court deems appropriate under the circumstances.

***Response to Prayer for Relief***: To the extent Plaintiff's Prayer for Relief is construed as allegations requiring response, Defendants deny the allegations and Defendants pray for judgment as follows in connection with the First Amended Complaint:

1.    That Plaintiff take nothing by its First Amended Complaint and that the same be dismissed with prejudice;

2.    That Defendants have judgment entered in their favor;

3.    That Defendants be awarded costs of suit; and

4.    For such other and further relief as this Court deems proper.

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38, Defendants demand a trial by jury on all issues so triable.

## AFFIRMATIVE DEFENSES

1.    Defendants raise the affirmative defense of bad faith, whereby the loss or damages, if any, sustained by Plaintiff herein is barred by Plaintiff's bad-faith conduct.

2.    Defendants raise the affirmative defense of unclean hands whereby the loss or damages, if any, sustained by Plaintiff herein is barred by the doctrine of unclean hands.

3.    Defendants raise the affirmative defense of their good faith and lawful conduct. Any alleged act or omission by Defendants, concerning Plaintiff, was taken for lawful reasons. At all

KELLER BENVENUTTI KIM LLP
425 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105

ANSWER TO FIRST AMENDED COMPLAINT

times relevant to the claims and time period alleged in the First Amended Complaint, Defendants acted lawfully, with due care, in good faith, in lawful competition, and without malice.

4.    Defendants raise the affirmative defense of laches because the loss or damages, if any, sustained by Plaintiff herein is barred by laches.

5.    Defendants raise the affirmative defense of waiver, whereby any recovery by Plaintiff on the First Amended Complaint is barred by the doctrine of waiver.

6.    Defendants raise the affirmative defense of mitigation of damages. Plaintiff failed to act reasonably to avoid and/or mitigate its alleged damages, and such failure bars or diminishes any recovery on the First Amended Complaint, and any cause of action alleged herein.

7.    Defendants raise the affirmative defense of unjust enrichment. Plaintiff should not be permitted to obtain a favorable recovery on any of its claims against Defendants because to allow such recovery would result in an unjust enrichment to Plaintiff.

8.    Defendants raise the affirmative defense of justification. Plaintiff is barred from recovery on the claims asserted in the First Amended Complaint, in whole, or in part, because the actions of Defendants were justified and/or excused under the totality of the circumstances.

9.    Defendants raise the affirmative defense of privilege. Plaintiff is barred from recovery on the claims asserted in the First Amended Complaint, in whole, or in part, because, at all times relevant to the time period alleged in the First Amended Complaint, Defendants acted in good faith to protect their own financial interests.

10.    Defendants raise the affirmative defense of estoppel whereby Plaintiff is estopped by its own conduct from recovering any relief under the First Amended Complaint.

11.    Defendants raise the affirmative defense of Plaintiff's material alteration of the underlying debts and loans.

12.    Defendants raise the affirmative defense of Plaintiff's negligent loan administration of the underlying debts and loans.

KELLER BENVENUTTI KIM LLP
425 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105

13.     Defendants raise the affirmative defense of Plaintiff's material impairment of the value of the collateral securing the underlying debts and loans, in light of Plaintiff's specific actions regarding that collateral, including but not limited to any or all of the following: seeking appointment of a receiver, neglecting to maintain collateral property, and/or releasing valuable assets without Defendants' consent.

14.     Defendants raise the affirmative defense of Plaintiff's misconduct such as fraud, misrepresentation, or duress toward the borrowers on the underlying debts/Loans.

15.     Defendants raise the affirmative defense of all defenses or claims belonging to the guarantors on the underlying debts/Loans based on the conduct of Plaintiff, as lender, and/or the underlying debts and loans.

17.     Defendants raise as affirmative defenses all rights and defenses given to borrowers at law or in equity, including but not limited to those rights and defenses that are or may become available to Defendants under California law.

18.     Defendants raise the affirmative defense of the statute of limitations, including but not limited to Civil Code section 337, because Plaintiff waited too long to sue Defendants.

19.     Defendants reserve any affirmative defenses that may be raised based on later discovered evidence. Defendants have not knowingly or intentionally waived any applicable defenses.

Dated: April 21, 2025                    KELLER BENVENUTTI KIM LLP

By: /s/ *Jane Kim*
        Jane Kim
        Jeremy Richards
Attorneys for Defendants 104 Investments, LLC, ACAP Farms, LLC, C&A Farms, LLC, Cantua Orchards, LLC, Cooper Avenue Investments, LLC, FFGT Farms, LLC, Gradon Farms, LLC, Grantor Real Estate Investments, LLC, Lincoln Grantor Farms, LLC, Locans Investments, LLC, Maricopa Orchards, LLC, and Willow Avenue Investments, LLC

CERTIFICATE OF SERVICE

       I hereby certify that on April 21, 2025, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the email addresses denoted on the Notice of Electronic Filing, including the following:

- **Michael R. Farrell**
  mfarrell@allenmatkins.com;
- **Matthew David Pham**
  mpham@allenmatkins.com, mdiaz@allenmatkins.com;
- **Brodie Austin Surfus**
  bsurfus@wtjlaw.com, borozco@wtjlaw.com;
- **Marshall Craig Whitney**
  mwhitney@wtjlaw.com, sgomez@wtjlaw.com, abroome@wtjlaw.com

By:    /s/ *Jane Kim*
            Jane Kim

KELLER BENVENUTTI KIM LLP
425 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105

CERTIFICATE OF SERVICE