1  **MOJDEHI GALVIN REGO LLP**
   Ali M. Mojdehi (SBN 123846)
2  ali.mojdehi@mgr-legal.com
   Allison M. Rego (SBN 272840)
3  allison.rego@mgr-legal.com
   2550 Fifth Ave, Suite 910
4  San Diego, California 92103
   Telephone: (619) 549-4000
5
   Attorneys for Defendant
6  Darius Assemi

7                 UNITED STATES DISTRICT COURT

8                EASTERN DISTRICT OF CALIFORNIA

9                       FRESNO DIVISION

10

11

12 | AMERICAN EQUITY INVESTMENT      | Case No. 1:24-cv-01406-KES-SAB
   | LIFE INSURANCE COMPANY,          |
13 |                                  | **DEFENDANT DARIUS ASSEMI'S**
   |           Plaintiff,             | **ANSWER AND AFFIRMATIVE**
14 |                                  | **DEFENSES**
   |      v.                          |
15 |                                  | **JURY TRIAL DEMANDED**
   | MARICOPA ORCHARDS, LLC; 104      |
16 | INVESTMENTS, LLC; ACAP           | Action Filed: November 15, 2024
   | FARMS, LLC; C & A FARMS, LLC;    | FAC Filed: January 19, 2025
17 | CANTUA ORCHARDS, LLC;            | Trial Date: None Set
   | COPPER AVENUE INVESTMENTS,       |
18 | LLC; FFGT FARMS, LLC; GRADON     |
   | FARMS, LLC; GRANTOR REAL         |
19 | ESTATE INVESTMENTS, LLC;         |
   | LINCOLN GRANTOR FARMS, LLC;      |
20 | LOCANS INVESTMENTS, LLC;         |
   | WILLOW AVENUE INVESTMENTS,       |
21 | LLC; DARIUS ASSEMI; FARID        |
   | ASSEMI; FARSHID ASSEMI; and      |
22 | SONIA ASSEMI,                    |
   |                                  |
23 |           Defendants.            |

24

25

26

27

28

Defendant Darius Assemi ("Defendant") files this Answer and Affirmative Defenses to the First Amended Complaint for (1) Judicial Foreclosure, (2) Specific Performance and Appointment of Receiver and (3) Breach of Guaranty (Doc. 14, "Complaint") filed by Plaintiff American Equity Investment Life Insurance Company ("Plaintiff"). All of the allegations not specifically admitted herein are specifically denied. Defendant's specific responses to the numbered allegations are set forth below.

The numbered paragraphs herein correspond to the numbered paragraphs of the Complaint. Any recitations of the Complaint's headings and subheadings below are expressly used for organizational purposes only, and their inclusion should not be construed as an admission of any arguments, legal conclusions, or allegations that may be contained therein. To the extent that any response is required as to any arguments, legal conclusions, and allegations contained in any headings or subheadings, Defendant denies them in their entirety.

Capitalized terms used herein and not otherwise defined shall have the meanings ascribed to them in the Complaint, for purposes of ease of reference only, and their use should not be construed as an admission of any arguments, legal conclusions, or allegations that may be contained therein.

## I.    **PARTIES**

1.    Plaintiff AMERICAN EQUITY INVESTMENT LIFE INSURANCE COMPANY is, and at all times mentioned herein was, an Iowa corporation organized and existing under and by virtue of the laws of the State of Iowa and authorized to do business in the State of California, with its principal place of business located in West Des Moines, Iowa.

***Response:*** Defendant lacks sufficient information to admit or deny the allegations of this paragraph and therefore denies them.

2.    On information and belief, defendant MARICOPA ORCHARDS, LLC ("Maricopa Orchards") is, and at all times mentioned herein was, a California

1  limited liability company licensed to do business in the State of California, with its
2  principal place of business located in the State of California.

3      ***Response:*** Defendant admits the allegations in this paragraph.

4      3.    On information and belief, defendant 104 INVESTMENTS, LLC ("104
5  Investments") is, and at all times mentioned herein was, a California limited liability
6  company licensed to do business in the State of California, with its principal place
7  of business located in the State of California.

8      ***Response:*** Defendant admits the allegations in this paragraph.

9      4.    On information and belief, defendant ACAP FARMS, LLC ("ACAP
10 Farms") is, and at all times mentioned herein was, a California limited liability
11 company licensed to do business in the State of California, with its principal place
12 of business located in the State of California.

13     ***Response:*** Defendant admits the allegations in this paragraph.

14     5.    On information and belief, defendant C & A FARMS, LLC ("C & A
15 Farms") is, and at all times mentioned herein was, a California limited liability
16 company licensed to do business in the State of California, with its principal place
17 of business located in the State of California.

18     ***Response:*** Defendant admits the allegations in this paragraph.

19     6.    On information and belief, defendant CANTUA ORCHARDS, LLC
20 ("Cantua Orchards") is, and at all times mentioned herein was, a California limited
21 liability company licensed to do business in the State of California, with its principal
22 place of business located in the State of California.

23     ***Response:*** Defendant admits the allegations in this paragraph.

24     7.    On information and belief, defendant COPPER AVENUE
25 INVESTMENTS, LLC ("Copper Avenue") is, and at all times mentioned herein
26 was, a California limited liability company licensed to do business in the State of
27 California, with its principal place of business located in the State of California.

28     ***Response:*** Defendant admits the allegations in this paragraph.

8.      On information and belief, defendant FFGT FARMS, LLC ("FFGT Farms") is, and at all times mentioned herein was, a California limited liability company licensed to do business in the State of California, with its principal place of business located in the State of California.

***Response:*** Defendant admits the allegations in this paragraph.

9.      On information and belief, defendant GRADON FARMS, LLC ("Gradon Farms") is, and at all times mentioned herein was, a California limited liability company licensed to do business in the State of California, with its principal place of business located in the State of California.

***Response:*** Defendant admits the allegations in this paragraph.

10.     On information and belief, defendant GRANTOR REAL ESTATE INVESTMENTS, LLC ("Grantor Real Estate") is, and at all times mentioned herein was, a California limited liability company licensed to do business in the State of California, with its principal place of business located in the State of California.

***Response:*** Defendant admits the allegations in this paragraph.

11.     On information and belief, defendant LINCOLN GRANTOR FARMS, LLC ("Lincoln Grantor Farms") is, and at all times mentioned herein was, a California limited liability company licensed to do business in the State of California, with its principal place of business located in the State of California.

***Response:*** Defendant admits the allegations in this paragraph.

12.     On information and belief, defendant LOCANS INVESTMENTS, LLC ("Locans Investments") is, and at all times mentioned herein was, a California limited liability company licensed to do business in the State of California, with its principal place of business located in the State of California.

***Response:*** Defendant admits the allegations in this paragraph.

13.     On information and belief, defendant WILLOW AVENUE INVESTMENTS, LLC ("Willow Avenue") is, and at all times mentioned herein

was, a California limited liability company licensed to do business in the State of California, with its principal place of business located in the State of California.

*Response:* Defendant admits the allegations in this paragraph.

14.    On information and belief, defendant DARIUS ASSEMI ("Darius Assemi" or "Darius") is, and at all times mentioned herein was, an individual residing in Fresno County, California.

*Response:* Defendant admits the allegations in this paragraph.

15.    On information and belief, defendant FARID ASSEMI ("Farid Assemi" or "Farid") is, and at all times mentioned herein was, an individual residing in Fresno County, California.

*Response:* Defendant admits that Farid Assemi previously resided in Fresno County, California, but he has resided in Monterey County over the past few years, so on that basis denies the allegation that he resided solely in Fresno County, California at all relevant times mentioned here.

16.    On information and belief, defendant FARSHID ASSEMI ("Farshid Assemi" or "Farshid") is, and at all times mentioned herein was, an individual residing in Fresno County, California.

*Response:* Defendant admits the allegations in this paragraph.

17.    On information and belief, defendant SONIA ASSEMI ("Sonia Assemi" or "Sonia") is, and at all times mentioned herein was, an individual residing in Fresno County, California.

*Response:* Defendant admits the allegations in this paragraph.

18.    Defendants Maricopa Orchards, 104 Investments, ACAP Farms, C & A Farms, Cantua Orchards, Copper Avenue, FFGT Farms, Gradon Farms, Grantor Real Estate, Lincoln Grantor Farms, Locans Investments, and Willow Avenue are collectively referred to herein as "Borrower Defendants" and individually as "Borrower Defendant."

*Response:* No response is required.

19.    Defendants Darius Assemi, Farid Assemi, Farshid Assemi, and Sonia Assemi are collectively referred to herein as the "Guarantor Defendants" and individually as "Guarantor Defendant."

**Response:** No response required.

## II.    JURISDICTION AND VENUE

20.    The United States District Court for the Eastern District of California (the "Court") has subject matter jurisdiction over this action under 28 U.S.C. § 1332 because (a) the action is civil in nature, (b) diversity of citizenship exists between Plaintiff and each Defendant, and (c) the amount in controversy exceeds $75,000, exclusive of interest and costs.

**Response:** Defendant lacks sufficient information to admit or deny the allegation that diversity of citizenship exists between Plaintiff and each Defendant, and accordingly that subject matter jurisdiction exists, and therefore denies the allegations. Defendant admits this action is civil in nature and that the amount in controversy exceeds $75,000, exclusive of interest and costs.

21.    Venue in the Eastern District of California is proper because one or more Defendants reside in this district, and all Defendants are residents of the State of California.  *See* 28 U.S.C. § 1391(b)(1).  Venue is also proper in this district because a substantial part of the events or omissions giving rise to the claims occurred in this district and because a substantial portion of the property at issue in this action is situated in this district.  *See id.* § 1391(b)(2).

**Response:** Defendant admits that venue in this District is proper.

## III.    GENERAL ALLEGATIONS

### A. Loans made to Borrower Defendants

22.    Beginning in July 2020, Conterra Agricultural Capital, LLC ("Conterra") began making a number of loans to Borrower Defendants (collectively, the "Loans," and individually, a "Loan"), with each Loan made to and to be repaid by two or more Borrower Defendants and guaranteed by at least three Guarantor

1   Defendants, as detailed below.  The Loans had been funded by American Equity,

2   and contemporaneously with the closing of each Loan, Conterra would transfer its

3   interest in the Loan to American Equity. Thereafter, Conterra would continue to

4   service the Loan as agent for American Equity.

5     ***Response:*** Other than as to Defendant's execution of certain guaranties for

6   certain loans, Defendant lacks sufficient information to admit or deny the allegations

7   in this paragraph and therefore denies them.

8        **1.  Loan #AG1021 and Loan AG#1024**

9     23. On or about July 23, 2020, Conterra, as lender, made a loan to

10   Maricopa Orchards and Willow Avenue, as borrowers, in the original principal

11   amount of $5,550,000, identified as Loan #AG1021 (the "1021 Loan").

12     ***Response:*** Defendant lacks sufficient information to admit or deny the

13   allegations in this paragraph and therefore denies them.

14     24. Maricopa Orchards and Willow Avenue's obligation to repay the 1021

15   Loan is memorialized in that certain promissory note titled *Note* and dated July 23,

16   2020 (the "1021 Note"), under which they promised to repay $5,550,000 in

17   principal, with interest (originally set at the nondefault rate of 3.75% per annum), to

18   Conterra.  The 1021 Note requires semiannual payments of principal and interest to

19   be made (the first in the amount of $94,400.66 plus all then accrued interest, and the

20   following nineteen in the amount of $198,463.16 each) and has a ten-year term,

21   maturing on July 23, 2030, at which time all remaining amounts owed thereunder

22   become due and payable.  A true and correct copy of the 1021 Note is attached

23   hereto as **Exhibit 1**.

24     ***Response:*** Defendant admits that Exhibit 1 to the Complaint purports to

25   be a copy of the 1021 Note. The 1021 Note speaks for itself, and Defendant

26   denies any allegations that are inconsistent with the 1021 Note. To the extent

27   this paragraph contains any additional factual allegations requiring a response

28   as distinct from a legal conclusion as to which no response is required,

MOJDEHI GALVIN
REGO LLP

ANSWER AND AFFIRMATIVE DEFENSES

1    Defendant is without information sufficient to admit or deny the remaining

2    allegations, and therefore denies them.

3          25.    The 1021 Note was originally secured by that certain *Deed of Trust[,]*

4    *Security Agreement, Assignment of Rents and Fixture Filing* dated July 23, 2020,

5    which was recorded in the official records of the Kern County Recorder on July 23,

6    2020, as Document No. 220096750 (the "1021-Kern Deed of Trust").

7          *Response:* The 1021-Kern Deed of Trust speaks for itself, and Defendant

8    denies any allegations that are inconsistent with the 1021-Kern Deed of Trust.

9          26.    On or about July 23, 2020, Conterra, as lender, also extended a

10   revolving line of credit loan to Maricopa Orchards and Willow Avenue, as

11   borrowers, with advances not to exceed $4,696,367, which loan is identified as Loan

12   #AG1024 (the "1024 Loan").  Funds in the amount of $1,310,840 were initially

13   advanced to Maricopa Orchards and Willow Avenue under the 1024 Loan, and on or

14   about July 1, 2021, additional funds in the amount of $303,957 were advanced to

15   Maricopa Orchards and Willow Avenue under the 1024 Loan.

16         *Response:* Defendant lacks sufficient information to admit or deny the

17   allegations in this paragraph and therefore denies them.

18         27.    Maricopa Orchards and Willow Avenue's obligation to repay the 1024

19   Loan was originally memorialized in that certain promissory note titled *Note* and

20   dated July 23, 2020 (the "1024 Note"), under which they promised to repay the

21   amount advanced on the 1024 Loan, with interest (at a variable rate), to Conterra.

22   The 1024 Note required semiannual interest-only payments to be made and has a

23   seven-year term, maturing on July 23, 2027, at which time all remaining amounts

24   owed thereunder become due and payable. A true and correct copy of the 1024 Note

25   is attached hereto as **Exhibit 2**.

26         *Response:* Defendant admits that Exhibit 2 to the Complaint purports to

27   be a copy of the 1024 Note. The 1024 Note speaks for itself, and Defendant

28   denies any allegations that are inconsistent with the 1024 Note. To the extent

1   this paragraph contains any additional factual allegations requiring a response

2   as distinct from a legal conclusion as to which no response is required,

3   Defendant is without information sufficient to admit or deny the remaining

4   allegations, and therefore denies them.

5       28.    The 1024 Note was originally secured by that certain *Open-End Deed*

6   *of Trust (with Future Advance Clause)[,] Security Agreement, Assignment of Rents*

7   *and Fixture Filing* dated July 23, 2020, which was recorded in the official records of

8   the Kern County Recorder on July 23, 2020, as Document No. 220096752 (the

9   "1024-Kern Deed of Trust").

10       ***Response:*** The 1024-Kern Deed of Trust speaks for itself, and Defendant

11   denies any allegations that are inconsistent with the 1024-Kern Deed of Trust.

12       29.    In addition, a UCC financing statement, corresponding to both the

13   1021-Kern Deed of Trust and 1024-Kern Deed of Trust (together, the "1021/1024-

14   Kern Deeds of Trust"), was also (a) filed with the California Secretary of State on

15   October 12, 2020, as File No. U200029038629 (the "Filed 1021/1024 UCC-1"), and

16   (b) recorded in the official records of the Kern County Recorder on October 23,

17   2020, as Document No. 220156769 (the "Recorded 1021/1024-Kern UCC-1"). The

18   Filed 1021/1024 UCC-1 was subsequently amended (to address the omission of an

19   exhibit) by a UCC financing statement amendment filed with the California

20   Secretary of State on April 7, 2021, as File No. U210036237933 (the "1st Filed

21   1021/1024 UCC-3"). True and correct copies of the Filed 1021/1024 UCC-1 and 1st

22   Filed 1021/1024 UCC-3 are attached hereto as **Exhibits 3 and 4**, respectively.

23       ***Response:*** Defendant admits that Exhibits 3 and 4 to the Complaint,

24   respectively, purport to be a copy of the Filed 1021/1024 UCC-1 and 1st Filed

25   1021/1024 UCC-3. The 1021/1024 Kern Deeds of Trust, Filed 1021/1024

26   UCC-1, Recorded 1021/1024-Kern UCC-1, and 1st Filed 1021/1024 UCC-3

27   speak for themselves, and Defendant denies any allegations that are

28   inconsistent therewith. To the extent this paragraph contains any additional

MOJDEHI GALVIN
REGO LLP

factual allegations requiring a response as distinct from a legal conclusion as to which no response is required, Defendant is without information sufficient to admit or deny the remaining allegations, and therefore denies them.

30.    Under each of the 1021/1024-Kern Deed of Trust, Willow Avenue originally granted Conterra a security interest in certain real property (generally described as approximately 473 acres located in Kern County, California); all buildings, improvements, equipment, fixtures, and permanent plantings affixed to, attached to, or incorporated in the real property (including all rents, issues, profits, income, and proceeds therefrom); all water rights appurtenant to the real property; and other property as described in the 1021/1024-Kern Deeds of Trust (collectively, the "Original 1021/1024 Collateral"). Specifically excluded from the Original 1021/1024 Collateral, as set forth in the 1021/1024-Kern Deeds of Trust, are any "growing crop" and any "rolling stock" affixed or attached to the real property, as well as any "crop receivables." The 1021/1024-Kern Deeds of Trust also include an assignment-of-rents provision, under which Willow Avenue absolutely and unconditionally assigns all rents and revenues of the Original 1021/1024 Collateral to Conterra.

**Response:** The 1021/1024-Kern Deeds of Trust speaks for themselves, and Defendant denies any allegations that are inconsistent with the 1021/1024-Kern Deeds of Trust.

31.    In connection with the 1021 Note and related loan documents and to induce Conterra to fund the 1021 Loan, Darius, Farid, and Farshid Assemi, as guarantors, each executed and delivered to Conterra, as lender, a written personal guaranty (the "1021 Darius Guaranty," "1021 Farid Guaranty," and "1021 Farshid Guaranty," respectively), each of which was similarly titled *Guaranty* and under which the three guaranteed the payment in full of any and all indebtedness owed by Maricopa Orchards and Willow Avenue to Conterra (or any assignee or transferee of Conterra's interest in such indebtedness). True and correct copies of the 1021

Darius Guaranty, 1021 Farid Guaranty, and 1021 Farshid Guaranty are attached hereto as **Exhibits 5, 6, and 7**, respectively.

*Response:* Defendant admits that he executed the Guaranty attached as Exhibit 5 to the Complaint. Defendant admits that Exhibits 6 and 7 to the Complaint purport to be copies of the 1021 Farid Guaranty and 1021 Farshid Guaranty, respectively. The 1021 Darius Guaranty, 1021 Farid Guaranty, and 1021 Farshid Guaranty speak for themselves and Defendant denies any allegations that are inconsistent therewith. To the extent the remaining allegations call for a legal conclusion, a response is not required, and to the extent a response is required, Defendant is without information sufficient to admit or deny the remaining allegations, and therefore denies them.

32.    Likewise, in connection with the 1024 Note and related loan documents and to induce Conterra to fund the 1024 Loan, Darius, Farid, and Farshid Assemi, as guarantors, each executed and delivered to Conterra, as lender, a written personal guaranty (the "1024 Darius Guaranty," "1024 Farid Guaranty," and "1024 Farshid Guaranty," respectively), each of which was similarly titled *Guaranty* and under which the three guaranteed the payment in full of any and all indebtedness owed by Maricopa Orchards and Willow Avenue to Conterra (or any assignee or transferee of Conterra's interest in such indebtedness). True and correct copies of the 1024 Darius Guaranty, 1024 Farid Guaranty, and 1024 Farshid Guaranty are attached hereto as **Exhibits 8, 9, and 10**, respectively.

*Response:* Defendant admits that he executed the Guaranty attached as Exhibit 8 to the Complaint. Defendant admits that Exhibits 9 and 10 to the Complaint purport to be copies of the 1024 Farid Guaranty and 1024 Farshid Guaranty, respectively. The 1024 Darius Guaranty, 1024 Farid Guaranty, and 1024 Farshid Guaranty speak for themselves and Defendant denies any allegations that are inconsistent therewith. To the extent the remaining allegations call for a legal conclusion, a response is not required, and to the extent a response is required,

1    Defendant is without information sufficient to admit or deny the remaining

2    allegations, and therefore denies them.

3        33.    Conterra assigned to American Equity all of its interests relating the

4    1021 Loan, including in the 1021 Note and 1021-Kern Deed of Trust, as evidenced

5    by, among other things, (a) that certain *Allonge to Promissory Note* relating to the

6    1021 Note (the "1021 Allonge") and (b) that certain *Assignment of Deed of Trust*,

7    which was recorded in the official records of the Kern County Recorder on July 23,

8    2020, as Document No. 220096751 (the "1021-Kern DOT Assignment").

9    Nevertheless, Conterra continues to act as American Equity's agent and loan

10   servicer for the 1021 Loan.  A true and correct copy of the 1021 Allonge is attached

11   hereto as **Exhibit 11**.

12       ***Response:*** Defendant admits that Exhibit 11 purports to be a copy of the

13   1021 Allonge. The 1021 Allonge and the 1021-Kern DOT Assignment speak

14   for themselves and Defendant denies any allegations that are inconsistent with

15   therewith. To the extent this paragraph contains any additional factual

16   allegations requiring a response as distinct from a legal conclusion as to which

17   no response is required, Defendant is without information sufficient to admit or

18   deny the remaining allegations, and therefore denies them.

19       34.    Conterra also assigned to American Equity all of its interests relating to

20   the 1024 Loan, including in the 1024 Note and 1024-Kern Deed of Trust, as

21   evidenced by, among other things, (a) that certain *Allonge to Promissory Note*

22   relating to the 1024 Note (the "1024 Allonge"), and (b) that certain *Assignment of*

23   *Deed of Trust*, which was recorded in the official records of the Kern County

24   Recorder on July 23, 2020, as Document No. 220096753 (the "1024-Kern DOT

25   Assignment").  Nevertheless, Conterra continues to act as American Equity's agent

26   and loan servicer for the 1024 Loan.  A true and correct copy of the 1024 Allonge is

27   attached hereto as **Exhibit 12**.

28

MOJDEHI GALVIN
REGO LLP

*Response:* Defendant admits that Exhibit 12 purports to be a copy of the 1024 Allonge. The 1024 Allonge and the 1024-Kern DOT Assignment speak for themselves and Defendant denies any allegations that are inconsistent with therewith. To the extent this paragraph contains any additional factual allegations requiring a response as distinct from a legal conclusion as to which no response is required, Defendant is without information sufficient to admit or deny the remaining allegations, and therefore denies them.

35.    On or about December 16, 2021, American Equity, on the one hand, and Maricopa Orchards and Willow Avenue, on the other hand, entered into that certain *Collateral Substitution Agreement* dated December 16, 2021 (the "1021/1024 Collateral Substitution Agreement"), under which Maricopa Orchards and Willow Avenue agreed to substitute the Original 1021/1024 Collateral with other collateral in connection with the 1021 Loan and 1024 Loan.  A true and correct copy of the 1021/1024 Collateral Substitution Agreement is attached hereto as **Exhibit 13**.

*Response:* Defendant admits that Exhibit 13 purports to be a copy of the 1021/1024 Collateral Substitution Agreement. The 1021/1024 Collateral Substitution Agreement speaks for itself and Defendant denies any allegations that are inconsistent with therewith. To the extent this paragraph contains any additional factual allegations requiring a response as distinct from a legal conclusion as to which no response is required, Defendant is without information sufficient to admit or deny the remaining allegations, and therefore denies them.

36.    On or about December 16, 2021, Maricopa Orchards and Willow Avenue also exercised an option to convert the 1024 Loan, which was, at that time, a revolving line of credit loan, into a term loan to repay the amount of funds advanced to date under the 1024 Loan.  Accordingly, on or about December 16, 2021, American Equity, on the one hand, and Maricopa Orchards and Willow

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Avenue, on the other hand, entered into that certain *Agreement to Convert and Amended and Restated Note* dated December 16, 2021 (the "1024 Amended Note"), under which the terms of the 1024 Note were amended and Maricopa Orchards and Willow Avenue were now promising to repay $1,614,797 in principal, with interest (originally set at the nondefault rate of 3.75% per annum), to American Equity.  The 1024 Amended Note requires semiannual payments of principal and interest to be made (the first in the amount of all then accrued interest, and the following seventeen in the amount of $59,796.99 each) and matures on July 23, 2030, at which time all remaining amounts owed thereunder become due and payable.  A true and correct copy of the 1024 Amended Note is attached hereto as **Exhibit 14**.

**Response:** Defendant admits that Exhibit 14 purports to be a copy of the 1024 Amended Note. The 1024 Amended Note speaks for itself and Defendant denies any allegations that are inconsistent with therewith. To the extent this paragraph contains any additional factual allegations requiring a response as distinct from a legal conclusion as to which no response is required, Defendant is without information sufficient to admit or deny the remaining allegations, and therefore denies them.

37.    In accordance with the 1021/1024 Collateral Substitution Agreement, the 1021 Note became secured by that certain *Deed of Trust[,] Security Agreement, Assignment of Rents and Fixture Filing* dated December 16, 2021, which was recorded in the official records of the Fresno County Recorder on December 17, 2021, as Document No. 2021-0206984 (the "1021-Fresno Deed of Trust").  A true and correct copy of the 1021-Fresno Deed of Trust is attached hereto as **Exhibit 15**.

**Response:** Defendant admits that Exhibit 15 purports to be a copy of the 1021-Fresno Deed of Trust. The 1021-Fresno Deed of Trust speaks for itself and Defendant denies any allegations that are inconsistent with therewith.

MOJDEHI GALVIN
REGO LLP

38.     In accordance with the 1021/1024 Collateral Substitution Agreement, the 1024 Amended Note became secured by that certain *Deed of Trust[,] Security Agreement, Assignment of Rents and Fixture Filing* dated December 16, 2021, which was recorded in the official records of the Fresno County Recorder on December 17, 2021, as Document No. 2021-0206985 (the "1024-Fresno Deed of Trust"). A true and correct copy of the 1024-Fresno Deed of Trust is attached hereto as **Exhibit 16**.

*Response:* Defendant admits that Exhibit 16 purports to be a copy of the 1024-Fresno Deed of Trust. The 1024-Fresno Deed of Trust speaks for itself and Defendant denies any allegations that are inconsistent with therewith.

39.     In addition, (a) a UCC financing statement, corresponding to both the 1021-Fresno Deed of Trust and 1024-Fresno Deed of Trust (together, the "1021/1024-Fresno Deeds of Trust"), was recorded in the official records of the Fresno County Recorder on December 17, 2021, as Document No. 2021-0206986 (the "Recorded 1021/1024-Fresno UCC-1"), and (b) two UCC financing statement amendments, further amending the Filed 1021/1024 UCC-1 and corresponding to the 1021/1024-Fresno Deeds of Trust, were filed with the California Secretary of State on December 19, 2021, as File No. U210111410316 (the "2nd Filed 1021/1024 UCC-3") and File No. U210111411217 (the "3rd Filed 1021/1024 UCC-3"). True and correct copies of the Recorded 1021/1024-Fresno UCC-1, 2nd Filed 1021/1024 UCC-3, and 3rd Filed 1021/1024 UCC-3 are attached hereto as **Exhibits 17, 18, and 19**, respectively.

*Response:* Defendant admits that Exhibits 17, 18, and 19 to the Complaint, respectively, purport to be a copy of the Recorded 1021/1024-Fresno UCC-1, 2nd Filed 1021/1024 UCC-3, and 3rd Filed 1021/1024 UCC-3. The 1021/1024 Fresno Deeds of Trust, Recorded 1021/1024-Fresno UCC-1, 2nd Filed 1021/1024 UCC-3, and 3rd Filed 1021/1024 UCC-3 speak for themselves, and Defendant denies any allegations that are inconsistent therewith.

40.     Under each of the 1021/1024-Fresno Deeds of Trust, Willow Avenue originally granted American Equity a security interest in certain real property (generally described as approximately 1,614.18 acres located in Fresno County, California); all buildings, improvements, equipment, fixtures, and permanent plantings affixed to, attached to, or incorporated in the real property (including all rents, issues, profits, income, and proceeds therefrom); all water rights appurtenant to the real property; and other property as described in the 1021/1024-Fresno Deeds of Trust (collectively, the "1021/1024 Collateral").  Specifically excluded from the 1021/1024 Collateral, as set forth in the 1021/1024-Fresno Deeds of Trust, are any "growing crop" and any "rolling stock" affixed or attached to the real property, as well as any "crop receivables."  The 1021/1024-Fresno Deeds of Trust also include an assignment-of-rents provision, under which Willow Avenue absolutely and unconditionally assigns all rents and revenues of the 1021/1024 Collateral to Conterra.

**Response:** The 1021/1024-Fresno Deeds of Trust speaks for themselves, and Defendant denies any allegations that are inconsistent with the 1021/1024-Fresno Deeds of Trust.

41.     By (a) that certain *Substitution of Trustee and Partial Conveyance* recorded in the official records of the Fresno County Recorder on June 9, 2023, as Document No. 2023-0053791 (the "1021-Fresno Partial Reconveyance"), (b) that certain *Substitution of Trustee and Partial Conveyance* recorded in the official records of the Fresno County Recorder on June 9, 2023, as Document No. 2023-0053792 (the "1024-Fresno Partial Reconveyance"), (c) a UCC financing statement amendment recorded in the official records of the Fresno County Recorder on June 9, 2023, as Document No. 2023-0053793 (the "Recorded 1021/1024-Fresno  UCC-3"), and (d) a UCC financing statement amendment filed with the California Secretary of State on December 9, 2023, as File No. U230040617926 (the "4th Filed 1021/1024 UCC-3"), American Equity subsequently released its liens against certain

property constituting a part of the 1021/1024 Collateral that was subject to the 1021/1024-Fresno Deeds of Trust (including certain land located in Fresno County, California, and identified by APN: 027-171-82-S) (the "Reconveyed 1021/1024 Former Collateral"), while retaining its liens against all other property and collateral described in the 1021/1024-Fresno Deeds of Trust (the "Remaining 1021/1024 Collateral").  True and correct copies of the 1021-Fresno Partial Reconveyance, 1024-Fresno Partial Reconveyance, Recorded 1021/1024-Fresno UCC-3, and 4th Filed 1021/1024 UCC-3 are attached hereto as **Exhibits 20, 21, 22, and 23**, respectively.

*Response:* Defendant admits that Exhibits 20, 21, 22 and 123 to the Complaint, respectively, purport to be a copy of the 1021-Fresno Partial Reconveyance, 1024-Fresno Partial Reconveyance, Recorded 1021/1024-Fresno UCC-3, and 4th Filed 1021/1024 UCC-3. The 1021-Fresno Partial Reconveyance, 1024-Fresno Partial Reconveyance, Recorded 1021/1024-Fresno UCC-3, and 4th Filed 1021/1024 UCC-3 speak for themselves, and Defendant denies any allegations that are inconsistent therewith.

### 2.  Loan #AG1022

42.    On or about July 23, 2020, Conterra, as lender, made a loan to Maricopa Orchards and Lincoln Grantor Farms, as borrowers, in the original principal amount of $288,000, identified as Loan #AG1022 (the "1022 Loan").

*Response:* Defendant lacks sufficient information to admit or deny the allegations in this paragraph and therefore denies them.

43.    Maricopa Orchards and Lincoln Grantor Farms' obligation to repay the 1022 Loan is memorialized in that certain promissory note titled *Note* and dated July 23, 2020 (the "1022 Note"), under which they promised to repay $288,000 in principal, with interest (originally set at the nondefault rate of 3.75% per annum), to Conterra.  The 1022 Note requires semiannual payments of principal and interest to be made (the first in the amount of $4,898.63 plus all then accrued interest, and the

following nineteen in the amount of $10,298.63 each) and has a ten-year term, maturing on July 23, 2030, at which time all remaining amounts owed thereunder become due and payable. A true and correct copy of the 1022 Note is attached hereto as **Exhibit 24**.

*Response:* Defendant admits that Exhibit 24 to the Complaint purports to be a copy of the 1022 Note. The 1022 Note speaks for itself, and Defendant denies any allegations that are inconsistent with the 1022 Note. To the extent this paragraph contains any additional factual allegations requiring a response as distinct from a legal conclusion as to which no response is required, Defendant is without information sufficient to admit or deny the remaining allegations, and therefore denies them.

44.    The 1022 Note is secured by that certain *Deed of Trust[,] Security Agreement, Assignment of Rents and Fixture Filing* dated July 23, 2020, which was recorded in the official records of the Kern County Recorder on July 23, 2020, as Document No. 220096754 (the "1022 Deed of Trust"). A corresponding UCC financing statement was also (a) filed with the California Secretary of State on October 12, 2020, as File No. U200024956631 (the "Filed 1022 UCC-1"), and (b) recorded in the official records of the Kern County Recorder on October 13, 2020, as Document No. 220148455 (the "Recorded 1022 UCC-1"). True and correct copies of the 1022 Deed of Trust, Filed 1022 UCC-1, and Recorded 1022 UCC-1 are attached hereto as **Exhibits 25, 26, and 27**, respectively.

*Response:* Defendant admits that Exhibits 25, 26 and 27 to the Complaint, respectively, purport to be a copy of the 1022 Deed of Trust, Filed 1022 UCC-1, and Recorded 1022 UCC-1. The 1022 Deed of Trust, Filed 1022 UCC-1, and Recorded 1022 UCC-1 speak for themselves, and Defendant denies any allegations that are inconsistent therewith.

45.    Under the 1022 Deed of Trust, Lincoln Grantor Farms originally granted Conterra a security interest in certain real property (generally described as approximately 20 acres located in Kern County, California); all buildings,

improvements, equipment, fixtures, and permanent plantings affixed to, attached to, or incorporated in the real property (including all rents, issues, profits, income, and proceeds therefrom); all water rights appurtenant to the real property; and other property as described in the 1022 Deed of Trust (collectively, the "1022 Collateral"). Specifically excluded from the 1022 Collateral, as set forth in the 1022 Deed of Trust, are any "growing crop" and any "rolling stock" affixed or attached to the real property, as well as any "crop receivables." The 1022 Deed of Trust also includes an assignment-of-rents provision, under which Lincoln Grantor Farms absolutely and unconditionally assigns all rents and revenues of the 1022 Collateral to Conterra.

*Response:* The 1022 Deed of Trust speaks for itself, and Defendant denies any allegations that are inconsistent with the 1022 Deed of Trust.

46.     In connection with the 1022 Note and related loan documents and to induce Conterra to fund the 1022 Loan, Darius, Farid, and Farshid Assemi, as guarantors, each executed and delivered to Conterra, as lender, a written personal guaranty (the "1022 Darius Guaranty," "1022 Farid Guaranty," and "1022 Farshid Guaranty," respectively), each of which was similarly titled *Guaranty* and under which the three guaranteed the payment in full of any and all indebtedness owed by Maricopa Orchards and Lincoln Grantor Farms to Conterra (or any assignee or transferee of Conterra's interest in such indebtedness). True and correct copies of the 1022 Darius Guaranty, 1022 Farid Guaranty, and 1022 Farshid Guaranty are attached hereto as **Exhibits 28, 29, and 30**, respectively.

*Response:* Defendant admits that he executed the Guaranty attached as Exhibit 28 to the Complaint. Defendant admits that Exhibits 29 and 30 to the Complaint purport to be copies of the 1022 Farid Guaranty and 1022 Farshid Guaranty, respectively. The 1022 Darius Guaranty, 1022 Farid Guaranty, and 1022 Farshid Guaranty speak for themselves and Defendant denies any allegations that are inconsistent therewith. To the extent the remaining allegations call for a legal

conclusion, a response is not required, and to the extent a response is required, Defendant is without information sufficient to admit or deny the remaining allegations, and therefore denies them.

47.    Conterra assigned to American Equity all of its interests relating to the 1022 Loan, including in the 1022 Note and 1022 Deed of Trust, as evidenced by, among other things, (a) that certain *Allonge to Promissory Note* relating to the 1022 Note (the "1022 Allonge") and (b) that certain *Assignment of Deed of Trust*, which was recorded in the official records of the Kern County Recorder on July 23, 2020, as Document No. 220096755 (the "1022 DOT Assignment").  Nevertheless, Conterra continues to act as American Equity's agent and loan servicer for the 1022 Loan.  True and correct copies of the 1022 Allonge and 1022 DOT Assignment are attached hereto as **Exhibits 31 and 32**, respectively.

*Response:* Defendant admits that Exhibit 31 purports to be a copy of the 1022 Allonge and Exhibit 32 purports to be a copy of the 1022 DOT Assignment. The 1022 Allonge and the 1022 DOT Assignment speak for themselves and Defendant denies any allegations that are inconsistent with therewith. To the extent this paragraph contains any additional factual allegations requiring a response as distinct from a legal conclusion as to which no response is required, Defendant is without information sufficient to admit or deny the remaining allegations, and therefore denies them.

### 3.  Loan AG#1023

48.    On or about July 23, 2020, Conterra, as lender, made a loan to Maricopa Orchards and Grantor Real Estate, as borrowers, in the original principal amount of $3,312,000, identified as Loan #AG1023 (the "1023 Loan").

*Response:* Defendant lacks sufficient information to admit or deny the allegations in this paragraph and therefore denies them.

49.    Maricopa Orchards and Grantor Real Estate's obligation to repay the 1023 Loan is memorialized in that certain promissory note titled *Note* and dated July

ANSWER AND AFFIRMATIVE DEFENSES

MOJDEHI GALVIN
REGO LLP

23, 2020 (the "1023 Note"), under which they promised to repay $3,312,000 in principal, with interest (originally set at the nondefault rate of 3.75% per annum), to Conterra. The 1023 Note requires semiannual payments of principal and interest to be made (the first in the amount of $56,334.23 plus all then accrued interest, and the following nineteen in the amount of $118,434.23 each) and has a ten-year term, maturing on July 23, 2030, at which time all remaining amounts owed thereunder become due and payable. A true and correct copy of the 1023 Note is attached hereto as **Exhibit 33**.

*Response:* Defendant admits that Exhibit 33 to the Complaint purports to be a copy of the 1023 Note. The 1023 Note speaks for itself, and Defendant denies any allegations that are inconsistent with the 1023 Note. To the extent this paragraph contains any additional factual allegations requiring a response as distinct from a legal conclusion as to which no response is required, Defendant is without information sufficient to admit or deny the remaining allegations, and therefore denies them.

50.    The 1023 Note is secured by that certain *Deed of Trust[,] Security Agreement, Assignment of Rents and Fixture Filing* dated July 23, 2020, which was recorded in the official records of the Kern County Recorder on July 23, 2020, as Document No. 220096746 (the "1023 Deed of Trust"). A corresponding UCC financing statement was also (a) filed with the California Secretary of State on October 12, 2020, as File No. U200025028422 (the "Filed 1023 UCC-1"), and (b) recorded in the official records of the Kern County Recorder on October 23, 2020, as Document No. 220156768 (the "Recorded 1023 UCC-1"). True and correct copies of the 1023 Deed of Trust, Filed 1023 UCC-1, and Recorded 1023 UCC-1 are attached hereto as **Exhibits 34, 35, and 36**, respectively.

*Response:* Defendant admits that Exhibits 34, 35 and 36 to the Complaint, respectively, purport to be a copy of the 1023 Deed of Trust, Filed 1023 UCC-1, and Recorded 1023 UCC-1. The 1023 Deed of Trust, Filed 1023 UCC-1, and Recorded

1023 UCC-1 speak for themselves, and Defendant denies any allegations that are inconsistent therewith.

51. Under the 1023 Deed of Trust, Grantor Real Estate originally granted Conterra a security interest in certain real property (generally described as approximately 273 acres located in Kern County, California); all buildings, improvements, equipment, fixtures, and permanent plantings affixed to, attached to, or incorporated in the real property (including all rents, issues, profits, income, and proceeds therefrom); all water rights appurtenant to the real property; and other property as described in the 1023 Deed of Trust (collectively, the "1023 Collateral"). Specifically excluded from the 1023 Collateral, as set forth in the 1022 Deed of Trust, are any "growing crop" and any "rolling stock" affixed or attached to the real property, as well as any "crop receivables." The 1023 Deed of Trust also includes an assignment-of-rents provision, under which Grantor Real Estate absolutely and unconditionally assigns all rents and revenues of the 1023 Collateral to Conterra.

**Response:** The 1023 Deed of Trust speaks for itself, and Defendant denies any allegations that are inconsistent with the 1023 Deed of Trust.

52. In connection with the 1023 Note and related loan documents and to induce Conterra to fund the 1023 Loan, Darius, Farid, and Farshid Assemi, as guarantors, each executed and delivered to Conterra, as lender, a written personal guaranty (the "1023 Darius Guaranty," "1023 Farid Guaranty," and "1023 Farshid Guaranty," respectively), each of which was similarly titled *Guaranty* and under which the three guaranteed the payment in full of any and all indebtedness owed by Maricopa Orchards and Grantor Real Estate to Conterra (or any assignee or transferee of Conterra's interest in such indebtedness). True and correct copies of the 1023 Darius Guaranty, 1023 Farid Guaranty, and 1023 Farshid Guaranty are attached hereto as **Exhibits 37, 38, and 39**, respectively.

*Response:* Defendant admits that he executed the Guaranty attached as Exhibit 37 to the Complaint. Defendant admits that Exhibits 38 and 39 to the Complaint purport to be copies of the 1023 Farid Guaranty and 1023 Farshid Guaranty, respectively. The 1023 Darius Guaranty, 1023 Farid Guaranty, and 1023 Farshid Guaranty speak for themselves and Defendant denies any allegations that are inconsistent therewith. To the extent the remaining allegations call for a legal conclusion, a response is not required, and to the extent a response is required, Defendant is without information sufficient to admit or deny the remaining allegations, and therefore denies them.

53.     Conterra assigned to American Equity all of its interests relating to the 1023 Loan, including in the 1023 Note and 1023 Deed of Trust, as evidenced by, among other things, (a) that certain *Allonge to Promissory Note* relating to the 1023 Note (the "1023 Allonge") and (b) that certain *Assignment of Deed of Trust*, which was recorded in the official records of the Kern County Recorder on July 23, 2020, as Document No. 220096747 (the "1023 DOT Assignment"). Nevertheless, Conterra continues to act as American Equity's agent and loan servicer for the 1023 Loan. True and correct copies of the 1023 Allonge and 1023 DOT Assignment are attached hereto as **Exhibits 40 and 41**, respectively.

*Response:* Defendant admits that Exhibit 40 purports to be a copy of the 1023 Allonge and Exhibit 41 purports to be a copy of the 1023 DOT Assignment. The 1023 Allonge and the 1023 DOT Assignment speak for themselves and Defendant denies any allegations that are inconsistent with therewith. To the extent this paragraph contains any additional factual allegations requiring a response as distinct from a legal conclusion as to which no response is required, Defendant is without information sufficient to admit or deny the remaining allegations, and therefore denies them.

MOJDEHI GALVIN
REGO LLP

### 4. Loan #AG1069

54.    On or about October 15, 2021, Conterra, as lender, made a loan to Maricopa Orchards and Gradon Farms, as borrowers, in the original principal amount of $3,852,300, identified as Loan #AG1069 (the "<u>1069 Loan</u>").

***Response:*** Defendant lacks sufficient information to admit or deny the allegations in this paragraph and therefore denies them.

55.    Maricopa Orchards and Gradon Farms' obligation to repay the 1069 Loan is memorialized in that certain promissory note titled *Note* and dated October 15, 2021 (the "<u>1069 Note</u>"), under which they promised to repay $3,852,300 in principal, with interest (originally set at the nondefault rate of 3.5% per annum), to Conterra.  The 1069 Note requires semiannual payments of principal and interest to be made (the first in the amount of $67,307.74 plus all then accrued interest, and the following nineteen in the amount of $134,722.99 each) and has a ten-year term, maturing on October 15, 2031, at which time all remaining amounts owed thereunder become due and payable.  A true and correct copy of the 1069 Note is attached hereto as **<u>Exhibit 42</u>**.

***Response:*** Defendant admits that Exhibit 42 to the Complaint purports to be a copy of the 1069 Note. The 1069 Note speaks for itself, and Defendant denies any allegations that are inconsistent with the 1069 Note. To the extent this paragraph contains any additional factual allegations requiring a response as distinct from a legal conclusion as to which no response is required, Defendant is without information sufficient to admit or deny the remaining allegations, and therefore denies them.

56.    The 1069 Note is secured by that certain *Deed of Trust[,] Security Agreement, Assignment of Rents and Fixture Filing* dated October 15, 2021, which was recorded in the official records of the Fresno County Recorder on October 15, 2021, as Document No. 2021-0172474 (the "<u>1069 Deed of Trust</u>").  A corresponding UCC financing statement was also filed with the California Secretary

of State on October 20, 2021, as File No. U210094921531 (the "<u>Filed 1069 UCC-1</u>"). True and correct copies of the 1069 Deed of Trust and Filed 1069 UCC-1 are attached hereto as **<u>Exhibits 43 and 44</u>**, respectively.

*Response:* Defendant admits that Exhibits 43 and 44 to the Complaint, respectively, purport to be a copy of the 1069 Deed of Trust and Filed 1069 UCC-1. The 1069 Deed of Trust and Filed 1069 UCC-1 speak for themselves, and Defendant denies any allegations that are inconsistent therewith.

57.    Under the 1069 Deed of Trust, Gradon Farms originally granted Conterra a security interest in certain real property (generally described as approximately 642 acres located in Fresno County, California); all buildings, improvements, equipment, fixtures, and permanent plantings affixed to, attached to, or incorporated in the real property (including all rents, issues, profits, income, and proceeds therefrom); all water rights appurtenant to the real property; and other property as described in the 1069 Deed of Trust (collectively, the "<u>1069 Collateral</u>"). Specifically excluded from the 1069 Collateral, as set forth in the 1069 Deed of Trust, are any "growing crop" and any "rolling stock" affixed or attached to the real property, as well as any "crop receivables." The 1069 Deed of Trust also includes an assignment-of-rents provision, under which Gradon Farms absolutely and unconditionally assigns all rents and revenues of the 1069 Collateral to Conterra.

*Response:* The 1069 Deed of Trust speaks for itself, and Defendant denies any allegations that are inconsistent with the 1069 Deed of Trust.

58.    In connection with the 1069 Note and related loan documents and to induce Conterra to fund the 1069 Loan, Darius, Farid, and Farshid Assemi, as guarantors, each executed and delivered to Conterra, as lender, a written personal guaranty (the "<u>1069 Darius Guaranty</u>," "<u>1069 Farid Guaranty</u>," and "<u>1069 Farshid Guaranty</u>," respectively), each of which was similarly titled *Guaranty* and under which the three guaranteed the payment in full of any and all indebtedness owed by

Maricopa Orchards and Gradon Farms to Conterra (or any assignee or transferee of Conterra's interest in such indebtedness). True and correct copies of the 1069 Darius Guaranty, 1069 Farid Guaranty, and 1069 Farshid Guaranty are attached hereto as **<u>Exhibits 45, 46, and 47</u>**, respectively.

**_Response:_** Defendant admits that he executed the Guaranty attached as Exhibit 45 to the Complaint. Defendant admits that Exhibits 46 and 47 to the Complaint purport to be copies of the 1069 Farid Guaranty and 1069 Farshid Guaranty, respectively. The 1069 Darius Guaranty, 1069 Farid Guaranty, and 1069 Farshid Guaranty speak for themselves and Defendant denies any allegations that are inconsistent therewith. To the extent the remaining allegations call for a legal conclusion, a response is not required, and to the extent a response is required, Defendant is without information sufficient to admit or deny the remaining allegations, and therefore denies them.

59.    Conterra assigned to American Equity all of its interests relating to the 1069 Loan, including in the 1069 Note and 1069 Deed of Trust, as evidenced by, among other things, (a) that certain _Allonge to Promissory Note_ relating to the 1069 Note (the "<u>1069 Allonge</u>") and (b) that certain _Assignment of Deed of Trust_, which was recorded in the official records of the Fresno County Recorder on October 15, 2021, as Document No. 2021-0172475 (the "<u>1069 DOT Assignment</u>"). Nevertheless, Conterra continues to act as American Equity's agent and loan servicer for the 1069 Loan. True and correct copies of the 1069 Allonge and 1069 DOT Assignment are attached hereto as **<u>Exhibits 48 and 49</u>**, respectively.

**_Response:_** Defendant admits that Exhibit 48 purports to be a copy of the 1069 Allonge and Exhibit 49 purports to be a copy of the 1069 DOT Assignment. The 1069 Allonge and the 1069 DOT Assignment speak for themselves and Defendant denies any allegations that are inconsistent with therewith. To the extent this paragraph contains any additional factual allegations requiring a response as distinct from a legal conclusion as to which no response is required, Defendant is without

MOJDEHI GALVIN
REGO LLP

ANSWER AND AFFIRMATIVE DEFENSES

information sufficient to admit or deny the remaining allegations, and therefore denies them.

### 5. Loan #AG1078

60.     On or about December 10, 2021, Conterra, as lender, made a loan to Maricopa Orchards and Lincoln Grantor Farms, as borrowers, in the original principal amount of $3,530,910, identified as Loan #AG1078 (the "1078 Loan").

**Response:** Defendant lacks sufficient information to admit or deny the allegations in this paragraph and therefore denies them.

61.     Maricopa Orchards and Lincoln Grantor Farms' obligation to repay the 1078 Loan is memorialized in that certain promissory note titled *Note* and dated December 10, 2021 (the "1078 Note"), under which they promised to repay $3,530,910 in principal, with interest (originally set at the nondefault rate of 3.5% per annum), to Conterra.  The 1078 Note requires semiannual payments of principal and interest to be made (the first in the amount of $61,692.39 plus all then accrued interest, and the following eighteen in the amount of $123,483.31 each) and has a ten-year term, maturing on December 10, 2031, at which time all remaining amounts owed thereunder become due and payable.  A true and correct copy of the 1078 Note is attached hereto as **Exhibit 50**.

**Response:** Defendant admits that Exhibit 50 to the Complaint purports to be a copy of the 1078 Note. The 1078 Note speaks for itself, and Defendant denies any allegations that are inconsistent with the 1078 Note. To the extent this paragraph contains any additional factual allegations requiring a response as distinct from a legal conclusion as to which no response is required, Defendant is without information sufficient to admit or deny the remaining allegations, and therefore denies them.

62.     The 1078 Note is secured by that certain *Deed of Trust[,] Security Agreement, Assignment of Rents and Fixture Filing* dated December 10, 2021, which was recorded in the official records of the Fresno County Recorder on

December 10, 2021, as Document No. 2021-0202493 (the "1078 Deed of Trust"). A corresponding UCC financing statement was also filed with the California Secretary of State on December 14, 2021, as File No. U210110126717 (the "Filed 1078 UCC-1"). True and correct copies of the 1078 Deed of Trust and Filed 1078 UCC-1 are attached hereto as **Exhibits 51 and 52**, respectively.

**Response:** Defendant admits that Exhibits 51 and 52 to the Complaint, respectively, purport to be a copy of the 1078 Deed of Trust and Filed 1078 UCC-1. The 1078 Deed of Trust and Filed 1078 UCC-1 speak for themselves, and Defendant denies any allegations that are inconsistent therewith.

63.   Under the 1078 Deed of Trust, Lincoln Grantor Farms originally granted Conterra a security interest in certain real property (generally described as approximately 527 acres located in Fresno County, California); all buildings, improvements, equipment, fixtures, and permanent plantings affixed to, attached to, or incorporated in the real property (including all rents, issues, profits, income, and proceeds therefrom); all water rights appurtenant to the real property; and other property as described in the 1078 Deed of Trust (collectively, the "1078 Collateral"). Specifically excluded from the 1078 Collateral, as set forth in the 1078 Deed of Trust, are any "growing crop" and any "rolling stock" affixed or attached to the real property, as well as any "crop receivables." The 1078 Deed of Trust also includes an assignment-of-rents provision, under which Lincoln Grantor Farms absolutely and unconditionally assigns all rents and revenues of the 1078 Collateral to Conterra.

**Response:** The 1078 Deed of Trust speaks for itself, and Defendant denies any allegations that are inconsistent with the 1078 Deed of Trust.

64.   In connection with the 1078 Note and related loan documents and to induce Conterra to fund the 1078 Loan, Darius, Farid, and Farshid Assemi, as guarantors, each executed and delivered to Conterra, as lender, a written personal guaranty (the "1078 Darius Guaranty," "1078 Farid Guaranty," and "1078 Farshid

Guaranty," respectively), each of which was similarly titled *Guaranty* and under which the three guaranteed the payment in full of any and all indebtedness owed by Maricopa Orchards and Lincoln Grantor Farms to Conterra (or any assignee or transferee of Conterra's interest in such indebtedness). True and correct copies of the 1078 Darius Guaranty, 1078 Farid Guaranty, and 1078 Farshid Guaranty are attached hereto as **Exhibits 53, 54, and 55**, respectively.

    *Response:* Defendant admits that he executed the Guaranty attached as Exhibit 53 to the Complaint. Defendant admits that Exhibits 54 and 55 to the Complaint purport to be copies of the 1078 Farid Guaranty and 1078 Farshid Guaranty, respectively. The 1078 Darius Guaranty, 1078 Farid Guaranty, and 1078 Farshid Guaranty speak for themselves and Defendant denies any allegations that are inconsistent therewith. To the extent the remaining allegations call for a legal conclusion, a response is not required, and to the extent a response is required, Defendant is without information sufficient to admit or deny the remaining allegations, and therefore denies them.

    65.    Conterra assigned to American Equity all of its interests relating to the 1078 Loan, including in the 1078 Note and 1078 Deed of Trust, as evidenced by, among other things, (a) that certain *Allonge to Promissory Note* relating to the 1078 Note (the "1078 Allonge"), and (b) that certain *Assignment of Deed of Trust*, which was recorded in the official records of the Fresno County Recorder on December 10, 2021, as Document No. 2021-0202494 (the "1078 DOT Assignment"). Nevertheless, Conterra continues to act as American Equity's agent and loan servicer for the 1078 Loan. True and correct copies of the 1078 Allonge and 1078 DOT Assignment are attached hereto as **Exhibits 56 and 57**, respectively.

    *Response:* Defendant admits that Exhibit 56 purports to be a copy of the 1078 Allonge and Exhibit 57 purports to be a copy of the 1078 DOT Assignment. The 1078 Allonge and the 1078 DOT Assignment speak for themselves and Defendant denies any allegations that are inconsistent with therewith. To the extent this

paragraph contains any additional factual allegations requiring a response as distinct from a legal conclusion as to which no response is required, Defendant is without information sufficient to admit or deny the remaining allegations, and therefore denies them.

66.     By that certain *Substitution of Trustee and Partial Conveyance* recorded in the official records of the Fresno County Recorder on June 9, 2023, as Document No. 2023-0053790 (the "1078 Partial Reconveyance"), American Equity subsequently released its lien against certain property constituting a part of the 1078 Collateral that was subject to the 1078 Deed of Trust (including certain land located in Fresno County, California, and identified by APN: 027-171-81-S) (the "Reconveyed 1078 Former Collateral"), while retaining its lien against all other property and collateral described in the 1078 Deed of Trust (the "Remaining 1078 Collateral").  A true and correct copy of the 1078 Partial Conveyance is attached hereto as **Exhibit 58**.

**Response:** Defendant admits that Exhibit 58 to the Complaint purports to be a copy of the 1078 Partial Conveyance. The 1078 Partial Conveyance speaks for itself, and Defendant denies any allegations that are inconsistent with the 1078 Partial Conveyance.

### 6.  Loan #AG1077

67.     On or about December 17, 2021, Conterra, as lender, made a loan to Maricopa Orchards and FFGT Farms, as borrowers, in the original principal amount of $13,500,000, identified as Loan #AG1077 (the "1077 Loan").

**Response:** Defendant lacks sufficient information to admit or deny the allegations in this paragraph and therefore denies them.

68.     Maricopa Orchards and FFGT Farms' obligation to repay the 1077 Loan is memorialized in that certain promissory note titled *Note* and dated December 17, 2021 (the "1077 Note"), under which they promised to repay $13,500,000 in principal, with interest (originally set at the nondefault rate of 3.5%

per annum), to Conterra.  The 1077 Note requires semiannual payments of principal and interest to be made (the first in the amount of $235,873.23 plus all then accrued interest, and the following eighteen in the amount of $472,123.23 each) and has a ten-year term, maturing on December 17, 2031, at which time all remaining amounts owed thereunder become due and payable.  A true and correct copy of the 1077 Note is attached hereto as **Exhibit 59**.

*Response:* Defendant admits that Exhibit 59 to the Complaint purports to be a copy of the 1077 Note. The 1077 Note speaks for itself, and Defendant denies any allegations that are inconsistent with the 1077 Note. To the extent this paragraph contains any additional factual allegations requiring a response as distinct from a legal conclusion as to which no response is required, Defendant is without information sufficient to admit or deny the remaining allegations, and therefore denies them.

69.    The 1077 Note is secured by that certain *Deed of Trust[,] Security Agreement, Assignment of Rents and Fixture Filing* dated December 17, 2021, which was recorded in the official records of the Fresno County Recorder on December 21, 2021, as Document No. 2021-0208172 (the "1077 Deed of Trust"). A corresponding UCC financing statement was also filed with the California Secretary of State on January 5, 2022, as File No. U220115881934 (the "Filed  1077 UCC-1"). True and correct copies of the 1077 Deed of Trust and Filed 1077 UCC-1 are attached hereto as **Exhibits 60 and 61**, respectively.

*Response:* Defendant admits that Exhibits 60 and 61 to the Complaint, respectively, purport to be a copy of the 1077 Deed of Trust and Filed 1077 UCC-1. The 1077 Deed of Trust and Filed 1077 UCC-1 speak for themselves, and Defendant denies any allegations that are inconsistent therewith.

70.    Under the 1077 Deed of Trust, FFGT Farms originally granted Conterra a security interest in certain real property (generally described as approximately 630 acres located in Fresno County, California); all buildings,

MOJDEHI GALVIN REGO LLP

improvements, equipment, fixtures, and permanent plantings affixed to, attached to, or incorporated in the real property (including all rents, issues, profits, income, and proceeds therefrom); all water rights appurtenant to the real property; and other property as described in the 1077 Deed of Trust (collectively, the "1077 Collateral").  Specifically excluded from the 1077 Collateral, as set forth in the 1077 Deed of Trust, are any "growing crop" and any "rolling stock" affixed or attached to the real property, as well as any "crop receivables."  The 1077 Deed of Trust also includes an assignment-of-rents provision, under which FFGT Farms absolutely and unconditionally assigns all rents and revenues of the 1077 Collateral to Conterra.

*Response:* The 1077 Deed of Trust speaks for itself, and Defendant denies any allegations that are inconsistent with the 1077 Deed of Trust.

71.     In connection with the 1077 Note and related loan documents and to induce Conterra to fund the 1077 Loan, Darius, Farid, and Farshid Assemi, as guarantors, each executed and delivered to Conterra, as lender, a written personal guaranty (the "1077 Darius Guaranty," "1077 Farid Guaranty," and "1077 Farshid Guaranty," respectively), each of which was similarly titled *Guaranty* and under which the three guaranteed the payment in full of any and all indebtedness owed by Maricopa Orchards and FFGT Farms to Conterra (or any assignee or transferee of Conterra's interest in such indebtedness).  True and correct copies of the 1077 Darius Guaranty, 1077 Farid Guaranty, and 1077 Farshid Guaranty are attached hereto as **Exhibits 62, 63, and 64**, respectively.

*Response:* Defendant admits that he executed the Guaranty attached as Exhibit 62 to the Complaint. Defendant admits that Exhibits 63 and 64 to the Complaint purport to be copies of the 1077 Farid Guaranty and 1077 Farshid Guaranty, respectively. The 1077 Darius Guaranty, 1077 Farid Guaranty, and 1077 Farshid Guaranty speak for themselves and Defendant denies any allegations that are inconsistent therewith. To the extent the remaining allegations call for a legal conclusion, a response is not required, and to the extent a response is required,

MOJDEHI GALVIN
REGO LLP

Defendant is without information sufficient to admit or deny the remaining allegations, and therefore denies them.

72.     Conterra assigned to American Equity all of its interests relating to the 1077 Loan, including in the 1077 Note and 1077 Deed of Trust, as evidenced by, among other things, (a) that certain *Allonge to Promissory Note* relating to the 1077 Note (the "1077 Allonge"), and (b) that certain *Assignment of Deed of Trust*, which was recorded in the official records of the Fresno County Recorder on December 21, 2021, as Document No. 2021-0208173 (the "1077 DOT Assignment"). Nevertheless, Conterra continues to act as American Equity's agent and loan servicer for the 1077 Loan. True and correct copies of the 1077 Allonge and 1077 DOT Assignment are attached hereto as **Exhibits 65 and 66**, respectively.

**Response:** Defendant admits that Exhibit 65 purports to be a copy of the 1077 Allonge and Exhibit 66 purports to be a copy of the 1077 DOT Assignment. The 1077 Allonge and the 1077 DOT Assignment speak for themselves and Defendant denies any allegations that are inconsistent with therewith. To the extent this paragraph contains any additional factual allegations requiring a response as distinct from a legal conclusion as to which no response is required, Defendant is without information sufficient to admit or deny the remaining allegations, and therefore denies them.

### 7.  Loan #AG1076

73.     On or about March 10, 2022, Conterra, as lender, made a loan to Maricopa Orchards and FFGT Farms, as borrowers, in the original principal amount of $10,098,930, identified as Loan #AG1076 (the "1076 Loan").

**Response:** Defendant lacks sufficient information to admit or deny the allegations in this paragraph and therefore denies them.

74.     Maricopa Orchards and FFGT Farms' obligation to repay the 1076 Loan is memorialized in that certain promissory note titled *Note* and dated March 10, 2022 (the "1076 Note"), under which they promised to repay $10,098,930 in

1   principal, with interest (originally set at the nondefault rate of 4.0% per annum), to
2   Conterra.  The 1076 Note requires semiannual payments of principal and interest to
3   be made (the first in the amount of $167,195.34 plus all then accrued interest, and
4   the following nineteen in the amount of $369,173.94 each) and has a ten-year term,
5   maturing on March 10, 2032, at which time all remaining amounts owed thereunder
6   become due and payable.  A true and correct copy of the 1076 Note is attached
7   hereto as **Exhibit 67**.

8       ***Response:*** Defendant admits that Exhibit 67 to the Complaint purports to be a
9   copy of the 1076 Note. The 1076 Note speaks for itself, and Defendant denies any
10  allegations that are inconsistent with the 1076 Note. To the extent this paragraph
11  contains any additional factual allegations requiring a response as distinct from a
12  legal conclusion as to which no response is required, Defendant is without
13  information sufficient to admit or deny the remaining allegations, and therefore
14  denies them.

15      75.    The 1076 Note is secured by (a) that certain *Deed of Trust[,] Security*
16  *Agreement, Assignment of Rents and Fixture Filing* dated March 10, 2022, which
17  was recorded in the official records of the Fresno County Recorder on March 24,
18  2022, as Document No. 2022-0038476 (the "1076-Fresno Deed of Trust"), and (b)
19  that certain *Deed of Trust[,] Security Agreement, Assignment of Rents and Fixture*
20  *Filing* dated March 10, 2022, which was recorded in the official records of the
21  Kings County Recorder on March 24, 2022, as Document No. 2205594 (the "1076-
22  Kings Deed of Trust") (together, the "1076 Deeds of Trust").  True and correct
23  copies of the 1076-Fresno Deed of Trust and 1076-Kings Deed of Trust are attached
24  hereto as **Exhibits 68 and 69**, respectively.

25      ***Response:*** Defendant admits that Exhibits 68 and 69 to the Complaint,
26  respectively, purport to be a copy of the 1076-Fresno Deed of Trust and 1076-Kings
27  Deed of Trust. The 1076-Fresno Deed of Trust and 1076-Kings Deed of Trust speak
28  for themselves, and Defendant denies any allegations that are inconsistent therewith.

76.     Under the 1076 Deeds of Trust, FFGT Farms originally granted Conterra a security interest in certain real property (generally described as approximately 785 acres located in Fresno and Kings Counties, California); all buildings, improvements, equipment, fixtures, and permanent plantings affixed to, attached to, or incorporated in the real property (including all rents, issues, profits, income, and proceeds therefrom); all water rights appurtenant to the real property; and other property as described in the 1076 Deeds of Trust (collectively, the "<u>1076 Collateral</u>"). Specifically excluded from the 1076 Collateral, as set forth in the 1076 Deeds of Trust, are any "growing crop" and any "rolling stock" affixed or attached to the real property, as well as any "crop receivables." The 1076 Deeds of Trust also include an assignment-of-rents provision, under which FFGT Farms absolutely and unconditionally assigns all rents and revenues of the 1076 Collateral to Conterra.

*Response:* The 1076 Deed of Trust speaks for itself, and Defendant denies any allegations that are inconsistent with the 1076 Deed of Trust.

77.     In connection with the 1076 Note and related loan documents and to induce Conterra to fund the 1076 Loan, Darius, Farid, and Farshid Assemi, as guarantors, each executed and delivered to Conterra, as lender, a written personal guaranty (the "<u>1076 Darius Guaranty</u>," "<u>1076 Farid Guaranty</u>," and "<u>1076 Farshid Guaranty</u>," respectively), each of which was similarly titled *Guaranty* and under which the three guaranteed the payment in full of any and all indebtedness owed by Maricopa Orchards and FFGT Farms to Conterra (or any assignee or transferee of Conterra's interest in such indebtedness). True and correct copies of the 1076 Darius Guaranty, 1076 Farid Guaranty, and 1076 Farshid Guaranty are attached hereto as **<u>Exhibits 70, 71, and 72</u>**, respectively.

*Response:* Defendant admits that he executed the Guaranty attached as Exhibit 70 to the Complaint. Defendant admits that Exhibits 71 and 72 to the Complaint purport to be copies of the 1076 Farid Guaranty and 1076 Farshid

Guaranty, respectively. The 1076 Darius Guaranty, 1076 Farid Guaranty, and 1076 Farshid Guaranty speak for themselves and Defendant denies any allegations that are inconsistent therewith. To the extent the remaining allegations call for a legal conclusion, a response is not required, and to the extent a response is required, Defendant is without information sufficient to admit or deny the remaining allegations, and therefore denies them.

78.    Conterra assigned to American Equity all of its interests relating to the 1076 Loan, including in the 1076 Note and 1076 Deeds of Trust, as evidenced by, among other things, (a) that certain *Allonge to Promissory Note* relating to the 1076 Note (the "<u>1076 Allonge</u>"), (b) that certain *Assignment of Deed of Trust*, which was recorded in the official records of the Fresno County Recorder on March 24, 2022, as Document No. 2022-0038477 (the "<u>1076-Fresno DOT Assignment</u>"), and (c) that certain *Assignment of Deed of Trust*, which was recorded in the official records of the Kings County Recorder on March 24, 2022, as Document No. 2205595 (the "<u>1076-Kings DOT Assignment</u>").  Nevertheless, Conterra continues to act as American Equity's agent and loan servicer for the 1076 Loan. True and correct copies of the 1076 Allonge, 1076-Fresno DOT Assignment, and 1076-Kings DOT Assignment are attached hereto as **<u>Exhibits 73, 74, and 75</u>**, respectively.

*Response:* Defendant admits that Exhibits 73, 74 and 74, respectively, purport to be copies of the 1076 Allonge, 1076-Fresno DOT Assignment, and 1076-Kings DOT Assignment. The 1076 Allonge, 1076-Fresno DOT Assignment, and 1076-Kings DOT Assignment speak for themselves and Defendant denies any allegations that are inconsistent with therewith. To the extent this paragraph contains any additional factual allegations requiring a response as distinct from a legal conclusion as to which no response is required, Defendant is without information sufficient to admit or deny the remaining allegations, and therefore denies them.

MOJDEHI GALVIN
REGO LLP

### 8. Loan #AG1115 and Loan #AG1116

79.     On or about February 3, 2023, Conterra, as lender, made a loan to Maricopa Orchards, Copper Avenue, C & A Farms, ACAP Farms, Willow Avenue, 104 Investments, Lincoln Grantor Farms, Grantor Real Estate, Gradon Farms, FFGT Farms, Cantua Orchards, and Locans Investments, as borrowers (collectively, the "1115/1116 Borrowers"), in the original principal amount of $11,300,000, identified as Loan #AG1115 (the "1115 Loan").

**Response:** Defendant lacks sufficient information to admit or deny the allegations in this paragraph and therefore denies them.

80.     On or about February 3, 2023, Conterra, as lender, also extended a revolving line of credit loan to the 1115/1116 Borrowers, with advances not to exceed $11,300,000, which loan is identified as Loan #AG1116 (the "1116 Loan"). Funds in the amount of $11,300,000 were initially advanced to the 1115/1116 Borrowers under the 1116 Loan.

**Response:** Defendant lacks sufficient information to admit or deny the allegations in this paragraph and therefore denies them.

81.     The 1115/1116 Borrowers' obligation to repay the 1115 Loan is memorialized in that certain promissory note titled *Note* and dated February 3, 2023 (the "1115 Note"), under which they promised to repay $11,300,000 in principal, with interest (at a variable rate), to Conterra.  The 1115 Note requires semiannual interest-only payments to be made and has a five-year term, maturing on February 3, 2028, at which time all remaining amounts owed thereunder become due and payable.  A true and correct copy of the 1115 Note is attached hereto as **Exhibit 76**.

**Response:** Defendant admits that Exhibit 76 to the Complaint purports to be a copy of the 1115 Note. The 1115 Note speaks for itself, and Defendant denies any allegations that are inconsistent with the 1115 Note. To the extent this paragraph contains any additional factual allegations requiring a response as distinct from a legal conclusion as to which no response is required, Defendant is without

information sufficient to admit or deny the remaining allegations, and therefore denies them.

82.    The 1115/1116 Borrowers' obligation to repay the 1116 Loan is memorialized in that certain promissory note titled *Note* and dated February 3, 2023 (the "1116 Note"), under which they promised to repay the amount advanced on the 1116 Loan, with interest (at a variable rate), to Conterra. The 1116 Note requires semiannual interest-only payments to be made and has a five-year term, maturing on February 3, 2028, at which time all remaining amounts owed thereunder become due and payable.  A true and correct copy of the 1116 Note is attached hereto as **Exhibit 77**.

***Response:*** Defendant admits that Exhibit 77 to the Complaint purports to be a copy of the 1116 Note. The 1116 Note speaks for itself, and Defendant denies any allegations that are inconsistent with the 1116 Note. To the extent this paragraph contains any additional factual allegations requiring a response as distinct from a legal conclusion as to which no response is required, Defendant is without information sufficient to admit or deny the remaining allegations, and therefore denies them.

83.    The 1115 Note and 1116 Note are secured by (a) that certain *Open-End Deed of Trust (with Future Advance Clause)[,] Security Agreement, Assignment of Rents and Fixture Filing* dated February 3, 2023, which was recorded in the official records of the Fresno County Recorder on February 9, 2023, as Document No. 2023-0011566 (the "1115/1116-Fresno Deed of Trust"), (b) that certain *Open- End Deed of Trust (with Future Advance Clause)[,] Security Agreement, Assignment of Rents and Fixture Filing* dated February 3, 2023, which was recorded in the official records of the Kern County Recorder on February 9, 2023, as Document No. 223015311 (the "1115/1116-Kern Deed of Trust"), and (c) that certain *Open- End Deed of Trust (with Future Advance Clause)[,] Security Agreement, Assignment of Rents and Fixture Filing* dated February 3, 2023, which was recorded in the official

records of the Kings County Recorder on February 9, 2023, as Document No. 2301976 (the "<u>1115/1116-Kings Deed of Trust</u>") (collectively, the "<u>1115/1116 Deeds of Trust</u>"). True and correct copies of the 1115/1116-Fresno Deed of Trust, 1115/1116-Kern Deed of Trust, and 1115/1116-Kings Deed of Trust are attached hereto as **Exhibits 78, 79, and 80**, respectively.

*Response:* Defendant admits that Exhibits 78, 79 and 80 to the Complaint, respectively, purport to be a copy of the 1115/1116-Fresno Deed of Trust, 1115/1116-Kern Deed of Trust, and 1115/1116-Kings Deed of Trust. The 1115/1116-Fresno Deed of Trust, 1115/1116-Kern Deed of Trust, and 1115/1116-Kings Deed of Trust speak for themselves, and Defendant denies any allegations that are inconsistent therewith.

84.     Collectively, (a) Lincoln Grantor Farms, Gradon Farms, FFGT Farms, 104 Investments, Locans Investments, Cantua Orchards, C & A Farms, and Willow Avenue, under the 1115/1116-Fresno Deed of Trust, (b) C & A Farms, Lincoln Grantor Farms, Maricopa Orchards, Willow Avenue, and Grantor Real Estate, under the 1115/1116-Kern Deed of Trust, and (c) Copper Avenue, Lincoln Grantor Farms, ACAP Farms, FFGT Farms, and Willow Avenue, under the 1115/1116-Kings Deed of Trust, originally granted Conterra a security interest in certain real property located in Fresno, Kern, and Kings Counties; all buildings, improvements, equipment, fixtures, and permanent plantings affixed to, attached to, or incorporated in the real property (including all rents, issues, profits, income, and proceeds therefrom); all water rights appurtenant to the real property; and other property as described in the 1115/1116 Deeds of Trust (collectively, the "<u>1115/1116 Collateral</u>"). Specifically excluded from the 1115/1116 Collateral, as set forth in the 1115/1116 Deeds of Trust, are any "growing crop" and any "rolling stock" affixed or attached to the real property, as well as any "crop receivables." The 1115/1116 Deeds of Trust also include an assignment-of-rents provision, under which the

applicable 1115/1116 Borrowers absolutely and unconditionally assign all rents and revenues of the 1115/1116 Collateral to Conterra.

*Response:* The 1115/1116-Fresno Deed of Trust, 1115/1116-Kern Deed of Trust, and 1115/1116-Kings Deed of Trust speaks for themselves, and Defendant denies any allegations that are inconsistent therewith.

85.    In connection with the 1115 Note and related loan documents and to induce Conterra to fund the 1115 Loan, Darius, Farid, Farshid, and Sonia Assemi, as guarantors, each executed and delivered to Conterra, as lender, a written personal guaranty (the "1115 Darius Guaranty," "1115 Farid Guaranty," "1115 Farshid Guaranty," and "1115 Sonia Guaranty," respectively), each of which was similarly titled *Guaranty* and under which the four guaranteed the payment in full of any and all indebtedness owed by the 1115/1116 Borrowers to Conterra (or any assignee or transferee of Conterra's interest in such indebtedness).  True and correct copies of the 1115 Darius Guaranty, 1115 Farid Guaranty, 1115 Farshid Guaranty, and 1115 Sonia Guaranty are attached hereto as **Exhibits 81, 82, 83, and 84**, respectively.

*Response:* Defendant admits that he executed the Guaranty attached as Exhibit 81 to the Complaint. Defendant admits that Exhibits 82, 83 and 84 to the Complaint purport to be copies of the 115 Farid Guaranty, 1115 Farshid Guaranty, and 1115 Sonia Guaranty, respectively. The 1115 Darius Guaranty, 1115 Farid Guaranty, 1115 Farshid Guaranty, and 1115 Sonia Guaranty speak for themselves and Defendant denies any allegations that are inconsistent therewith. To the extent the remaining allegations call for a legal conclusion, a response is not required, and to the extent a response is required, Defendant is without information sufficient to admit or deny the remaining allegations, and therefore denies them.

86.    Likewise, in connection with the 1116 Note and related loan documents and to induce Conterra to fund the 1116 Loan, Darius, Farid, Farshid, and Sonia Assemi, as guarantors, each executed and delivered to Conterra, as lender, a written personal guaranty (the "1116 Darius Guaranty," "1116 Farid Guaranty," "1116

MOJDEHI GALVIN
REGO LLP

---

Farshid Guaranty," and "1116 Sonia Guaranty," respectively), each of which was similarly titled *Guaranty* and under which the four guaranteed the payment in full of any and all indebtedness owed by the 1115/1116 Borrowers to Conterra (or any assignee or transferee of Conterra's interest in such indebtedness).  True and correct copies of the 1116 Darius Guaranty, 1116 Farid Guaranty, 1116 Farshid Guaranty, and 1116 Sonia Guaranty are attached hereto as **Exhibits 85, 86, 87, and 88**, respectively.

 **Response:** Defendant admits that he executed the Guaranty attached as Exhibit 85 to the Complaint. Defendant admits that Exhibits 86, 87 and 88 to the Complaint purport to be copies of the 1116 Farid Guaranty, 1116 Farshid Guaranty, and 1116 Sonia Guaranty, respectively. The 1116 Darius Guaranty, 1116 Farid Guaranty, 1116 Farshid Guaranty, and 1116 Sonia Guaranty speak for themselves and Defendant denies any allegations that are inconsistent therewith. To the extent the remaining allegations call for a legal conclusion, a response is not required, and to the extent a response is required, Defendant is without information sufficient to admit or deny the remaining allegations, and therefore denies them.

 87.    Conterra assigned to American Equity all of its interests relating to the 1115 Loan and 1116 Loan, including in the 1115 Note, 1116 Note, and 1115/1116 Deeds of Trust, as evidenced by, among other things, (a) that certain *Allonge to Promissory Note* relating to the 1115 Note (the "1115 Allonge"), (b) that certain *Allonge to Promissory Note* relating to the 1116 Note (the "1116 Allonge"), (c) that certain *Assignment of Deed of Trust*, which was recorded in the official records of the Fresno County Recorder on March 14, 2023, as Document No. 2023- 0023044 (the "1115/1116-Fresno DOT Assignment"), (d) that certain *Assignment of Deed of Trust*, which was recorded in the official records of the Kern County Recorder on March 14, 2023, as Document No. 223029410 (the "1115/1116-Kern  DOT Assignment"), and (e) that certain *Assignment of Deed of Trust*, which was recorded in the official records of the Kings County Recorder on March 23, 2023, as

ANSWER AND AFFIRMATIVE DEFENSES

Document No. 2304389 (the "1115/1116-Kings DOT Assignment").  Nevertheless, Conterra continues to act as American Equity's agent and loan servicer for the 1115 Loan and 1116 Loan.  True and correct copies of the 1115 Allonge, 1116 Allonge, 1115/1116-Fresno DOT Assignment, 1115/1116-Kern DOT Assignment, and 1115/1116-Kings DOT Assignment are attached hereto as **Exhibits 89, 90, 91, 92, and 93**, respectively.

*Response:* Defendant admits that Exhibits 89, 90, 91, 92 and 93, respectively, purport to be copies of the 1115 Allonge, 1116 Allonge, 1115/1116-Fresno DOT Assignment, 1115/1116-Kern DOT Assignment, and 1115/1116-Kings DOT Assignment. The 1115 Allonge, 1116 Allonge, 1115/1116-Fresno DOT Assignment, 1115/1116-Kern DOT Assignment, and 1115/1116-Kings DOT Assignment speak for themselves and Defendant denies any allegations that are inconsistent with therewith. To the extent this paragraph contains any additional factual allegations requiring a response as distinct from a legal conclusion as to which no response is required, Defendant is without information sufficient to admit or deny the remaining allegations, and therefore denies them.

88.    By that certain *Substitution of Trustee and Partial Conveyance* recorded in the official records of the Fresno County Recorder on June 9, 2023, as Document No. 2023-0053794 (the "1115/1116-Fresno Partial Reconveyance"), American Equity subsequently released its lien against certain property constituting a part of the 1115/1116 Collateral that was subject to the 1115/1116-Fresno Deed of Trust (including certain land located in Fresno County, California, and identified by APNs: 019-180-09S, 019-180-27S, 019-180-23S, 019-180-25S, 027-171-81-S, and 027-171-82-S) (the "Reconveyed 1115/1116 Former Collateral"), while retaining its lien against all other property and collateral described in the 1115/1116-Fresno Deed of Trust and the other 1115/1116 Deeds of Trust (the "Remaining 1115/1116 Collateral").  A true and correct copy of the 1115/1116-Fresno Partial Conveyance is attached hereto as **Exhibit 94**.

ANSWER AND AFFIRMATIVE DEFENSES

MOJDEHI GALVIN REGO LLP

*Response:* Defendant admits that Exhibit 94 to the Complaint purports to be a copy of the 1115/1116-Fresno Partial Conveyance. The 1115/1116-Fresno Partial Conveyance speaks for itself, and Defendant denies any allegations that are inconsistent with the 1115/1116-Fresno Partial Conveyance.

## B. Relevant Common Provisions in the Loan Documents

89.    The promissory notes relating to the Loans (i.e., the 1021 Note, 1024 Amended Note, 1022 Note, 1023 Note, 1069 Note, 1078 Note, 1077 Note, 1076 Note, 1115 Note, and 1116 Note) (collectively, the "Notes") include common provisions relating to defaults thereunder.

*Response:* The Notes speak for themselves and Defendant denies any allegations that are inconsistent with the Notes.

90.    The deeds of trust securing the Notes (i.e., the 1021-Fresno Deed of Trust, 1024-Fresno Deed of Trust, 1022 Deed of Trust, 1023 Deed of Trust, 1069 Deed of Trust, 1078 Deed of Trust, 1077 Deed of Trust, 1076-Fresno Deed of Trust, 1076-Kings Deed of Trust, 1115/1116-Fresno Deed of Trust, 1115/1116-Kern Deed of Trust, and 1115/1116-Kings Deed of Trust) (collectively, the "Deeds of Trust") also include common provisions relating to defaults thereunder.

*Response:* The Deeds of Trust speak for themselves and Defendant denies any allegations that are inconsistent with the Deed of Trust.

91.    Each of the Notes provides, "The occurrence of any one or more of the following shall constitute an 'Event of Default' under this Note, the Security Instrument [i.e., the deed of trust], and any related loan documents, as such term is used herein … (1) If Borrowers fail to repay any interest or Principal under the Note when due …."

*Response:* The Notes speak for themselves and Defendant denies any allegations that are inconsistent with the Notes.

92.    Each Deed of Trust similarly sets forth the borrowers' obligation to make timely payments under the applicable Note: "Borrower and/or Borrower

Parties shall pay when due the principal of, and interest on, the debt evidenced by the Note and any yield maintenance premiums, any prepayment charges and late charges due under the Note." In addition, the Deeds of Trust also include a cross-default provision, providing that "Borrower's or Borrower Parties' default or breach under any note or agreement in which Lender has an interest shall be a breach under the Security Instrument and Lender may invoke any of the remedies permitted by the Security Instrument."

*Response:* The Deeds of Trust speak for themselves and Defendant denies any allegations that are inconsistent with the Deed of Trust.

93.    Under each Deed of Trust, "[f]ollowing Borrower's breach of any covenant or agreement in this Security Instrument … and prior to acceleration or Lender's exercise of any remedy," American Equity is required to "give at least sixty (60) days written notice to Borrower prior to exercising any remedy, *unless otherwise provided under this Deed of Trust*."  One such exception is in seeking the appointment of a receiver, where each Deed of Trust provides, "If Lender gives notices of default to Borrower … (vi) Lender shall be entitled to have a receiver appointed to take possession of and manage the Property and collect the Rents and profits derived from the Property without any showing as to the inadequacy of the Property as security."

*Response:* The Deeds of Trust speak for themselves and Defendant denies any allegations that are inconsistent with the Deed of Trust.

94.    Under each Deed of Trust, following the passage of the required notice period, "Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law" and "shall be entitled to collect all expenses incurred in pursuing the remedies provided [herein], including, but not limited to, reasonable attorneys' fees and costs of title evidence."

*Response:* The Deeds of Trust speak for themselves and Defendant denies any allegations that are inconsistent with the Deed of Trust.

95.    The personal guaranties relating to the Loans from Darius, Farid, and Farshid Assemi (i.e., the 1021 Darius Guaranty, 1021 Farid Guaranty, 1021 Farshid Guaranty, 1024 Darius Guaranty, 1024 Farid Guaranty, 1024 Farshid Guaranty, 1022 Darius Guaranty, 1022 Farid Guaranty, 1022 Farshid Guaranty, 1023 Darius Guaranty, 1023 Farid Guaranty, 1023 Farshid Guaranty, 1069 Darius Guaranty, 1069 Farid Guaranty, 1069 Farshid Guaranty, 1078 Darius Guaranty, 1078 Farid Guaranty, 1078 Farshid Guaranty, 1077 Darius Guaranty, 1077 Farid Guaranty, 1077 Farshid Guaranty, 1076 Darius Guaranty, 1076 Farid Guaranty, 1076 Farshid Guaranty, 1115 Darius Guaranty, 1115 Farid Guaranty, 1115 Farshid Guaranty, 1116 Darius Guaranty, 1116 Farid Guaranty, and 1116 Farshid Guaranty (collectively, the "Guaranties") and the personal guaranties relating to the 1115 Loan and 1116 Loan from Sonia Assemi (i.e., the 1115 Sonia Guaranty and 1116 Sonia Guaranty) (together, the "Sonia Guaranties") also include common provisions relating to Guarantor Defendants' obligation on the indebtedness owed by Borrower Defendants on the Loans.

*Response:* The Guaranties and the Sonia Guaranties, respectively, speak for themselves and Defendant denies any allegations that are inconsistent with the Guaranties and/or the Sonia Guaranties. To the extent any remaining allegations call for a legal conclusion, a response is not required, and to the extent a response is required, Defendant is without information sufficient to admit or deny any remaining allegations, and therefore denies them.

96.    Under each of the Guaranties or Sonia Guaranties, the applicable Guarantor Defendant "guarantee[d] to the Lender the immediate payment in full of any and all of the Guaranteed Indebtedness … when due, whether by acceleration or otherwise, and at all times thereafter," with the term "Guaranteed Indebtedness" being defined therein to include "(1) any and all indebtedness of every kind and

character, without limit as to amount, whether now existing or hereafter arising, of Borrowers to Lender, regardless of whether evidenced by notes, drafts, acceptances, discounts, overdrafts, deeds of trust, security agreements, loan agreements, or otherwise, and regardless whether such indebtedness be fixed, contingent, primary, secondary, joint, several or joint and several, (2) interest, whether accruing before or after maturity, on any and all of the indebtedness described in (1) preceding, (3) any and all attorneys' fees, costs and expenses incurred or suffered by Lender in the making of, the administration of or collection of the foregoing indebtedness described in (1) preceding or interest described in (2) preceding, or any part thereof."

*Response:* The Guaranties and the Sonia Guaranties, respectively, speak for themselves and Defendant denies any allegations that are inconsistent with the Guaranties and/or the Sonia Guaranties. To the extent any remaining allegations call for a legal conclusion, a response is not required, and to the extent a response is required, Defendant is without information sufficient to admit or deny any remaining allegations, and therefore denies them.

**C. Defendants' Loans**

97.     Beginning in July 2024, Borrower Defendants began breaching or defaulting on their obligations under the loan documents relating to each of the Loans, primarily by failing to make the payments due thereon, including all amounts due and owing on the Loans following acceleration. Relatedly, Guarantor Defendants have also breached or defaulted on their obligations under their respective Guaranties by failing to pay the amounts due and owing under the loan documents relating to each of the Loans, including all amounts due and owing on the Loans following acceleration.

*Response:* Defendant denies the allegations of this paragraph as they relate to Defendant. As to the remaining allegations of this paragraph, Defendant lacks sufficient information to admit or deny and therefore denies them.

### 1. 1021 Loan

98.     Maricopa Orchards and Willow Avenue failed to pay the semiannual payment of $198,463.16 due on July 1, 2024, under the 1021 Note. Accordingly, on or about September 26, 2024, Conterra, as agent and loan servicer for American Equity, served a notice of default on Maricopa Orchards and Willow Avenue by mail, indicating that the borrowers were in default of their obligations under the loan documents relating to the 1021 Loan due to nonpayment.

*Response:* Defendant lacks sufficient information to admit or deny the allegations of this paragraph and therefore denies them.

99.     On or about November 27, 2024, American Equity, through its counsel, served a notice of acceleration on  Maricopa Orchards and Willow Avenue and guarantors Darius, Farid, and Farshid Assemi by mail, indicating that all amounts due and owing under the loan documents relating to the 1021 Loan had been accelerated as a result of the continuing default.

*Response:* Defendant lacks sufficient information to admit or deny the allegations of this paragraph and therefore denies them.

100.    To date, neither the initial default nor the post-acceleration default on the 1021 Loan has been cured by the applicable Borrower Defendants or Guarantor Defendants.

*Response:* Defendant denies the allegations of this paragraph as they relate to Defendant. As to the remaining allegations of this paragraph, Defendant lacks sufficient information to admit or deny and therefore denies them.

101.    As of July 1, 2024, the unpaid principal balance of the 1021 Note was approximately $3,397,915.77 (exclusive of interest, costs, and other charges).

*Response:* Defendant lacks sufficient information to admit or deny the allegations of this paragraph and therefore denies them.

MOJDEHI GALVIN
REGO LLP

ANSWER AND AFFIRMATIVE DEFENSES

1

### 2. 1024 Loan

2

    102.   Maricopa Orchards and Willow Avenue failed to pay the semiannual

3

payment of $59,796.99 due on July 1, 2024, under the 1024 Amended Note.

4

Accordingly, on or about September 26, 2024, Conterra, as agent and loan servicer

5

for American Equity, served a notice of default on Maricopa Orchards and Willow

6

Avenue by mail, indicating that the borrowers were in default of their obligations

7

under the loan documents relating to the 1024 Loan due to nonpayment.

8

    ***Response:*** Defendant lacks sufficient information to admit or deny the

9

allegations of this paragraph and therefore denies them.

10

    103.   On or about November 27, 2024, American Equity, through its counsel,

11

served a notice of acceleration on borrowers Maricopa Orchards and Willow

12

Avenue and guarantors Darius, Farid, and Farshid Assemi by mail, indicating that

13

all amounts due and owing under the loan documents relating to the 1024 Loan had

14

been accelerated as a result of the continuing default.

15

    ***Response:*** Defendant lacks sufficient information to admit or deny the

16

allegations of this paragraph and therefore denies them.

17

    104.   To date, neither the initial default nor the post-acceleration default on

18

the 1024 Loan has been cured by the applicable Borrower Defendants or Guarantor

19

Defendants.

20

    ***Response:*** Defendant denies the allegations of this paragraph as they relate to

21

Defendant. As to the remaining allegations of this paragraph, Defendant lacks

22

sufficient information to admit or deny and therefore denies them.

23

    105.   As of  July 1, 2024, the unpaid principal balance of the 1024 Amended

24

Note was approximately $1,493,356.15 (exclusive of interest, costs, and other

25

charges).

26

    ***Response:*** Defendant lacks sufficient information to admit or deny the

27

allegations of this paragraph and therefore denies them.

28

MOJDEHI GALVIN
REGO LLP

### 3. 1022 Loan

106.   Maricopa Orchards and Lincoln Grantor Farms failed to pay the semiannual payment of $10,298.63 due on July 1, 2024, under the 1022 Note. Accordingly, on or about September 26, 2024, Conterra, as agent and loan servicer for American Equity, served a notice of default on Maricopa Orchards and Lincoln Grantor Farms by mail, indicating that the borrowers were in default of their obligations under the loan documents relating to the 1022 Loan due to nonpayment.

*Response:* Defendant lacks sufficient information to admit or deny the allegations of this paragraph and therefore denies them.

107.   On or about November 27, 2024, American Equity, through its counsel, served a notice of acceleration on borrowers Maricopa Orchards and Lincoln Grantor Farms and guarantors Darius, Farid, and Farshid Assemi by mail, indicating that all amounts due and owing under the loan documents relating to the 1022 Loan had been accelerated as a result of the continuing default.

*Response:* Defendant lacks sufficient information to admit or deny the allegations of this paragraph and therefore denies them.

108.   To date, neither the initial default nor the post-acceleration default on the 1022 Loan has been cured by the applicable Borrower Defendants or Guarantor Defendants.

*Response:* Defendant denies the allegations of this paragraph as they relate to Defendant. As to the remaining allegations of this paragraph, Defendant lacks sufficient information to admit or deny and therefore denies them.

109.   As of July 1, 2024, the unpaid principal balance of the 1022 Note was approximately $251,719.34 (exclusive of interest, costs, and other charges).

*Response:* Defendant lacks sufficient information to admit or deny the allegations of this paragraph and therefore denies them.

MOJDEHI GALVIN
REGO LLP

### 4. 1023 Loan

110.  Maricopa Orchards and Grantor Real Estate failed to pay the semiannual payment of $118,434.23 due on July 1, 2024, under the 1023 Note. Accordingly, on or about September 26, 2024, Conterra, as agent and loan servicer for American Equity, served a notice of default on Maricopa Orchards and Grantor Real Estate by mail, indicating that the borrowers were in default of their obligations under the loan documents relating to the 1023 Loan due to nonpayment.

*Response:* Defendant lacks sufficient information to admit or deny the allegations of this paragraph and therefore denies them.

111.  On or about November 27, 2024, American Equity, through its counsel, served a notice of acceleration on borrowers Maricopa Orchards and Grantor Real Estate and guarantors Darius, Farid, and Farshid Assemi by mail, indicating that all amounts due and owing under the loan documents relating to the 1023 Loan had been accelerated as a result of the continuing default.

*Response:* Defendant lacks sufficient information to admit or deny the allegations of this paragraph and therefore denies them.

112.  To date, neither the initial default nor the post-acceleration default on the 1023 Loan has been cured by the applicable Borrower Defendants or Guarantor Defendants.

*Response:* Defendant denies the allegations of this paragraph as they relate to Defendant. As to the remaining allegations of this paragraph, Defendant lacks sufficient information to admit or deny and therefore denies them.

113.  As of July 1, 2024, the unpaid principal balance of the 1023 Note was approximately $2,894,772.46 (exclusive of interest, costs, and other charges).

*Response:* Defendant lacks sufficient information to admit or deny the allegations of this paragraph and therefore denies them.

MOJDEHI GALVIN
REGO LLP

### 5. 1069 Loan

114.    Maricopa Orchards and Gradon Farms failed to pay the semiannual payment of $134,722.99 due on July 1, 2024, under the 1069 Note. Accordingly, on or about September 26, 2024, Conterra, as agent and loan servicer for American Equity, served a notice of default on Maricopa Orchards and Gradon Farms by mail, indicating that the borrowers were in default of their obligations under the loan documents relating to the 1069 Loan due to nonpayment.

*Response:* Defendant lacks sufficient information to admit or deny the allegations of this paragraph and therefore denies them.

115.    On or about November 27, 2024, American Equity, through its counsel, served a notice of acceleration on borrowers Maricopa Orchards and Gradon Farms and guarantors Darius, Farid, and Farshid Assemi by mail, indicating that all amounts due and owing under the loan documents relating to the 1069 Loan had been accelerated as a result of the continuing default.

*Response:* Defendant lacks sufficient information to admit or deny the allegations of this paragraph and therefore denies them.

116.    To date, neither the initial default nor the post-acceleration default on the 1069 Loan has been cured by the applicable Borrower Defendants or Guarantor Defendants.

*Response:* Defendant denies the allegations of this paragraph as they relate to Defendant. As to the remaining allegations of this paragraph, Defendant lacks sufficient information to admit or deny and therefore denies them.

117.    As of July 1, 2024, the unpaid principal balance of the 1069 Note was approximately $3,503,744.50 (exclusive of interest, costs, and other charges).

*Response:* Defendant lacks sufficient information to admit or deny the allegations of this paragraph and therefore denies them.

MOJDEHI GALVIN
REGO LLP

ANSWER AND AFFIRMATIVE DEFENSES

### 6. 1078 Loan

118.    Maricopa Orchards and Lincoln Grantor Farms failed to pay the semiannual payment of $123,483.31 due on July 1, 2024, under the 1078 Note. Accordingly, on or about September 26, 2024, Conterra, as agent and loan servicer for American Equity, served a notice of default on Maricopa Orchards and Lincoln Grantor Farms by mail, indicating that the borrowers were in default of their obligations under the loan documents relating to the 1078 Loan due to nonpayment.

*Response:* Defendant lacks sufficient information to admit or deny the allegations of this paragraph and therefore denies them.

119.    On or about November 27, 2024, American Equity, through its counsel, served a notice of acceleration on borrowers Maricopa Orchards and Lincoln Grantor Farms and guarantors Darius, Farid, and Farshid Assemi by mail, indicating that all amounts due and owing under the loan documents relating to the 1078 Loan had been accelerated as a result of the continuing default.

*Response:* Defendant lacks sufficient information to admit or deny the allegations of this paragraph and therefore denies them.

120.    To date, neither the initial default nor the post-acceleration default on the 1078 Loan has been cured by the applicable Borrower Defendants or Guarantor Defendants.

*Response:* Defendant denies the allegations of this paragraph as they relate to Defendant. As to the remaining allegations of this paragraph, Defendant lacks sufficient information to admit or deny and therefore denies them.

121.    As of July 1, 2024, the unpaid principal balance of the 1078 Note was approximately $1,441,978.13 (exclusive of interest, costs, and other charges).

*Response:* Defendant lacks sufficient information to admit or deny the allegations of this paragraph and therefore denies them.

MOJDEHI GALVIN
REGO LLP

1

### 7. 1077 Loan

2    122.    Maricopa Orchards and FFGT Farms failed to pay the semiannual

3    payment of $472,123.23 due on July 1, 2024, under the 1077 Note.  Accordingly, on

4    or about September 26, 2024, Conterra, as agent and loan servicer for American

5    Equity, served a notice of default on Maricopa Orchards and FFGT Farms by mail,

6    indicating that the borrowers were in default of their obligations under the loan

7    documents relating to the 1077 Loan due to nonpayment.

8    **Response:** Defendant lacks sufficient information to admit or deny the

9    allegations of this paragraph and therefore denies them.

10    123.    On or about November 27, 2024, American Equity, through its counsel,

11    served a notice of acceleration on borrowers Maricopa Orchards and FFGT Farms

12    and guarantors Darius, Farid, and Farshid Assemi by mail, indicating that all

13    amounts due and owing under the loan documents relating to the 1077 Loan had

14    been accelerated as a result of the continuing default.

15    **Response:** Defendant lacks sufficient information to admit or deny the

16    allegations of this paragraph and therefore denies them.

17    124.    To date, neither the initial default nor the post-acceleration default on

18    the 1077 Loan has been cured by the applicable Borrower Defendants or Guarantor

19    Defendants.

20    **Response:** Defendant denies the allegations of this paragraph as they relate to

21    Defendant. As to the remaining allegations of this paragraph, Defendant lacks

22    sufficient information to admit or deny and therefore denies them.

23    125.    As of July 1, 2024, the unpaid principal balance of the 1077 Note was

24    approximately $12,531,450.19 (exclusive of interest, costs, and other

25    charges).

26    **Response:** Defendant lacks sufficient information to admit or deny the

27    allegations of this paragraph and therefore denies them.

28

MOJDEHI GALVIN
REGO LLP

1

### 8. 1076 Loan

2      126.    Maricopa Orchards and FFGT Farms failed to pay the semiannual

3   payment of $369,173.94 due on July 1, 2024, under the 1076 Note.  Accordingly, on

4   or about September 26, 2024, Conterra, as agent and loan servicer for American

5   Equity, served a notice of default on Maricopa Orchards and FFGT Farms by mail,

6   indicating that the borrowers were in default of their obligations under the loan

7   documents relating to the 1076 Loan due to nonpayment.

8      ***Response:*** Defendant lacks sufficient information to admit or deny the

9   allegations of this paragraph and therefore denies them.

10      127.    On or about November 27, 2024, American Equity, through its counsel,

11   served a notice of acceleration on borrowers Maricopa Orchards and FFGT Farms

12   and guarantors Darius, Farid, and Farshid Assemi by mail, indicating that all

13   amounts due and owing under the loan documents relating to the 1076 Loan had

14   been accelerated as a result of the continuing default.

15      ***Response:*** Defendant lacks sufficient information to admit or deny the

16   allegations of this paragraph and therefore denies them.

17      128.    To date, neither the initial default nor the post-acceleration default on

18   the 1076 Loan has been cured by the applicable Borrower Defendants or Guarantor

19   Defendants.

20      ***Response:*** Defendant denies the allegations of this paragraph as they relate to

21   Defendant. As to the remaining allegations of this paragraph, Defendant lacks

22   sufficient information to admit or deny and therefore denies them.

23      129.    As of July 1, 2024, the unpaid principal balance of the 1076 Note was

24   approximately $9,409,816.35 (exclusive of interest, costs, and other charges).

25      ***Response:*** Defendant lacks sufficient information to admit or deny the

26   allegations of this paragraph and therefore denies them.

27

28

MOJDEHI GALVIN
REGO LLP

ANSWER AND AFFIRMATIVE DEFENSES

### 9.  1115 Loan

130.   The 1115/1116 Borrowers failed to pay the semiannual payment of $363,774.10 due on July 1, 2024, under the 1115 Note.  Accordingly, on or about September 26, 2024, Conterra, as agent and loan servicer for American Equity, served a notice of default on the 1115/1116 Borrowers (i.e., Maricopa Orchards, Copper Avenue, C & A Farms, ACAP Farms, Willow Avenue, 104 Investments, Lincoln Grantor Farms, Grantor Real Estate, Gradon Farms, FFGT Farms, Cantua Orchards, and Locans Investments) by mail, indicating that the borrowers were in default of their obligations under the loan documents relating to the 1115 Loan due to nonpayment.

*Response:* Defendant lacks sufficient information to admit or deny the allegations of this paragraph and therefore denies them.

131.   On or about December 4, 2024, American Equity, through its counsel, served a notice of acceleration on the 1115/1116 Borrowers and Guarantor Defendants (i.e., Darius, Farid, Farshid, and Sonia Assemi) by mail, indicating that all amounts due and owing under the loan documents relating to the 1115 Loan had been accelerated as a result of the continuing default.

*Response:* Defendant lacks sufficient information to admit or deny the allegations of this paragraph and therefore denies them.

132.   To date, neither the initial default nor the post-acceleration default on the 1115 Loan has been cured by the 1115/1116 Borrowers or Guarantor Defendants.

*Response:* Defendant denies the allegations of this paragraph as they relate to Defendant. As to the remaining allegations of this paragraph, Defendant lacks sufficient information to admit or deny and therefore denies them.

133.   As of July 1, 2024, the unpaid principal balance of the 1115 Note was approximately $8,212,151.19 (exclusive of interest, costs, and other charges).

MOJDEHI GALVIN
REGO LLP

1      *Response:* Defendant lacks sufficient information to admit or deny the

2  allegations of this paragraph and therefore denies them.

3            **10.1116 Loan**

4      134.   The 1115/1116 Borrowers failed to pay the installment payments of (a)

5  $73,766.88 due on July 1, 2024, (b) $73,861.73 due on August 1, 2024, and (c)

6  $73,856.87 due on September 1, 2024, under the 1116 Note.  Accordingly, on or

7  about September 30, 2024, Conterra, as agent and loan servicer for American

8  Equity, served a notice of default on the 1115/1116 Borrowers by mail, indicating

9  that the borrowers were in default of their obligations under the loan documents

10  relating to the 1116 Loan due to nonpayment.

11      *Response:* Defendant lacks sufficient information to admit or deny the

12  allegations of this paragraph and therefore denies them.

13      135.   On or about December 4, 2024, American Equity, through its counsel,

14  served a notice of acceleration on the 1115/1116 Borrowers and Guarantor

15  Defendants by mail, indicating that all amounts due and owing under the loan

16  documents relating to the 1116 Loan had been accelerated as a result of the

17  continuing default.

18      *Response:* Defendant lacks sufficient information to admit or deny the

19  allegations of this paragraph and therefore denies them.

20      136.   To date, neither the initial default nor the post-acceleration default on

21  the 1116 Loan has been cured by the 1115/1116 Borrowers or Guarantor

22  Defendants.

23      *Response:* Defendant denies the allegations of this paragraph as they relate to

24  Defendant. As to the remaining allegations of this paragraph, Defendant lacks

25  sufficient information to admit or deny and therefore denies them.

26      137.   As of July 1, 2024, the unpaid principal balance of the 1116 Note was

27  approximately $8,212,151.19 (exclusive of interest, costs, and other charges).

28

*Response:* Defendant lacks sufficient information to admit or deny the allegations of this paragraph and therefore denies them.

**D. Appointment of Receiver**

138.    Given Borrower Defendants' breach or default under each of the Loans, Plaintiff is entitled to the appointment of a receiver to protect and manage the property constituting Plaintiff's collateral for the Loans (i.e., the Remaining 1021/1024 Collateral, 1022 Collateral, 1023 Collateral, 1069 Collateral, Remaining 1078 Collateral, 1077 Collateral, 1076 Collateral, and Remaining 1115/1116 Collateral) (collectively, the "Collateral").

*Response:* The allegations constitute a legal conclusion to which no response is required, and to the extent any response is required, Defendant lacks sufficient information to admit or deny the allegations of this paragraph and therefore denies them.

139.    Unless a receiver is appointed to, among other things, protect and manage the Collateral, there is a real danger that the Collateral will suffer waste or other harm, resulting in irreparable injury to Plaintiff's rights thereto.

*Response:* Defendant lacks sufficient information to admit or deny the allegations of this paragraph and therefore denies them.

140.    Specifically, the Collateral consists of, among other things, thousands of acres of farm land, with a significant number of those acres containing pistachio or almond trees.  Those trees (but not any crops thereon) represent a significant portion of the value of Plaintiff's Collateral.  This farm land requires regular care, without which the trees thereon may be damaged or may die.

*Response:* The Collateral is as identified in the relevant loan documents and Defendant denies the allegations of this paragraph to any extent inconsistent therewith. Defendant admits the farm land requires regular care. As to the remaining allegations of this paragraph, Defendant lacks sufficient information to admit or deny and therefore denies them.

141.   Borrower Defendants have informed Plaintiff that, due to cash flow and liquidity issues, Borrower Defendants no longer have the ability to pay their operating expenses, maintain their operations, or otherwise care for Plaintiff's Collateral.  As a result, there is manifest and immediate danger of loss, deterioration, and diminution of the Collateral, which will likely be the primary source for repayment of the Loans, and Plaintiff, as an interested and secured party, is threatened with material losses and injuries for which it has no adequate remedy at law against Borrower Defendants.

*Response:* Defendant lacks sufficient information to admit or deny the allegations of this paragraph and therefore denies them and the allegations otherwise constitute a legal conclusion to which no response is required.

142.   Under California and federal law and as provided in the Deeds of Trust, Plaintiff has the right to the appointment of a receiver.  Plaintiff is contractually and equitably entitled to the immediate appointment of a receiver to take possession of and hold, subject to the discretion of this Court, the Collateral pledged as security for the Loans.

*Response:* The Deeds of Trust speak for themselves and Defendant denies the allegations of this paragraph to any extent inconsistent therewith. The remaining allegations of this paragraph constitute a legal conclusion to which no response is required, and to the extent any response is required, Defendant lacks sufficient information to admit or deny the allegations of this paragraph and therefore denies them.

143.   Plaintiff intends to provide additional funding to the appointed receiver to allow them to maintain and manage the Collateral.

*Response:* Defendant lacks sufficient information to admit or deny the allegations of this paragraph and therefore denies them.

## IV.    CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF

#### (For Judicial Foreclosure)

**(Against Maricopa Orchards, LLC; 104 Investments, LLC; ACAP Farms, LLC; C & A Farms, LLC; Cantua Orchards, LLC; Copper Avenue Investments, LLC; FFGT Farms, LLC; Gradon Farms, LLC; Grantor Real Estate Investments, LLC; Lincoln Grantor Farms, LLC; Locans Investments, LLC; and Willow Avenue Investments, LLC)**

144.    Plaintiff incorporates herein by reference, as though fully set forth herein, the allegations contained in paragraphs 1 through 143, inclusive.

*Response:* Defendant repeats and incorporates each and every response to the allegations set forth in Paragraphs 1-143 as if fully set forth herein.

145.    At all relevant times, Plaintiff is the lawful holder of the Notes, the lawful beneficiary under the Deeds of Trust, and the lawful owner of the other loan documents relating to the Loans (collectively, the "Loan Documents").

*Response:* Defendant lacks sufficient information to admit or deny the allegations of this paragraph and therefore denies them and the allegations otherwise constitute a legal conclusion to which no response is required.

146.    Plaintiff has performed all of the terms and conditions required on its part to be performed under the Loan Documents.

*Response:* The Loan Documents speak for themselves and Defendant denies the allegations of this paragraph to any extent inconsistent therewith. To the extent the allegations call for a legal conclusion, a response is not required, and to the extent a response is required, Defendant is without information sufficient to admit or deny the allegations, and therefore denies them.

147.    On information and belief, when the 1021-Fresno Deed of Trust and 1024-Fresno Deed of Trust were executed, Willow Avenue was, and continues to be, the owner of the real property included in the Remaining 1021/1024 Collateral,

and Willow Avenue otherwise presently holds an interest in all real and personal property that constitutes the Remaining 1021/1024 Collateral.

**Response:** Defendant lacks sufficient information to admit or deny the allegations of this paragraph and therefore denies them.

148.   On information and belief, when the 1022 Deed of Trust was executed, Lincoln Grantor Farms was, and continues to be, the owner of the real property included in the 1022 Collateral, and Lincoln Grantor Farms otherwise presently holds an interest in all real and personal property that constitutes the 1022 Collateral.

**Response:** Defendant lacks sufficient information to admit or deny the allegations of this paragraph and therefore denies them.

149.   On information and belief, when the 1023 Deed of Trust was executed, Grantor Real Estate was, and continues to be, the owner of the real property included in the 1023 Collateral, and Grantor Real Estate otherwise presently holds an interest in all real and personal property that constitutes the 1023 Collateral.

**Response:** Defendant lacks sufficient information to admit or deny the allegations of this paragraph and therefore denies them.

150.   On information and belief, when the 1069 Deed of Trust was executed, Gradon Farms was, and continues to be, the owner of the real property included in the 1069 Collateral, and Gradon Farms otherwise presently holds an interest in all real and personal property that constitutes the 1069 Collateral.

**Response:** Defendant lacks sufficient information to admit or deny the allegations of this paragraph and therefore denies them.

151.   On information and belief, when the 1078 Deed of Trust was executed, Lincoln Grantor Farms was, and continues to be, the owner of the real property included in the Remaining 1078 Collateral, and Lincoln Grantor Farms otherwise presently owns all real and personal property that constitutes the 1078 Collateral.

**Response:** Defendant lacks sufficient information to admit or deny the allegations of this paragraph and therefore denies them.

152.   On information and belief, when the 1077 Deed of Trust was executed, FFGT Farms was, and continues to be, the owner of the real property included in the 1077 Collateral, and FFGT Farms otherwise presently holds an interest in all real and personal property that constitutes the 1077 Collateral.

*Response:* Defendant lacks sufficient information to admit or deny the allegations of this paragraph and therefore denies them.

153.   On information and belief, (a) when the 1076-Fresno Deed of Trust was executed, FFGT Farms was, and continues to be, the owner of the real property located in Fresno County, California, included in the 1076 Collateral, (b) when the 1076-Kings Deed of Trust was executed, FFGT Farms was, and continues to be, the owner of the real property located in Kings County, California, included in the 1076 Collateral, and (c) FFGT Farms otherwise presently holds an interest in all real and personal property that constitutes the 1076 Collateral.

*Response:* Defendant lacks sufficient information to admit or deny the allegations of this paragraph and therefore denies them.

154.   On information and belief, (a) when the 1115/1116-Fresno Deed of Trust was executed, Lincoln Grantor Farms, Gradon Farms, FFGT Farms, 104 Investments, Locans Investments, Cantua Orchards, C & A Farms, and Willow Avenue were, and continue to be, the owners of the real property located in Fresno County, California, included in the Remaining 1115/1116 Collateral, (b) when the 1115/1116-Kern Deed of Trust was executed, C & A Farms, Lincoln Grantor Farms, Maricopa Orchards, Willow Avenue, and Grantor Real Estate were, and continue to be, the owners of the real property located in Kern County, California, included in the Remaining 1115/1116 Collateral, (c) when the 1115/1116-Kings Deed of Trust was executed, Copper Avenue, Lincoln Grantor Farms, ACAP Farms, FFGT Farms, and Willow Avenue were, and continue to be, the owners of the real property located in Kings County, included in the Remaining 1115/1116 Collateral, and (d) the 1115/1116 Borrowers otherwise collectively presently hold interests in all real

and personal property that constitutes the Remaining 1115/1116 Collateral.

*Response:* Defendant lacks sufficient information to admit or deny the allegations of this paragraph and therefore denies them.

155.   As set forth above, the Loan Documents, among other things, require that the applicable Borrower Defendants make certain installment payments to Plaintiff that come due under the Notes and pay all amounts due under the Notes to Plaintiff following acceleration, and those Borrower Defendants defaulted under the Loan Documents by failing, and continuing to fail, to make those payments or otherwise pay off the Loans.

*Response:* The Loan Documents speak for themselves and Defendant denies the allegations of this paragraph to any extent inconsistent therewith. Defendant lacks sufficient information to admit or deny the allegations of this paragraph and therefore denies them and the allegations otherwise constitute a legal conclusion to which no response is required.

156.   Plaintiff has notified the applicable Borrower Defendants of their default under each Loan in writing, and, to date, the applicable Borrower Defendants have not cured their default.

*Response:* Defendant lacks sufficient information to admit or deny the allegations of this paragraph and therefore denies them.

157.   With respect to each Loan, the applicable Loan Documents provide that the applicable Borrower Defendants owes Plaintiff default interest on the outstanding principal balance, accrued interest, and any other amounts due under the corresponding Note, as well as all costs, expenses, and reasonable attorneys' fees incurred by Plaintiff in enforcing the terms of the Loan Documents, including, without limitation, the corresponding Note and Deed of Trust(s).  As a further result of Borrower Defendants' defaults, Plaintiff has been damaged in that it has and will be required to incur attorneys' fees and costs to enforce its rights under the Loan Documents.

*Response:* The Loan Documents speak for themselves and Defendant denies the allegations of this paragraph to any extent inconsistent therewith. Defendant lacks sufficient information to admit or deny the allegations of this paragraph and therefore denies them and the allegations otherwise constitute a legal conclusion to which no response is required.

158.   Pursuant to each Deed of Trust, Plaintiff is entitled to judgment that (a) the rights, claims, ownership, liens, titles, and demands of the applicable Borrower Defendants, and all persons or entities claiming under any of them, are subject to the lien of that Deed of Trust, (b) that Deed of Trust is foreclosed and the applicable Collateral shall be sold according to law by a sheriff, marshal, or other person appointed by the Court, (c) the applicable Borrower Defendants are liable to Plaintiff for any deficiency owing in connection with the underlying Loan, and (d) when the time for redemption has passed, the commissioner or trustee shall execute and deliver a deed to the purchaser(s) of the applicable Collateral at the foreclosure sale and that said purchaser(s) be put into the possession of the collateral upon delivery of said deed.

*Response:* The Deeds of Trust speak for themselves and Defendant denies the allegations of this paragraph to any extent inconsistent therewith and the allegations otherwise constitute a legal conclusion to which no response is required.

159.   With the 1021-Fresno Deed of Trust and 1024-Fresno Deed of Trust, Plaintiff seeks judicial foreclosure of only the real and personal property that constitutes the Remaining 1021/1024 Collateral that remains subject to such Deeds of Trust at the time of sale, and, for the avoidance of doubt, such foreclosure would not include any property that constitutes Reconveyed 1021/1024 Former Collateral.

*Response:* Defendant is without information sufficient to admit or deny the allegations, and therefore denies the allegations of this paragraph.

MOJDEHI GALVIN
REGO LLP

160.    With respect to the 1022 Deed of Trust, Plaintiff seeks judicial foreclosure of only the real and personal property that constitutes the 1022 Collateral that remains subject to such Deed of Trust at the time of sale.

*Response:* Defendant is without information sufficient to admit or deny the allegations, and therefore denies the allegations of this paragraph.

161.    With respect to the 1023 Deed of Trust, Plaintiff seeks judicial foreclosure of only the real and personal property that constitutes the 1023 Collateral that remains subject to such Deed of Trust at the time of sale.

*Response:* Defendant is without information sufficient to admit or deny the allegations, and therefore denies the allegations of this paragraph.

162.    With respect to the 1069 Deed of Trust, Plaintiff seeks judicial foreclosure of only the real and personal property that constitutes the 1069 Collateral that remains subject to such Deed of Trust at the time of sale.

*Response:* Defendant is without information sufficient to admit or deny the allegations, and therefore denies the allegations of this paragraph.

163.    With respect to the 1078 Deed of Trust, Plaintiff seeks judicial foreclosure of only the real and personal property that constitutes the Remaining 1078 Collateral that remains subject to such Deed of Trust at the time of sale, and, for the avoidance of doubt, such foreclosure would not include any property that constitutes Reconveyed 1078 Former Collateral.

*Response:* Defendant is without information sufficient to admit or deny the allegations, and therefore denies the allegations of this paragraph.

164.    With respect to the 1077 Deed of Trust, Plaintiff seeks judicial foreclosure of only the real and personal property that constitutes the 1077 Collateral that remains subject to such Deed of Trust at the time of sale.

*Response:* Defendant is without information sufficient to admit or deny the allegations, and therefore denies the allegations of this paragraph.

165.   With respect to the 1076-Fresno Deed of Trust and 1076-Kings Deed of Trust, Plaintiff seeks judicial foreclosure of only the real and personal property that constitutes the 1076 Collateral that remains subject to such Deeds of Trust at the time of sale.

**Response:** Defendant is without information sufficient to admit or deny the allegations, and therefore denies the allegations of this paragraph.

166.   With respect to the 1115/1116-Fresno Deed of Trust, 1115/1116-Kern Deed of Trust, and 1115/1116-Kings Deed of Trust, Plaintiff seeks judicial foreclosure of only the real and personal property that constitutes the Remaining 1115/1116 Collateral that remains subject to such Deeds of Trust at the time of sale, and for the avoidance of doubt, such foreclosure would not include any property that constitutes Reconveyed 1115/1116 Former Collateral.[1]

**Response:** Defendant is without information sufficient to admit or deny the allegations, and therefore denies the allegations of this paragraph.

## SECOND CLAIM FOR RELIEF

**(For Specific Performance and Appointment of Receiver)**

**(Against Maricopa Orchards, LLC; 104 Investments, LLC; ACAP Farms, LLC; C & A Farms, LLC; Cantua Orchards, LLC; Copper Avenue Investments, LLC; FFGT Farms, LLC; Gradon Farms, LLC; Grantor Real Estate Investments, LLC; Lincoln Grantor Farms, LLC; Locans Investments, LLC; and Willow Avenue Investments, LLC)**

167.   Plaintiff incorporates herein by reference, as though fully set forth herein, the allegations contained in paragraphs 1 through 166, inclusive.

---

[1] Certain property that constitutes part of the Remaining 1115/1116 Collateral may be presently subject to the receivership arising out of *Federal Agricultural Mortgage Corp. v. Assemi Brothers, LLC, et al.* (Case No. 1:24-cv-01455-KES-SAB) pending in this Court.  Accordingly, Plaintiff only seeks the foreclosure of such property to the extent that it is no longer subject to such receivership at the time of judgment or sale.

*Response:* Defendant repeats and incorporates each and every response to the allegations set forth in Paragraphs 1-166 as if fully set forth herein.

168.    Plaintiff is the lawful holder of the Notes, the lawful beneficiary under the Deeds of Trust, and the lawful owner of the other Loan Documents.

*Response:* Defendant lacks sufficient information to admit or deny the allegations of this paragraph and therefore denies them and the allegations otherwise constitute a legal conclusion to which no response is required.

169.    Plaintiff has performed all of its obligations to Borrower Defendants under the terms of the Loan Documents.

*Response:* The Loan Documents speak for themselves and Defendant denies the allegations of this paragraph to any extent inconsistent therewith. To the extent the allegations call for a legal conclusion, a response is not required, and to the extent a response is required, Defendant is without information sufficient to admit or deny the allegations, and therefore denies them.

170.    On information and belief, Borrower Defendants collectively presently holds interests in all real and personal property that constitutes the Collateral.

*Response:* Defendant lacks sufficient information to admit or deny the allegations of this paragraph and therefore denies them.

171.    As set forth above, the Loan Documents, among other things, require that the applicable Borrower Defendants make certain installment payments to Plaintiff that come due under the Notes, and those Borrower Defendants breached the Loan Documents by failing to make those payments.

*Response:* The Loan Documents speak for themselves and Defendant denies the allegations of this paragraph to any extent inconsistent therewith. Defendant lacks sufficient information to admit or deny the allegations of this paragraph and therefore denies them and the allegations otherwise constitute a legal conclusion to which no response is required.

172.    Plaintiff has notified the applicable Borrower Defendants of their

default under each Loan in writing, and, to date, the applicable Borrower Defendants have not cured their default.

**Response:** Defendant lacks sufficient information to admit or deny the allegations of this paragraph and therefore denies them.

173.   Having given written notice of default to Borrower Defendants with respect to the Loans, Plaintiff is entitled pursuant to the express terms of the Deeds of Trust to have a receiver appointed to take possession of and manage the Collateral and to collect the rents and profits from the Collateral, if any, without the need to make any showing as to the inadequacy of the Collateral as security.

**Response:** The Deeds of Trust speak for themselves and Defendant denies the allegations of this paragraph to any extent inconsistent therewith and the allegations otherwise constitute a legal conclusion to which no response is required.

174.   Due to Borrower Defendants' defaults, as well as their cash flow and liquidity issues, there is a real danger that the Collateral will suffer waste resulting in irreparable harm to Plaintiff if a receiver is not appointed to manage and protect the Collateral.

**Response:** To the extent the allegations call for a legal conclusion, a response is not required, and to the extent the allegations are of fact, Defendant is without information sufficient to admit or deny the allegations, and therefore denies them.

175.   It is impractical and impossible for Plaintiff to enjoy the rights granted to it or enforce the obligations of Borrower Defendants under the Loan Documents without the appointment of a receiver who has the power and authority to take possession of and manage the Collateral and collect the rents and profits derived therefrom, if any.

**Response:** Defendant lacks sufficient information to admit or deny the allegations of this paragraph and therefore denies them.

176.   Plaintiff has no plain, speedy, or adequate remedy at law to enforce the provisions of the Deeds of Trust as set forth herein and will suffer irreparable harm

unless equitable relief is granted and a receiver is appointed to manage, operate, and control the Collateral.

**Response**: To the extent the allegations call for a legal conclusion, a response is not required, and to the extent the allegations are of fact, Defendant is without information sufficient to admit or deny the allegations, and therefore denies them.

177.   A receiver should be appointed and granted the general powers and duties of a court-appointed receiver, including the power to take and keep possession of the Collateral and to do such acts respecting the collateral as the Court may authorize pending Plaintiff's forthcoming exercise of its remedies under the Loan Documents.

**Response:** To the extent the allegations call for a legal conclusion, a response is not required, and to the extent the allegations are of fact, Defendant denies the allegations.

### THIRD CLAIM FOR RELIEF
### (For Breach of Guaranty)
### (Against Darius Assemi, Farid Assemi, and Farshid Assemi)

178.   Plaintiff incorporates herein by reference, as though fully set forth herein, the allegations contained in paragraphs 1 through 177, inclusive.

**Response:** Defendant repeats and incorporates each and every response to the allegations set forth in Paragraphs 1-177 as if fully set forth herein.

179.   Plaintiff is the lawful holder of the Notes, the lawful beneficiary under the Deeds of Trust, and the lawful owner of the other Loan Documents, including the Guaranties.

**Response:** Defendant lacks sufficient information to admit or deny the allegations of this paragraph and therefore denies them and the allegations otherwise constitute a legal conclusion to which no response is required.

180.   Darius, Farid, and Farshid Assemi, as guarantors, and Plaintiff, as assignee of Conterra's interest in the Loans, as lender, are parties to the Guaranties,

which obligated the former to pay the indebtedness owed by the applicable

Borrower Defendants to Plaintiff in connection with the ten Loans.

*Response:* Defendant admits that he executed certain guaranties for certain

loans. The Guaranties speak for themselves and Defendant denies any allegations

that are inconsistent with the Guaranties. To the extent the remaining allegations call

for a legal conclusion, a response is not required, and to the extent a response is

required, Defendant is without information sufficient to admit or deny the remaining

allegations, and therefore denies them.

181.    Plaintiff has performed all of its obligations with respect to the Loan

Documents, including with respect to the Guaranties.

*Response:* The Loan Documents and Guaranties speak for themselves and

Defendant denies any allegations inconsistent therewith. To the extent the

allegations call for a legal conclusion, a response is not required, and to the extent a

response is required, Defendant is without information sufficient to admit or deny

the allegations, and therefore denies them.

182.    Darius, Farid, and Farshid Assemi have breached the Guaranties by

failing to pay those amounts due and owing under the Loan Documents, as

demanded by Plaintiff.

*Response:* Defendant denies the allegations of this paragraph as to himself

and as to the remaining allegations, lacks sufficient information to admit or deny

and therefore denies them.

183.    As a result of the breaches by Darius, Farid, and Farshid Assemi under

the Guaranties, Plaintiff has suffered damages of no less than **$51,349,085.26**, plus

all accrued and unpaid interest, reasonable attorneys' fees, costs, and other charges

allowed under the Loan Documents, including under the Guaranties, in an amount to

be determined at trial.  The $51,349,085.26 amount represents the unpaid principal

balance owed on each of the Loans, including (a) $3,397,915.77 on the 1021 Loan,

(b) $1,493,356.15 on the 1024 Loan, (c) $251,719.34 on the 1022 Loan, (d)

$2,894,772.46 on the 1023 Loan, (e) $3,503,774.50 on the 1069 Loan, (f) $1,441,978.13 on the 1078 Loan, (g) $12,531,450.18 on the 1077 Loan, (h) $9,409,816.35 on the 1076 Loan, (i) $8,212,151.19 on the 1115 Loan, and (j) $8,212,151.19 on the 1116 Loan.

*Response:* Defendant denies the allegations of this paragraph.

## FOURTH CLAIM FOR RELIEF
### (For Breach of Guaranty)
### (Against Sonia Assemi)

184.    Plaintiff incorporates herein by reference, as though fully set forth herein, the allegations contained in paragraphs 1 through 183, inclusive.

*Response:* Defendant repeats and incorporates each and every response to the allegations set forth in Paragraphs 1-183 as if fully set forth herein.

185.    Plaintiff is the lawful holder of the 1115 Note and 1116 Note, the lawful beneficiary under the 1115/1116 Deeds of Trust, and the lawful owner of the other Loan Documents relating to the 1115 Loan and 1116 Loan, including the Sonia Guaranties.

*Response:* Defendant lacks sufficient information to admit or deny the allegations of this paragraph and therefore denies them and the allegations otherwise constitute a legal conclusion to which no response is required.

186.    Sonia Assemi, as guarantor, and Plaintiff, as assignee of Conterra's interest in the 1115 Loan and 1116 Loan, as lender, are parties to the Sonia Guaranties, which obligated the former to pay the indebtedness owed by the 1115/1116 Borrowers to Plaintiff in connection with the 1115 Loan and 1116 Loan.

*Response:* Defendant lacks sufficient information to admit or deny the allegations of this paragraph and therefore denies them and the allegations otherwise constitute a legal conclusion to which no response is required.

187.   Plaintiff has performed all of its obligations with respect to the Loan Documents relating to the 1115 Loan and 1116 Loan, including with respect to the Sonia Guaranties.

*Response:* The Loan Documents and Sonia Guaranties speak for themselves and Defendant denies any allegations inconsistent therewith. To the extent the allegations call for a legal conclusion, a response is not required, and to the extent a response is required, Defendant is without information sufficient to admit or deny the allegations, and therefore denies them.

188.   Sonia Assemi has breached the Sonia Guaranties by failing to pay those amounts due and owing under the Loan Documents relating to the 1115 Loan and 1116 Loan, as demanded by Plaintiff.

*Response:* Defendant lacks sufficient information to admit or deny the allegations of this paragraph and therefore denies them.

189.   As a result of the breaches by Sonia Assemi under the Sonia Guaranties, Plaintiff has suffered damages of no less than **$16,424,302.38**, plus all accrued and unpaid interest, reasonable attorneys' fees, costs, and other charges allowed under the applicable Loan Documents, including under the Sonia Guaranties, in an amount to be determined at trial.  The $16,424,302.38 amount represents the unpaid principal balance of $8,212,151.19 owed on the 1115 Loan and the unpaid principal balance of $8,212,151.19 owed on the 1116 Loan.

*Response:* Defendant denies the allegations of this paragraph.

## **PRAYER FOR RELIEF**

To the extent Plaintiff's prayer for relief requires a response, Defendant denies that Plaintiff is entitled to any relief as to Defendant and specifically denies all the allegations and prayers for relief contained under the heading "Prayer for Relief", and paragraphs 1 through 12 therein, in accordance with this Answer and Affirmative Defenses.

MOJDEHI GALVIN
REGO LLP

## DENIAL OF ANY REMAINING ALLEGATIONS

Except as specifically stated herein, Defendant denies any remaining allegations in the Complaint.

## DEFENDANT'S AFFIRMATIVE DEFNSES TO COMPLAINT

Further, without waiving or excusing the burden of proof of Plaintiff, or admitting that Defendant has any burden of proof, Defendant hereby asserts the following defenses in response to the allegations of the Complaint, undertaking the burden of proof only as to those defense deemed affirmative defenses by law, regardless of how such defenses are denominated herein.

## FIRST AFFIRMATIVE DEFENSE

### (Bad Faith)

1.    Defendant raises the affirmative defense of bad faith, whereby the loss or damages, if any, sustained by Plaintiff herein is barred by Plaintiff's bad-faith conduct.

## SECOND AFFIRMATIVE DEFENSE

### (Unclean Hands)

2.    Defendant raises the affirmative defense of unclean hands whereby the loss or damages, if any, sustained by Plaintiff herein is barred by the doctrine of unclean hands.

## THIRD AFFIRMATIVE DEFENSE

### (Good Faith)

3.    Any alleged act or omission by Defendant, concerning Plaintiff, was taken for lawful reasons. At all times relevant to the claims and time period alleged in the Complaint, Defendant acted lawfully, with due care, in good faith, in lawful competition, and without malice.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MOJDEHI GALVIN
REGO LLP

## FOURTH AFFIRMATIVE DEFENSE

### (Laches)

4.    Defendant raises the affirmative defense of laches because the loss or damages, if any, sustained by Plaintiff herein is barred by laches.

## FIFTH AFFIRMATIVE DEFENSE

### (Waiver)

5.    Defendant raises the affirmative defense of waiver, whereby any recovery by Plaintiff on the Complaint is barred by the doctrine of waiver.

## SIXTH AFFIRMATIVE DEFENSE

### (Failure to Mitigate)

6.    Defendant raises the affirmative defense of mitigation of damages. Plaintiff failed to act reasonably to avoid and/or mitigate its alleged damages, and such failure bars or diminishes any recovery on the Complaint, and any cause of action alleged herein, including that, on information and belief, Plaintiff has delayed in seeking to enforce its rights resulting in an increase in losses and made excessive unilateral advances after borrowers' alleged defaults without Defendant's knowledge.

## SEVENTH AFFIRMATIVE DEFENSE

### (Unjust Enrichment)

7.    Defendant raises the affirmative defense of unjust enrichment. Plaintiff should not be permitted to obtain a favorable recovery on any of its claims against Defendant because to allow such recovery would result in an unjust enrichment to Plaintiff.

## EIGHTH AFFIRMATIVE DEFENSE

### (Estoppel)

8.    Defendant raises the affirmative defense of estoppel whereby Plaintiff is estopped by its own conduct from recovering any relief under the Complaint.

ANSWER AND AFFIRMATIVE DEFENSES

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## NINTH AFFIRMATIVE DEFENSE

### (Other Equitable Defenses)

9.     Plaintiff's claims are barred, in whole or in part, under principles of equity, including without limitation, acquiescence, misconduct, and/or other equitable doctrines.

## TENTH AFFIRMATIVE DEFENSE

### (Other Legal/Statutory Defenses)

10.     Defendant raises as affirmative defenses all rights and defenses given to guarantors at law, including but not limited to those rights and defenses that are or may become available to Defendants under California law, such as exoneration subrogation, reimbursement, indemnification, and contribution, and to the extent available under applicable law, those identified throughout California Civil Code sections 2787 through 2855, including California Civil Code sections 2809, 2819, 2845, and 2848.

## ELEVENTH AFFIRMATIVE DEFENSE

### (Excuse)

11.     Plaintiff is barred from recovery on the claims asserted in the Complaint, in whole, or in part, because the actions of Defendant were justified and/or excused under the totality of the circumstances.

## TWELFTH AFFIRMATIVE DEFENSE

### (Speculative Damages)

12.     Plaintiff's claims are barred as to Defendant, in whole or in part, because the alleged damages sustained by Plaintiff, if any, are too speculative.

## THIRTEENTH AFFIRMATIVE DEFENSE

### (Material Alteration)

13.     Defendant raises the affirmative defense of Plaintiff's material alteration of the underlying debts and loans, including, on information and belief, by making additional unilateral advances without Defendant's knowledge, and

Plaintiff's material impairment of the value of collateral securing the underlying debts and loans, including by seeking appointment of a receiver and/or releasing valuable assets without Defendant's knowledge.

## FOURTEENTH AFFIRMATIVE DEFENSE
### (Negligence)

14.    Defendant raises the affirmative defense of Plaintiff's negligent loan administration of the underlying debts and loans, including that, on information and belief, the Loans were underwritten to be fully secured by the Collateral but subsequent conduct by Plaintiff negatively impacted the loan to value ratio, including releasing valuable assets without Defendant's knowledge.

## FIFTEENTH AFFIRMATIVE DEFENSE
### (Privilege)

15.    Plaintiff's claims are barred, in whole or in part, because at all relevant times, Defendant acted reasonably, appropriately and in good faith to protect its legitimate economic interest.

## SIXTEENTH AFFIRMATIVE DEFENSE
### (Borrower Defenses)

16.    Defendant raises the affirmative defense of all defenses or claims belonging to the borrowers based on the conduct of Plaintiff, as lender, and/or the underlying debts and loans.

## SEVENTEENTH AFFIRMATIVE DEFENSE
### (Statute of Limitations)

17.    On information and belief, Defendants raises the affirmative defense of the statute of limitations, including but not limited to Civil Code section 337.

## EIGHTEENTH AFFIRMATIVE DEFENSE
### (Reservation of Defenses)

18.    Defendant presently does not have sufficient knowledge and information upon which to form a belief as to whether it may have additional, and as

MOJDEHI GALVIN
REGO LLP

yet unstated, separate and additional affirmative defenses available. As such, Defendant hereby reserves the right to assert additional defenses including in the event that discovery reveals facts that render such defenses appropriate.

WHEREFORE, Defendant prays as follow:

a. That Plaintiff take nothing by way of the Complaint as against Defendant;

b. That judgment be entered in favor of Defendant;

c. That the Court award Defendant attorneys' fees and all other costs reasonably incurred in defense of the Complaint to the fullest extent allowed by applicable law; and

d. That the Court award such other relief as it may deem just and proper.

## **JURY DEMAND**

Pursuant to Federal Rule of Civil Procedure 38, Defendant demands a trial by jury on all issues so triable.

Dated:  April 27, 2025

Respectfully submitted,

**MOJDEHI GALVIN REGO LLP**

By:  */s/ Ali M. Mojdehi*
Ali M. Mojdehi

Attorneys for Defendant Darius Assemi